UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------x
A. C., and H. C., by their Next Friend BARBARA WEINER,  :
individually and on behalf of all others similarly situated,  :
                                                                                                               :

                       Plaintiffs,                              :      05 Civ. 2986 (TPG)

            - against -                                            :

JOHN MATTINGLY, in his official capacity as Commissioner  :
of the New York City Administration for Children's Services,  :
and JOHN JOHNSON, in his official capacity as Commissioner  :
of the New York State Office of Children and Family Services,  :

                     Defendants.                            :
------------------------------------------------------------------------------------x

**MEMORANDUM OF LAW ON BEHALF OF
PLAINTIFFS A.C. AND H.C. IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

THE LEGAL AID SOCIETY
ADRIENE L. HOLDER, Esq.
Attorney-in-Charge, Civil Division
SCOTT A. ROSENBERG, Esq. (SAR5579)
Director of Litigation, Civil Division
JENNIFER BAUM, Esq., of counsel (JB4030)
GARY SOLOMON, Esq. (GS 5626)
Director of Legal Support, Juvenile Rights Division
NANCY ROSENBLOOM Esq. (NR1275)
Director of Litigation, Juvenile Rights Division
LOUIS SARTORI, Esq., of counsel (LSS0011)
199 Water Street
New York, New York 10038
(212) 577-3300

Attorneys for Plaintiffs A.C. and H.C.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................... 1

BACKGROUND ....................................................... 2

ARGUMENT .......................................................... 4

      POINT I ....................................................... 4

      THE SUBCLASS OF CHILDREN SHOULD BE CERTIFIED
AS "ALL CHILDREN IN NEW YORK CITY WHO ARE NOW,
WERE ON OR AFTER JULY 1, 2004, OR WILL IN THE FUTURE
BE, RESIDING IN FOSTER CARE WITH RELATIVES WHO ARE
WITHIN THE SECOND OR THIRD DEGREE OF CONSANGUINITY
TO THEIR PARENTS OR STEPPARENTS." ............................... 4

      A.   Scope of the Subclass ........................................ 4

      B.   The Requirements for Class Certification Are Satisfied Here .............. 7

CONCLUSION ....................................................... 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------x
A. C., and H. C., by their Next Friend BARBARA WEINER,  :
individually and on behalf of all others similarly situated,  :
:
Plaintiffs,  :  05 Civ. 2986 ( TPG)
:
:
- against -  :
:
JOHN MATTINGLY, in his official capacity as Commissioner  :
of the New York City Administration for Children's Services,  :
and JOHN JOHNSON, in his official capacity as Commissioner  :
of the New York State Office of Children and Family Services,  :
:
:
Defendants.  :
:
-----------------------------------------------------------------------------------x

**MEMORANDUM OF LAW ON BEHALF OF
PLAINTIFFS A.C. AND H.C. IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

**PRELIMINARY STATEMENT**

Plaintiffs A.C. and H.C. submit this memorandum of law in support of their motion to certify a subclass of children in kinship foster care.  For reasons set forth below, plaintiffs A.C. and H.C. generally support a similar pending motion for class certification of a subclass of kinship foster parents brought by their former foster parent, Norma Balbuena.  However, plaintiffs A.C. and H.C. submit that the scope of the subclass of children (and of foster parents as well) should be one degree of consanguinity larger than that proposed by Ms. Balbuena, and should extend back in time to July 1, 2004.

1

**BACKGROUND**

This case concerns policies and procedures of the New York City Administration for Children's Services (ACS) with regard to the removal of children in the care of kinship foster parents.  The action was originally commenced by Norma Balbuena on her own behalf and on behalf of A.C. and H.C.  On consent of the parties, The Legal Aid Society was later substituted as counsel for the minor children A.C. and H.C.

The Balbuena complaint names as defendants various officials of ACS and of a private foster care agency, Episcopal Social Services (ESS).  The complaint challenges the constitutionality of ACS's so-called Independent Review Procedures and of actions taken by ACS and ESS in removing A.C. and H.C. from Ms. Balbuena's care.  On June 3, 2005, Ms. Balbuena moved for certification of a subclass of kinship foster parents.  Ms. Balbuena also proposed the certification of a second subclass of kinship foster children (although technically speaking, she cannot move for certification of that subclass, since she neither represents nor speaks for those children).

On June 17, 2005, A.C. and H.C., by their next friend Barbara Weiner, filed an complaint (the "A.C. Complaint") on behalf of themselves and all similarly situated children against ACS.  Like the Balbuena complaint, the A.C. complaint challenges the constitutionality of ACS's so-called Independent Review Procedures.  It does not assert claims against ESS.

In two respects, the subclass of children proposed in the Balbuena motion differs from that defined in the A.C. complaint and proposed here.  In this motion, and in their complaint, A.C. and H.C. seek relief on behalf of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the

second or third degree of consanguinity of their parents or stepparents." In the Balbuena motion, a subclass of kinship foster parents is proposed as "all relatives within the third degree of consanguinity to a child, where the child is living in the home of said relative, said relative is licensed, certified, or approved as the foster parent of the child, where the child is in the foster care of" ACS. A subclass of children is defined as "all minor foster children living in the home of such relatives."

The third degree of consanguinity to a child is the second degree to the parent. Thus, the subclass as defined by A.C. and H.C. is one degree of consanguinity larger than that proposed by Ms. Balbuena. The reasons for that difference are spelled out in this memorandum. In brief, the subclass as defined by the children includes those relatives whom State law recognizes as having a liberty interest in the family relationship.[1]

The plaintiff children also propose that the subclass should extend back in time to July 1, 2004, in order to encompass children who were removed from their kinship foster parents without adequate notice or the right to a constitutionally adequate hearing within the last year.

---

[1] The plaintiff foster children would consent to any motion by the foster parents to expand their class definition to be coextensive with the definition proposed herein.

**ARGUMENT**

**POINT I**

**THE SUBCLASS OF CHILDREN SHOULD BE CERTIFIED AS "ALL CHILDREN IN NEW YORK CITY WHO ARE NOW, WERE ON OR AFTER JULY 1, 2004, OR WILL IN THE FUTURE BE, RESIDING IN FOSTER CARE WITH RELATIVES WHO ARE WITHIN THE SECOND OR THIRD DEGREE OF CONSANGUINITY TO THEIR PARENTS OR STEPPARENTS."**

A.  **Scope of the Subclass**

The claims of A.C. and H.C. in this action involve the constitutionally protected liberty interests of children in maintaining familial relationships. Liberty interests are not, of course, necessarily coextensive with protections afforded under state law. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" Wilkinson v. Austin, No. 04-495, 2005 U.S. LEXIS 4839, at *23 (U.S. Sup. Ct. June 13, 2005) (citing Vitek v. Jones, 445 U.S. 480, 493-494(1980)) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution). However, State laws and regulations may be relevant to determining the scope of constitutionally protected liberty interests, since those interests "may arise from an expectation or interest created by state laws or policies." Id. at *24 (citing Wolff v. McDonnell, 418 U.S. 539, 556-558 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits).

Throughout New York State administrative law, relatives within the second and third degrees of consanguinity to the parents or stepparents of a child have superior rights than non-

relatives.[2] These State regulations are indicative of the value that society places on these family relationships. As plaintiffs will allege more fully when the merits of the action are briefed, these regulations reflect a constitutionally protected liberty interest possessed by family members within these relationships.

For example, Social Services Law child care regulations define "legally exempt" informal child care as "child care provided by a relative within the third degree of consanguinity of the parent(s) or step-parent(s) of the child or children. . . ." 18 N.Y.C.R.R. § 415.1(h)(1)(iii). The State Adoption Service, operated by the Department of Social Services, requires photo-listing of children who have not been adopted except where the child is "placed with a relative within the third degree of consanguinity of the parents of the child ," among other factors to be considered. 18 N.Y.C.R.R. § 420.2(c)(1)(i).

The State Department of Health excludes from its definition of "health-related facility" any "facility, institution, intermediate care facility, or a separate or distinct part thereof, providing therein lodging, not related to the operator by marriage or by blood within the third degree of consanguinity." 10 N.Y.C.R.R. § 700.2(a)(4). Similarly, 10 N.Y.C.R.R. § 415.2(k) defines "nursing home" to exclude care provided "three or more nursing home residents who are not related to the operator by marriage or by blood within the third degree of consanguinity."

The New York State Crime Victim's Board defines a "family" as "any person related to such [crime victim] within the third degree of consanguinity or affinity." 18 N.Y.C.R.R. §

---

[2] Relatives within the second and third degrees of consanguinity to the parents or stepparents of a child include: the grandparents and siblings of the child (first degree); the great grand parents, uncles and aunts, and children of the child (second degree); and the great great grandparents, grand uncles and aunts, first cousins, and grandchildren of the child (third degree). (See Declaration of Jennifer Baum, June 17, 2005, ¶¶ 3-5) (hereafter "Baum Decl.").

525.1(d)(1).  The Crime Witness Protection Program defines the family of an eligible witness to include "any person related to such [witness] <u>within the third degree of consanguinity or affinity</u>."  9 N.Y.C.R.R. § 6171.2(b).

Regulations limit the rights and obligations of employees of school-age child care programs concerning administering medications while at the program, except that "nothing in this section shall be deemed to prevent a parent, guardian or relative <u>within the third degree of consanguinity of the parents or step-parents of a child</u>, even if such a person is an employee of the program, from administering medications to a child. . ."  18 N.Y.C.R.R. § 414.11(g)(3).  There are similar exceptions for relatives within the third degree of consanguinity working at: group and family daycare homes (18 N.Y.C.R.R. § 416.11), daycare centers and childcare centers ( 18 N.Y.C.R.R. § 418-1.11), and "small daycare centers" (18 N.Y.C.R.R. § 418-2.11).

Of course, these definitions are not dispositive of the scope of the rights at issue in this case.  But they are, at minimum, indicative of the fact that New York State places significant weight on the importance of familial relationships of this degree of consanguinity to the parents or step-parents of a child.

An ultimate determination of the scope of the liberty interests at issue here must, of course, await a final resolution of the merits.  But Rule 23(c)(1)(A) requires a determination regarding certification of a class "at an early practicable time."  At this early stage of the litigation, there is no legal, practical or other basis for restricting the scope of the class definition to exclude relatives whom State law has already recognized as being "close family."  Since State regulations recognize the value and importance of family relationships within the third degree of consanguinity to the parents or step-parents of a child, the subclass of foster children should

6

include those placed with relatives within the second or third degree of consanguinity to their parents or stepparents.

  B.  **The Requirements for Class Certification Are Satisfied Here**

The plaintiff children seek to represent and have the Court certify a subclass consisting of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents." The named plaintiffs and proposed class members all share at least one central characteristic: they are all children placed in foster care with kinship foster parents, whose due process and Fourth Amendment rights are threatened by OCFS regulation and ACS policy.

Class certification is appropriate where: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the party seeking class certification must meet one of the three criteria set forth in Rule 23(b): pursuing separate actions would create a risk of "inconsistent or varying adjudications" that would establish "incompatible standards of conduct"; defendants "acted or refused to act on grounds generally applicable to the class" so that injunctive or declaratory relief is appropriate "with respect to the class as a whole," Fed. R. Civ. P. 23(b)(2); or (3) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(1)(C).

In this case, the plaintiff children seek certification of a subclass under Rules 23(b)(1) and

(b)(2). Both of those requirements are satisfied here.

**Numerosity.** The class of plaintiff children is so numerous that joinder of all members is impractical. According to the preliminary City of New York Mayor's Management Report for Fiscal 2005, there were just over 20,000 children in foster care in New York City this past year. Twenty-two percent of them, or approximately 4,400 foster children, were placed with relatives. The vast majority of foster care placements with relatives are made with class members as defined above. (Baum Decl., ¶ 6.)

Likewise, the Mayor's Management Report for Fiscal 2004 reports that there were 22,000 children in foster care last year, almost 20 percent of them placed with relatives. In addition to reporting last year's foster care figures, the 2004 MMR tracks foster care populations going back to Fiscal Year 2000. In 2000, there were over 34,000 children in foster care, and only 16 percent of them were placed with relatives. While the foster care population has declined every year since 2000, the percentage of children in foster care placed with relatives has generally climbed. (Baum Decl., ¶ 7.)

Plaintiffs not need show the exact number of potential class members, as courts may make "common sense assumptions" to support a finding of numerosity. Nicholson v. Scoppetta, *citing* German v. Fed. Home Loan Mortgage Corp., 885 F. Supp. 537, 552 (S.D.N.Y.1995) (citations omitted). Numerosity is "presumed at a level of 40 members." Consolidated Rail Corp. V. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), *citing* 1 Newberg on Class Actions 2d, § 3.05; Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir.1993) ("the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable," *citing* Newberg, supra). In this case, the proposed subclass of children is plainly so numerous

8

that joinder of all members is impractical.

Moreover, much of the information proving numerosity, such as case records or records from Independent Reviews, is in the exclusive control of defendants and is unavailable to plaintiffs. "This consideration relaxes the numerosity requirement." Nicholson v Williams, 202 F.R.D. 377, 384 (E.D.N.Y.,2001), *aff'd in part*, 344 F.3d 154 (2d Cir. 2003); Grant v. Sullivan, 131 F.R.D. 436, 445 (M.D.Pa.1990) ("class members are unidentifiable in the sense that the Plaintiffs do not presently know who they are and joinder of them is impracticable. A class of the size in this case satisfies the numerosity requirement.").

**Commonality**. "The commonality element of Rule 23(a)(2), which requires the plaintiff to demonstrate that common issues of law or fact exist and affect all class members, is considered a 'minimal burden for a party to shoulder.'" Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194, 205 (E.D.N.Y. 2005). Indeed, "[c]ommonality is assumed where the plaintiff seeks declaratory relief as opposed to individual relief." Id. (citing Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey, 698 F.2d 150, 151 (2d Cir. 1983).

There is no requirement that all questions of law or fact to be common to the class. Marisol A. v. Giuliani, 126 F.3d at 376 (2d Cir. 1997); In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 166-67 (2d Cir. 1987). The inevitable factual differences among the class members does not preclude a finding of commonality; plaintiffs need only identify "a uniform thread" among the claims. Monaco v. Stone, 187 F.R.D. 50, 63 (E.D.N.Y.1999). See also Vengurlekar v. Silverline Technologies, Ltd., 220 F.R.D. 222, 227 (S.D.N.Y. 2003) (commonality met where class members' individual circumstances stem for a unitary course of conduct).

9

Here, each named plaintiff alleges the same violations of law and deprivations of rights. Questions of law common to the class here include whether ACS' pattern and practice of making emergency removals of children from their kinship foster parents under non-emergency circumstances violates plaintiffs' substantive and procedural due process rights and their rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizure; whether ACS' failure to promulgate any guidance on non-emergency removals of children from kinship foster care violates plaintiffs' substantive and procedural due process rights and their rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizures; and whether the ACS Independent Review procedures and 18 N.Y.C.R.R. § 443.5 comply with procedural due process.

Questions of fact common to the class include whether ACS has a pattern and practice of removing children from kinship foster parents on an emergency basis when no true emergency exists; whether ACS has failed to define substantively what constitutes an "emergency" for purposes of making an emergency removal of children from kinship foster parents; and whether ACS has adopted substantive guidelines for removing children from kinship foster homes in non-emergency circumstances.

**Typicality.**  The claims of the named plaintiffs are typical of the claims of the class members.  The typicality requirement is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Comer v. Cisneros, 37 F.3d 775, 797 (2d Cir. 1994) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)); see also Alexander A. v. Novello, 210 F.R.D. 27 (E.D.N.Y. 2002) (claims found to be typical because they arose from defendants' same general

course of conduct toward mentally disabled children eligible for residential treatment facility services).

The named plaintiffs and members of the plaintiff all claim that defendants pattern and practice of removing them from kinship foster homes on an emergency basis and/or without due process deprives them of rights to which they are constitutionally entitled. Moreover, injunctive and declaratory relief is sough on behalf of the named plaintiffs and members of the plaintiff class.

**Adequacy.** The representative parties and their counsel will fairly and adequately protect the interests of members of he subclasses. Adequacy requires that there be no conflicts of interest between the named plaintiffs and proposed class members, and that class counsel be experienced in class action litigation. In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). In this case, all of the class members share the same interest in maintaining their rights to the family relationship and to procedural due process. There are no conflicts among the class members. Additionally, counsel for the subclass of children is The Legal Aid Society, which is very experienced in class action litigation.

Plaintiffs also satisfy all the requirements of Fed. R. Civ. P. 23(b)(1) and (b)(2) (although only one of those requirements need be satisfied). First, pursuing separate actions "would create a risk of . . . inconsistent or varying adjudications" that "would establish incompatible standards of conduct," Fed. R. Civ. P. 23(b)(1)(a). That risk would be particularly acute in the event that actions in different courts were to proceed separately on behalf of kinship foster parents and foster children. Multiple separate actions on behalf of the two subclasses could result in divergent conclusions about the rights of foster parents and their foster children, even though their

liberty interests are closely intertwined.

Second, with regard to the constitutionality of the Independent Review Procedures, defendants have "acted or refused to act on grounds generally applicable to the class" so that injunctive or declaratory relief is appropriate "with respect to the class as a whole," Fed. R. Civ. P. 23(b)(2). The plaintiff children have limited their clams to the constitutionality of those procedures. Because of this limitation, the questions of fact and law pertain equally to all kinship foster parents and children that have been or will become subject to those procedures.

The presence of a monetary claim on behalf of the children is not a reason for the denial of class certification under Rule 23(b)(2). As the Second Circuit has held, "[w]hen considering a motion for Rule 23(b)(2) certification of a claim seeking both injunctive relief and non-incidental monetary damages, 'a district court must "consider[] the evidence presented at a class certification hearing and the arguments of counsel," and then assess whether (b)(2) certification is appropriate in light of "the relative importance of the remedies sought, given all of the facts and circumstances of the case."'" Parker v. Time Warner Entertainment Co., L.P., 331 F.3d 13, 20 (2d Cir. 2003); see Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. at 207 ("The presence of a damages claim will not defeat maintenance of a class action under Rule 23(b)(2) when the requested ... injunctive relief is a significant component of the overall relief which plaintiffs seek.").

Here, the injunctive and declaratory relief sought by plaintiffs is not only "a significant component of the overall relief" sought; it is the primary relief sought. Damages sought by the plaintiffs, while significant for them, is ancillary to the declaratory and injunctive claims. Accordingly, class certification under Rule 23(b)(2) is appropriate.

**CONCLUSION**

For all of the forgoing reasons, plaintiffs request that this Court grant plaintiffs' motions for certification of a subclass of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents."

Dated: New York, New York
       June 17, 2005

                        Respectfully submitted,


                        THE LEGAL AID SOCIETY
                        ADRIENE L. HOLDER, Esq.
                        Attorney-in-Charge, Civil Division
                        SCOTT A. ROSENBERG, Esq. (SAR5579)
                        Director of Litigation, Civil Division
                        JENNIFER BAUM, Esq., of counsel (JB4030)
                        GARY SOLOMON, Esq. (GS 5626)
                        Director of Legal Support, Juvenile Rights Division
                        NANCY ROSENBLOOM Esq. (NR1275)
                        Director of Litigation, Juvenile Rights Division
                        LOUIS SARTORI, Esq., of counsel (LSS0011)
                        199 Water Street
                        New York, New York 10038
                        (212) 577-3300


                        By: _____
                        JENNIFER BAUM, Esq. (JB4030)