

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

A. C., and H. C., by their Next Friend BARBARA WEINER,
individually and on behalf of all others similarly situated,

                         Plaintiffs,                 :        05 Civ. 2986 (TPG)

               - against -              :        **AMENDED**
                                                  :        **CLASS ACTION**
                                                    :        **COMPLAINT**

JOHN MATTINGLY, in his official capacity as
Commissioner of the New York State Education
Department; and JOHN JOHNSON, in his official
capacity as Commissioner of the New York State
Office of Children and Family Services;       :        **JURY TRIAL**
                      :        **DEMANDED**

                   Defendants.           :

------------------------------------------------------------------------x

      Infant plaintiffs A.C. and H.C., on behalf of themselves and all others similarly situated,

by their undersigned attorneys, allege as follows:

### PRELIMINARY STATEMENT

      1.     This case challenges the constitutionality of procedures governing the removal of

children from foster parents who are relatives ("kinship foster parents").

      2.     The New York City Administration for Family Services ("ACS") has a pattern

and practice of removing children from kinship foster parents on an emergency basis when no

true emergency exists. This pattern and practice results from the failure of ACS and the New

York State Office of Children and Family Services ("OCFS") to define what constitutes an

"emergency" for purposes of making or approving an emergency removal of children from

kinship foster parents.

3.      ACS and OCFS have failed to adopt substantive guidelines governing when a non-emergency removal of children from kinship foster care may be made. As a result, children in kinship foster care are denied substantive due process when they are removed from the care of relatives on a non-emergency basis without a sufficiently high showing that the relatives' care is inadequate.

4.      The procedure adopted by ACS and permitted by OCFS for challenging the removal of children from kinship foster parents, whether the removal is planned or completed, is set forth in a memorandum from ACS Special Counsel and Associate Commissioner Anne Williams-Isom to the executive directors of contract foster care agencies and ACS staff, dated July 2, 2004, and titled "ACS Administration for Children's Services Protocol for Independent Review" (hereinafter "I.R. Memo" or "Independent Review Protocol") (attached as Exhibit A). The Independent Review Protocol, and the State regulation pursuant to which it was adopted, violate procedural due process because they:

(a)      fail to ensure that a timely pre-removal hearing is held in all non-emergency cases;

(b)      fail to ensure a prompt post-removal hearing is held when an emergency would make a pre-removal hearing impracticable;

(c)      fail to ensure that a child or his or her law guardian receives timely or adequate notice of the removal of the child from a kinship foster parent, or of an Independent Review requested by a kinship foster parent;

(d)      fail to ensure that Independent Reviews comport with the basic elements of procedural due process, including the right of the kinship foster parent or the child to offer and challenge evidence, to compel the production of documents and

2

testimony, and to confront adverse witnesses; and

(e)   exclude the child from the Independent Review process except at the discretion of the Review Officer.

## PARTIES

5.   Plaintiff A.C. is child under eighteen years of age alleged to be neglected by her parents. She was born on October 4, 2003. Days after her birth, A.C. was remanded to the Commissioner of ACS to reside with her paternal aunt, Norma Balbuena, in foster care. A.C. lived with Ms. Balbuena from her first day in foster care until December 1, 2004. On that date, Episcopal Social Services (ESS), a social services agency acting as the agent of ACS, removed A.C. from her paternal aunt and placed her instead with a non-kinship foster parent.

6.   Plaintiff H.C., A.C.'s sister, is child under eighteen years of age alleged to be neglected by her parents. She was born on November 14, 2004. As a newborn, she was immediately remanded to the Commissioner of the New York City Administration for Children's Services, to reside with her paternal aunt Norma Balbuena in foster care. H.C. lived with her aunt and sister from her first day in foster care until December 1, 2004. On that date, ESS, acting as the agent of ACS, removed H.C. from her paternal aunt and placed her instead with a non-kinship foster parent.

7.   Defendant JOHN MATTINGLY is the Commissioner of ACS. ACS conducts investigations of suspected child abuse and maltreatment, takes custody of children who are at risk if left to reside with their parents, and in most instances decides whether children taken into protective custody may reside with relatives, an arrangement known as kinship foster care. ACS, and authorized agencies like ESS acting as agents of ACS, decide when children in foster care

3

should be removed from kinship foster care and placed with other relatives or non-relatives.

8.      Defendant JOHN JOHNSON is the Commissioner of OCFS. OCFS oversees New York State's local child protective agencies, including ACS, and promulgates regulations for removing children from kinship foster care.

## JURISDICTION AND VENUE

9.      This action is authorized by 42 U.S.C. § 1983, as an action seeking redress for the deprivation of constitutional rights by State action and under color of law.

10.      Jurisdiction is conferred upon the court by 28 U.S.C. § 1331, which provides for jurisdiction in the district courts of civil actions arising under the Constitution, laws, or treaties of the United States; and 28 U.S.C. § 1343(a)(3), which provides for jurisdiction in the district courts of civil actions to redress deprivation of rights secured by the Constitution of the United States.

11.      Venue properly lies with this district pursuant to 28 U.S.C. § 1391(b). Defendants Mattingly and Johnson both maintain offices in this district, and the actions complained of took place in this district.

## CLASS ACTION ALLEGATIONS

12.      Plaintiffs bring this proceeding as a class action pursuant to Rules 23(a) and (b)(1) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and a class of all others similarly situated.

13.      The class is defined as all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents.

4

14.    The class is so numerous that joinder of all members is impracticable. The New York City Mayor's Management Report for Fiscal 2004 reports that there were over 22,000 children in foster care in New York city alone last year, almost 20 percent of them placed with relatives.

15.    Questions of fact common to the class include whether ACS has a pattern and practice of removing children from kinship foster parents on an emergency basis when no true emergency exists; whether ACS has failed to define substantively what constitutes an "emergency" for purposes of making an emergency removal of children from kinship foster parents; and whether ACS has adopted substantive guidelines for removing children from kinship foster homes in non-emergency circumstances.

16.    Questions of law common to the class include whether ACS' pattern and practice of making emergency removals of children from their kinship foster parents under non-emergency circumstances violates plaintiffs' substantive and procedural due process rights and their rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizure; whether ACS' failure to promulgate any guidance on non-emergency removals of children from kinship foster care violates plaintiffs' substantive and procedural due process rights and their rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizures; and whether the ACS Independent Review procedures and 18 N.Y.C.R.R. § 443.5 comply with procedural due process.

17.    The claims of the named plaintiffs are typical of the claims of the class.

18.    The named plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are represented by The Legal Aid Society, whose attorneys have litigated numerous

class actions in federal and state courts, including class actions on behalf of foster children. There are no conflicts of interest among members of the proposed class.

19.    The proposed class comprises infant plaintiffs who are unable to bring individual actions because they are minor wards of the State. The action seeks declaratory and injunctive relief. For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

20.    Plaintiffs bring this action under Rules 23(b)(1) and 23(b)(2) because (1) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the defendants; and (2) defendants have acted on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to the class as a whole.

## STATUTORY AND REGULATORY FRAMEWORK

### Article 10 of the Family Court Act

21.    Protection of children is a State concern. In New York State, responsibility for the protection of children rests with the State and the local child protective agencies. OCFS oversees the local child protective agencies, including ACS in New York City.

22.    ACS and other local agencies may, in turn, assign case management functions to various private social services agencies with whom they contract. In the case of A.C. and H.C., ACS assigned case management functions to ESS.

23.    The New York State Family Court Act (the "Act") establishes procedures for protecting children from injury or mistreatment and "safeguard[ing] their physical, mental, and

6

emotional well-being." F.C.A. § 1011.

24.    Pursuant to the Act, if a child protective agency has "reasonable cause" to believe that a child is in "imminent danger to . . . life or health," it may seek a court order to take the child into protective custody. F.C.A. § 1022(a). If there is not enough time to obtain a court order, the agency may take or keep the child in protective custody without court order. F.C.A. § 1024(a).

25.    Under the Act, when a local child protective agency removes a child from the home, the Family Court shall direct the agency to conduct an investigation to locate suitable relatives of the child with whom she might stay. F.C.A. § 1017.1. Once a suitable relative is located, the Family Court either places the child directly with the relative ("direct placement"), or it remands the child to the commissioner of the child protective agency for placement with that relative. F.C.A. § 1017.2(a)(i,ii). If the child is remanded to the commissioner for placement with a relative, the court also orders the commissioner to conduct a twenty-four hour home study of the relative, and then approve the relative as a foster parent or, if not appropriate to do so, report that fact to the court "forthwith." F.C.A. § 1017.2(a)(ii)

26.    Nothing in the Act precludes the Family Court from directing that a child shall reside with a relative who is not a certified foster parent. Likewise, nothing in the Act requires the removal of a child from a relative who is not a certified foster parent. Indeed, the Act specifically authorizes the Family Court to direct that a child shall reside with a relative, whether or not the relative is an approved foster parent. F.C.A. § 1017.1(b).

27.    Relatives and children have independent liberty interests in their family relation-ship that are not dependent upon whether ACS approves or disapproves a relative's request to be

7

approved as a foster parent.

**Department of Social Services Regulations**

28.    New York State Department of Social Services regulations are promulgated

pursuant to New York State Social Services Law §§ 20(3)(d), 34(3)(f), and 378. They govern

the removal of children from foster parents provide for notice and an opportunity for the foster

parent to be heard. 18 N.Y.C.R.R. § 443.5.

29.    The regulations provide that, except in circumstances where immediate removal is

necessary in order to protect the health and safety of the child, the local social services official or

private agency must provide the foster parent with written notice at least ten days prior to the

planned removal of the child. 18 N.Y.C.R.R. § 443.5(a)(1). The notice must advise the foster

parent that she can request a "conference" with the child protective agency to learn the reasons

for the proposed removal, and she may challenge the proposed removal at the conference.

Additionally, the notice must state that the foster parent may bring a representative with her to

the conference. 18 N.Y.C.R.R. § 443.5(a)(2).

30.    Once requested, the conference must take place within ten days. The local social

services official must send written notice of the date, time, and place of the conference to the

foster parent and to the private agency at least five days prior to the date the conference will be

held. 18 N.Y.C.R.R. § 443.5(b).

31.    Once a request for a conference has been made, the child may not be removed

from the foster family home prior to the date of the planned removal or until at least three days

after the notice of decision is sent, whichever is later. 18 N.Y.C.R.R. § 443.5(d).

8

**The Independent Review Protocol**

Removing Children from the Foster Home

32.     Pursuant to 18 N.Y.C.R.R. § 443.5(a)(3), ACS promulgated the Independent

Review Protocol attached as Exhibit A.  In the case of a planned removal from foster parents

within the five boroughs of New York City, the Independent Review Protocol requires that foster

parents must receive notice of the proposed removal at least ten days in advance of the action.  A

Form CS-701D, entitled "Notice for Removal of Child(ren) From a Foster Home," is to be used

for this purpose.  There is no requirement that a child or his or her representative receive notice.

The Protocol further provides for an "Independent Review" at which a foster parent may meet

with the agency and challenge the proposed removal.  Procedures for issuing the Form CS-701D

and holding an Independent Review are set forth in the Protocol.

33.     Removals of foster children must be done on notice to the foster parent, "except

where the health or safety of the child[ren] requires that the child[ren] be removed immediately

from the foster family home."  I.R. Memo at ¶ II.A.  There are no guidelines, standards, require-

ments, policies or other guidance, however, on removing children from the foster home in non-

emergency circumstances.  Agencies are left to decide for themselves when they may remove

children from kinship foster homes if there is no emergency present.

34.     On the back of Form CS-701D, the section titled "Independent Review" sum-

marizes rules for requesting and participating in the Independent Review.  The form notice states

that the foster parent may bring a representative, and if the representative is an attorney, then the

agency might also bring an attorney.

35.     The I.R. Memo states that foster parents have three options when faced with the

9

planned removal of a foster child: (1) request a Foster Care Agency Conference, (2) request an Independent Review, and (3) request a New York State fair hearing. I.R. Memo at ¶ II.B. A foster parent may request any or all of the options in sequence or simultaneously. I.R. Memo at ¶¶ III.A, V.C.

36.    In the case of an emergency removal of foster children, a form CS-701D must be provided to the foster parent at the time of the removal or as soon as is practicable thereafter. I.R. Memo at ¶ II.A.2. A foster parent whose foster child was removed on an emergency basis may challenge the action after the removal at an Independent Review, a fair hearing, or both. I.R. Memo at ¶¶ II.A.2, V.C.

37.    The I.R. Memo provides that notice to the law guardian of an Independent Review is optional. There is no requirement that a child or his or her representative receive timely or adequate prior notice of an Independent Review requested by a foster parent. I.R. Memo at ¶ IV.C.

Conducting the Independent Review

38.    The procedures to be used at an Independent Review are set forth in the ACS Independent Review Memo at ¶ IV.

39.    The Memo notes that the Independent Review must be held within ten days of being requested. Id. at A. Upon information and belief, however, Independent Review hearings are frequently scheduled for or adjourned by the agency to a date later than ten days from the date of request.

40.    Attendance at the Independent Review is mandatory for the foster parent and an agency representative who has knowledge of the case, though if an agency representative is not

10

able to attend within the ten-day time frame, "the Reviewer will use his/her discretion about how to proceed in consultation with ACS Division of Legal Services." Id.

41.    ACS' Office of Confidential Investigations (OCI) has 60 days to complete an investigation into suspected child abuse or maltreatment, including suspected child abuse and maltreatment by a foster parent in the foster home. If OCI is conducting an investigation of a foster parent who requests an Independent Review of a removal based on the same allegations being investigated by OCI, the Review will go forward within ten days even if the OCI report is not completed. Id.

42.    If the Independent Review Officer's decision differs from the recommendation of an OCI report, the ACS Office of Advocacy will review its decision with OCI and the Commissioners of the respective offices, and a final decision will be reached. I.R. Memo at ¶ V.A.

43.    The Independent Review is a social work conference. I.R. Memo at ¶ IV.D. It is not a legal proceeding. Id. at ¶ IV.D.1. The rules of evidence do not apply. Id. The role of a representative at the Review is limited:

- While the foster parent may bring an attorney, the attorney may not question attendees. I.R. Memo at ¶ IV.E.2.

- The attorney may not object to questions posed to the foster parent. Id. at ¶ IV.D.2.

- The attorney may only ask questions by posing them first to the Review Officer, who will decide whether the question will be asked. Id. at ¶ IV.E.3.

- The attorney does not have a right to "discovery." Id. at ¶ IV.F. The Reviewer alone decides what documents, if any, participants at the Review are entitled to

11

receive. Id.

- The Reviewer may accept documents at the review and not disclose them to other participants where "confidentiality would prohibit disclosure." Id.

44.    The Review Officer must issue a decision within five days of the review. I.R. Memo at ¶ IV.D.

45.    The decision whether to permit a child to attend the Independent Review, and to present evidence, is left to the sole discretion of the Review Officer.

## FACTS PERTAINING TO THE NAMED PLAINTIFFS

46.    On October 3, 2003, A.C. was born with a positive toxicology for cocaine. ACS took custody of the child and commenced a child protective proceeding against her parents under Article 10 of the Family Court Act. At the initial appearance, Family Court ordered A.C. remanded to the Commissioner of ACS, for placement with her paternal aunt, Norma Balbuena. ACS assigned case management duties to ESS, which acted on behalf of and reported to ACS in this matter. Since plaintiff Norma Balbuena was not a foster parent at the time her niece was placed with her, her home was investigated and "approved" for the child. ESS thereafter provided initial and ongoing foster parent training to Ms. Balbuena.

47.    A year after A.C. was placed with Ms. Balbuena, her sister H.C. was born and also placed into foster care with Ms. Balbuena.

48.    The siblings remained in foster care together with Ms. Balbuena until December 1, 2004. On that day, ESS case workers received a report from the State Central Register ("SCR"), the hotline for child abuse and maltreatment, that Ms. Balbuena was not adequately caring for A.C. and H.C., or for her own children. ESS went to Ms. Balbuena's home,

immediately removed A.C. and H.C. without court order and without providing a 10-day notice, and placed them in a foster home with non-relatives. ESS did not remove Ms. Balbuena's own children. ESS did not provide a ten-day notice to the children's law guardian.

49.    Upon information and belief, there was no emergency condition which required the children's immediate removal. There was no reason that ESS could not have provided a 10-day notice in this case to both the foster parent and the children's representative.

50.    Ms. Balbuena objected to the removal of the children and requested an Independent Review that same day. The Review, which is supposed to be scheduled within ten days, was scheduled for twelve days later, on December 13, 2004.

51.    Although the Decision After Independent Review must be issued no later than five days after the Review, the Decision in this case was issued on December 29, 2004, sixteen days after the Independent Review, and 28 days after the children were removed and placed with strangers.

52.    The Decision in Ms. Balbuena's case sustained ESS's actions in removing the children. Ms. Balbuena disagreed with the decision and consulted an attorney. On February 28, 2004, she requested a State administrative fair hearing to challenge the Decision After Independent Review.

53.    The Fair Hearing was commenced 29 days later, on March 29, 2005, or 118 days after the children were removed. The hearing was continued to May 16 and May 20, 2005, for additional testimony. The hearing was ultimately concluded, and a decision is currently pending.

54.    As of the filing of this Complaint, 167 days have elapsed since the children were removed and Ms. Balbuena first asked for them to be returned.

13

## FACTS COMMON TO THE PLAINTIFF CLASS

55.    Upon information and belief, ACS, and authorized agencies acting as its agent, have a pattern and practice of removing children from kinship foster parents on an "emergency" basis when no true emergency exists. As the oversight agency for ACS, OCFS condones and acquiesces in this pattern and practice of unlawful removals.

56.    This pattern and practice is caused in part by the failure of ACS and OCFS to define what constitutes an "emergency" for purposes of making an emergency removal of children from kinship foster parents.

57.    ACS and OCFS have failed to adopt substantive guidelines governing when a non-emergency removal of children from kinship foster care may be made. This failure has permitted children to be removed from kinship foster parents without a showing of either neglect or unfitness by the kinship foster parent.

58.    Upon information and belief, Independent Reviews are regularly scheduled more than ten days after they are requested. Upon information and belief, Decisions After Independent Reviews are regularly issued more than five days after the Review is concluded.

59.    Upon information and belief, the law guardians for children who are removed from kinship foster parents routinely do not receive timely or adequate notice of the removal. Form CS-701D is routinely not served upon the law guardians of children who are removed from kinship foster parents.

60.    Upon information and belief, the law guardians for children who are removed from kinship foster parents routinely do not receive timely or adequate notice of an Independent Review requested by the foster parent.

14

61.    Placement with a relative is usually seen as the best alternative when out-of-home care is necessary. The removal of children from kinship foster parents without a showing of either neglect or unfitness by the kinship foster parent is harmful to children, since it results in a deprivation of the benefits and resources of care by family members.

## FIRST CLAIM FOR RELIEF

62.    Defendant MATTINGLY's policy, pattern and practice of removing children from kinship foster homes on an emergency basis when a true emergency does not exist violates the right to be free from unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, and the Fourteenth Amendment's guarantee of substantive due process. Defendant JOHNSON  in his oversight capacity also violates the Fourth and Fourteenth Amendments of the United States Constitution in condoning, acquiescing in, permitting and approving of ACS' actions.

## SECOND CLAIM FOR RELIEF

63.    Defendant MATTINGLY's failure to promulgate substantive standards governing removals of children from kinship foster parents on a non-emergency basis violates plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution, and the right to be free from unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Defendant JOHNSON  in his oversight capacity also violates the Fourth and Fourteenth Amendments to the United States Constitution by condoning, acquiescing in, permitting and approving ACS' lack of guidance.

15

## THIRD CLAIM FOR RELIEF

64.     Defendant MATTINGLY's Independent Review Protocol violates the Fourteenth Amendment's guarantee of procedural Due Process, in that it:

(a)     fails to ensure that a timely pre-removal hearing is held in all non-emergency cases;

(b)     fails to ensure a prompt post-removal hearing is held when an emergency would make a pre-removal hearing impracticable;

(c)     fails to ensure that a child or his or her law guardian receives timely or adequate notice of the removal of the child from a kinship foster parent, or of an Independent Review requested by a kinship foster parent;;

(d)     fails to ensure that Independent Reviews comport with the basic elements of procedural due process, including the right to offer and challenge evidence, to compel the production of documents and testimony, and to confront adverse witnesses; and

(e)     excludes the child from the Independent Review process except at the discretion of the Review Officer.

Defendant JOHNSON  in his oversight capacity also violates the Fourteenth Amendment of the United States Constitution by condoning, acquiescing in, permitting and approving of ACS' actions.

## FOURTH CLAIM FOR RELIEF

65.     18 N.Y.C.R.R. § 443.5 violates the Due Process clause of the Fourteenth Amendment to the United States Constitution because it fails to ensure that a child or his or her

16

law guardian will receive timely or adequate notice of the removal of the child from a kinship

foster parent, or of an Independent Review requested by a kinship foster parent, and fails to

ensure that Independent Reviews comport with the basic elements of procedural due process.

### FIFTH CLAIM FOR RELIEF

66.    Defendant MATTINGLY's policy, pattern and practice of failing to schedule

timely Independent Review hearings, and failing to issue timely Independent Review decisions,

violates the Fourteenth Amendment's guarantee of procedural due process. Defendant

JOHNSON in his oversight capacity also violates the Fourteenth Amendment of the United

States Constitution by condoning, acquiescing in, permitting and approving of ACS' actions.

### SIXTH CLAIM FOR RELIEF

### (Against Defendant MATTINGLY Only)

67.    Defendant MATTINGLY's policy, pattern and practice of delaying Independent

Review hearings beyond ten days, and of delaying Independent Review decisions beyond five

days, violates 18 N.Y.C.R.R. §§ 443.4(c) and 443.5(b)

### SEVENTH CLAIM FOR RELIEF

68.    Defendants MATTINGLY and JOHNSON's actions as alleged herein deprived

the named plaintiffs and class members of rights or benefits created or established under federal

law and regulation and the due process clause of the United States Constitution, for which a

cause of action for damages is created by 42 U.S.C. § 1983.

69.    Plaintiffs sustained physical, mental, and emotional injuries, as well as the loss of

or damage to personal possessions, as a result of the defendants' violation of their constitutional

rights. They have suffered damages in an amount to be determined at trial.

17

## REQUESTS FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

(1)    Certify that this action may be maintained as a class action pursuant to Rules 23(a) and 23(b)(1) and 23(b)(2) of the Federal Rules of Civil Procedure, with the plaintiff class consisting of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents."

(2)    Declare that:

(A) defendant MATTINGLY's policy, pattern and practice of removing class members from kinship foster homes on an emergency basis when no true emergency exists violates the substantive due process clause guarantees of the Fourteenth Amendment to the United States Constitution and the Fourth Amendment's prohibition against unreasonable seizures;

(B) defendant MATTINGLY's failure to promulgate guidelines, policies, or procedures governing removals of class members from kinship foster parents on a non-emergency basis violates their substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution, and the right to be free from unreasonable seizures guaranteed by the Fourth Amendment to the United States Constitution;

(C) defendant MATTINGLY's policy, pattern and practice of delaying Independent Review hearings beyond the ten day regulatory limit set forth in 18 N.Y.C.R.R. § 443.5(b), and of delaying Independent Review decisions beyond the five day regulatory limit set forth in 18 N.Y.C.R.R. § 443.5(c), violate those regulatory requirements and the Fourteenth

18

Amendment's guarantee of procedural due process;

(D) defendant MATTINGLY's Independent Review procedures violate the Fourteenth Amendment's guarantee of procedural due process;

(E) defendant MATTINGLY's Independent Review procedures violate the Fourteenth Amendment's guarantee of substantive due process, in that they interfere with class members' substantive rights to the familial relationship;

(F) defendant JOHNSON, in his oversight capacity, violates the United States Constitution's Fourteenth Amendment guarantee of substantive and procedural due process and Fourth Amendment protection against unlawful seizures by condoning, acquiescing in, permitting and approving of ACS' actions;

(G) defendant JOHNSON violated the procedural due process clause of the Fourteenth Amendment to the United States Constitution by promulgating 18 N.Y.C.R.R. § 443.5, which fails to require local child protective agencies to provide constitutionally adequate notice or procedures to kinship foster parents.

(2)    Issue preliminary and permanent injunctions against defendant MATTINGLY:

(A) directing that class members who remain in foster care shall be removed from their kinship foster home on an emergency basis only when there is imminent risk to the child's health or safety, and thereafter be provided with a constitutionally adequate notice and a meaningful opportunity to be heard on the removal;

(B) directing that class members who remain in foster care shall be removed from their kinship foster home on a non-emergency basis only after constitutionally adequate notice and a meaningful opportunity to be heard on the removal;

(C) directing that class members who remain in foster care shall be removed from their kinship foster home on a non-emergency basis only where the kinship foster parent allows the child's physical, mental or emotional condition to be impaired as a result of the failure of the kinship foster parent to exercise a minimum degree of care in supplying the child with adequate food, clothing, shelter, education, supervision, or guardianship;

(D) directing that foster children's representatives, in addition to foster parents, receive notice of a proposed removal at least ten days in advance of the action, and timely and adequate notice of any Independent Review requested by a foster parent;

(E) directing that Independent Reviews be held within the ten day regulatory limit set forth in 18 N.Y.C.R.R. § 443.5(b);

(F) directing that Independent Review decisions be issued within the five day regulatory limit set forth in 18 N.Y.C.R.R. § 443.5(c);

(G) directing that procedures be promulgated for conducting the Independent Review consistent with the procedural Due Process Requirements of the Fourteenth Amendment by providing that foster parents and class members have an opportunity to present and compel the production of evidence and confront adverse testimony, witnesses, and evidence;

(H) directing that training be provided to case workers, supervisors, legal, and other ACS staff on the standards for making emergency and non-emergency removals of children from kinship foster parents according to constitutionally adequate procedures;

(I) directing that notice of an opportunity for a constitutionally adequate Independent Review should be provided to class members who were removed from their kinship foster parents without such an opportunity since July 1, 2004;

(J) directing provision of monitoring documents to plaintiffs' counsel, including:

i. Decisions After Independent Review involving kinship foster parents;

ii. All SCR reports issued in connection with Decisions After Independent Review for kinship foster parents;

iii. All Forms "CS-701" issued to foster parents and class members' representatives prior or subsequent to removals of children from kinship foster care;

iv. Any and all proposed revisions to Independent Review procedures;

(3)     Issue preliminary and permanent injunctions against defendant JOHNSON:

(A) directing that 18 N.Y.C.R.R.§ 443.5 be revised to comport with the Due Process requirements of the Fourteenth Amendment to the United States Constitution;

(B) directing that supervision and oversight over Defendant MATTINGLY's implementation of policies and guidelines authorizing removal of children from kinship foster parents be instituted, ensuring compliance with State and Federal Constitutional requirements by, inter alia, conducting case reviews and  trainings, and performing other supervisory functions, in order to ensure practice meets constitutional requirements;

(4)     Award to plaintiffs reasonable compensatory damages;

(5)     Award to plaintiffs reasonable attorneys' fees, costs, and disbursements associated with the prosecution of this action, pursuant to 42 U.S.C. § 1988; and

(6)     Grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 17, 2005

21

Respectfully submitted,


THE LEGAL AID SOCIETY
ADRIENE L. HOLDER, Esq.
Attorney-in-Charge, Civil Division
SCOTT A. ROSENBERG, Esq. (SAR5579)
Director of Litigation, Civil Division
JENNIFER BAUM, Esq., of counsel (JB4030)
GARY SOLOMON, Esq. (GS 5626)
Director of Legal Support, Juvenile Rights Division
NANCY ROSENBLOOM Esq. (NR1275)
Director of Litigation, Juvenile Rights Division
LOUIS SARTORI, Esq., of counsel (LSS0011)
199 Water Street
New York, New York 10038
(212) 577-3300


By: _____
JENNIFER BAUM, Esq. (JB4030)

22



**ADMINISTRATION FOR CHILDREN'S SERVICES**
COMMISSIONER'S OFFICE
150 William Street – 18th Floor
New York, N.Y. 10038
Phone (212) 341-0958  Fax (212) 341-2946

WILLIAM C. BELL
*Commissioner*

ANNE WILLIAMS-ISOM
*Special Counsel/*
*Associate Commissioner*

# MEMORANDUM

**DATE:**      July 2, 2004

**TO:**      Executive Directors, Contract Foster Care Agencies
      ACS Staff

**FROM:**      Anne Williams-Isom

**SUBJECT:**      Independent Review Protocol

The purpose of this protocol is to provide information about the Independent Review process and clarify the roles of Independent Review participants. This protocol will specifically outline the process for: notifying foster parents of their right to an Independent Review; requesting an Independent Review; conducting an Independent Review; issuing the Independent Review decision; complying with the Independent Review decision; appealing the Independent Review decision.

## . *ACS* ADMINISTRATION FOR CHILDREN'S SERVICES

### Protocol for

### INDEPENDENT REVIEW
Date: 7/2/04

## I.  Introduction

The mission of the ACS Office of Advocacy is to provide impartial resolutions to conflicts among parents, children, and foster parents and ACS offices or contract agencies. Within the Office of Advocacy, the Independent Review Unit has been designated by the Commissioner to implement Section 443.5 of the New York State Social Services Regulations (18 NYCRR § 443.5). Section 443.5 provides that foster family parents may request a conference with the social services official

or designee whenever a social services official or another authorized agency proposes to remove a child in foster family care from the foster family home. This conference is called an "Independent Review." At such conference, scheduled within 10 days of receipt of the request for the conference, the foster parents, with or without a representative, may appear to have the proposed action reviewed, be advised of the reasons for the removal, and be afforded an opportunity to submit reasons why the child(ren) should not be removed.

## II.  Removal from a Foster Home

### A.  Written Notification of Removal (Form CS-701D)

Foster parents must receive written notification of intent to remove a foster child from their home in all cases of removal, except removals due to a court order or State Fair Hearing Decision. Section 443.5 of the Social Services Regulations states that where a social services official or other authorized agency proposes to remove a child from a certified foster home, the foster parents must be notified in writing (via Form CS-701D). The Form CS-701D contains information explaining the reason for the removal and also provides information relating to the foster parents' right to contest the decision by requesting a review. The caseworker must leave a copy of the Form CS-701D in the case record to document that the form was given to the foster parents.

Section 443.5 also states that written notification must be given at least 10 days prior to the proposed effective date of the removal, except where the health or safety of the child requires that the child be removed immediately from the foster family home.

1.  For planned removals, the foster parent must receive the notice (Form CS-701D) at least ten days prior to the removal date. If the foster parent requests an Independent Review, the child may not be removed from the home until at least three days after the notice of decision is sent, or prior to the proposed effective date of removal, whichever occurs later (unless it is subsequently determined that the health or safety of the child requires that the child be removed immediately from the foster home).

2.  For emergency removals, Form CS-701D should be given at the time of the removal or as soon as is practicable thereafter (e.g., send by certified mail the next day). The foster parents may request an Independent Review. Note that the foster home cannot be closed until the Independent Review decision is rendered.

### B.  Contesting the Removal of a Foster Child

Certified foster parents or approved relative foster parents have the right to a review of any removal or plan for removal of a child in foster care unless it is ordered by the court or State Fair Hearing decision. These rights are described on the reverse side of the CS-701D, *Notice For Removal Of Child(ren) From A Foster Home*.

Foster parents who disagree with the removal of the child(ren) from their homes may request any or all of the following:

1. A Foster Care Agency Conference (Note that a foster parent can request a Foster Care Agency Conference only if the removal has not yet occurred. In addition, if the foster parent also requests an Independent Review, the Agency Conference cannot delay ACS's holding the Independent Review in accordance with the timeframes in Section 443.5 of the Social Services Regulations); and/or

2. An Independent Review by calling the Office of Advocacy at ACS (212-676-9002) before the date of the proposed action or if an emergency removal, as soon as is practicable after the removal; and/or

3. A New York State Fair Hearing by writing to the Bureau of Special Hearings.

Foster parents who do not object to the removal of the child from their home may waive their right to a foster care agency or Independent Review by signing, dating and returning the Form CS-701D to the case planner.

## III.  Requesting an Independent Review

### A. Making the Request

Foster parents who are seeking to review the plan to remove or the removal of a foster child from their home may request an Independent Review by calling the ACS Office of Advocacy at (212) 676-9002. This request must be made before the date of the proposed action. In the case of an emergency removal, the request for an Independent Review must be made as soon as is practicable after the removal.

Before scheduling the Independent Review, the foster parent(s) are encouraged to request a meeting with the foster care agency to discuss their objections prior to the removal of the child. If the matter cannot be resolved at the Foster Care Agency Conference or if the foster parent chooses to bypass the Foster Care Agency Conference, the foster parents' request for an Independent Review will be honored. Once the request has been received and accepted by ACS, the Independent Review will be scheduled within ten days.

When foster parents have requested an Independent Review, the removal of a child is stopped except where the health or safety of the child(ren) requires immediate removal.
IMPORTANT: **If foster parents need an interpreter or choose to be accompanied by an attorney or a representative, they must state this at the time of scheduling.**

### B. Requests for an Independent Review Can Be Denied For the Following Reasons:

* A court order has been issued regarding the placement of the subject children. A court order takes precedence over all administrative remedies.

* The person making the request is not a certified or approved foster parent or the child is not in ACS custody.

* The foster parent signed the Notice of Removal, waiving his or her right to an Independent Review.

* The foster parent requested that the child be removed from his/her home.

- The foster parent making the request is a "second" foster parent. Note that the issue of an Independent Review for a second foster parent arises when the first foster parent, from whose home the child was removed, requests an Independent Review and the decision from that Independent Review directs that the child be returned to the first foster parent. The New York State Office of Children and Family Services has opined that Section 443.5 of the Social Services Regulations does not require that the second foster parent receive a ten-day notice and an Independent Review after a decision was made following an Independent Review to return the child to the first foster parent.

## IV.  *Conducting the Independent Review*

### A.  Scheduling/Postponements of Reviews

Under Section 443.5 of the Social Services Regulations, the Independent Review must be held within 10 days of receipt of the foster parent's request. Once an Independent Review is scheduled, the date of the Independent Review will not be changed unless the foster parent makes such a request (e.g., the foster parent cannot attend the Independent Review) or an issue related to the foster parent arises (e.g., foster parent asks for a translator for the first time the day of the Independent Review and one is not available, the foster parent's attorney is not available). In order to postpone an Independent Review, the foster parent must contact the Reviewer 24-48 hours before the Review date. If an emergency arises the day of the Independent Review, the foster parent must contact the Reviewer as soon as possible to reschedule the Independent Review. The number of postponements allowed will be at the discretion of the Review Officer.

The foster care agency must attend the Independent Review, and send a person who has knowledge of the case and is prepared to discuss the case and reasons for the (proposed) removal. The Independent Review will not be adjourned beyond ten days of receipt of the foster parent's request if the caseworker from the agency handling the case cannot attend. If the caseworker handling the case cannot attend, the foster care agency must send another representative with knowledge of the case.

Should an agency representative not be able to attend within the ten-day timeframe, the Reviewer will use his/her discretion about how to proceed in consultation with ACS Division of Legal Services.

If the ACS Office of Confidential Investigations (OCI) is investigating the foster parent as a result of a report to the State Central Register of suspected child abuse and maltreatment, the Reviewer will explain to the foster parent that the Independent Review must be held within ten days even though the OCI decision will remain outstanding until the investigation is complete. (Note that the Reviewer will further explain that OCI has, by statute, 60 days to conduct its investigation and make a determination regarding the allegations made.)

### C.  Lateness

Foster parents and agencies are given the time and date of the Review. [NOTE: Section 443.5 states that the social services official shall send written notice of the time and place for the conference to the foster family parents and their representative, if any, and to the authorized agency, if any, at least five days prior to the date of the conference.] It is incumbent upon all the parties to make themselves available on the day and time that have

been allotted for them. If the foster parent does not appear within an hour of the Review appointment, the parties who are present will be released. It is at the Reviewer's discretion whether or not the Review can be rescheduled. If the agency does not appear within an hour of the allotted time to begin the Independent Review, the parties who are present will be released unless the Reviewer determines that the Independent Review can proceed without the agency. If the Review cannot proceed without the agency, it is at the Reviewer's discretion whether or not the Review can be rescheduled.

## C.  Attendance

- The foster parents must attend the Review and are entitled to be accompanied by a representative of their choice. The representative may be a friend, family member, community representative, foster parent advocate, or an attorney.

- A representative of the foster care agency, ACS Direct Foster Care Services (DFCS) or ACS Direct Care Adoption (DCA) office seeking removal must attend.

- If OCI is involved in the investigation of the foster home, the OCI worker must be present at the review.

- All other persons' attendance is at the discretion of the Reviewer.

## Other Parties May be Notified and/or Invited to Participate:

- ACM

- OCACM

- the law guardian

## D. Format

The Independent Review is conducted as a social work conference at which the Review Officer (an ACS Child Welfare Specialist Supervisor II) interviews all participants regarding the reasons for the plan for removal or the actual removal. The interviews, along with pertinent reports/documentation, will be used to inform the decision. Such decision will be issued in writing to the foster parents, their representative, if applicable, the ACS office, and the foster care agency within five days of the conference. At the time of decision the foster parents are notified of their right to appeal the decision by requesting a New York State Fair Hearing.

1. The Independent Review is not a legal proceeding and the Review Officer is not a Judge. The Rules of Evidence do not apply at an Independent Review.

2. If the foster parent chooses to bring an attorney, the role of the attorney is to assist the foster parent with responding to the questions posed by the Reviewer. The attorney is not permitted to question other participants at the table nor object to questions asked by the Reviewer. The Reviewer conducts all questioning. See section E below for more details about the role of the foster parents' representatives, which includes attorneys.

3. The Independent Review is tape-recorded.

4. The agency presents its information first, by oral statement and the introduction of supporting documentation, if any.

5. At any point during the review, the foster parent may ask to speak with his/her representative privately.

6. After the agency's presentation, the foster parent presents his/her information regarding the removal.

7. If OCI is involved, the Reviewer will use OCI's 7-day Assessment and the OCI worker will be present to provide information.

8. Input from any other necessary parties that are present at the Review will be at the Reviewer's discretion.

**E.     Role of the Foster Parent's Representative at the Independent Review**

1. The representative can provide the Review Officer with a statement or summary of the position of the foster parent.

2. Representatives will not be allowed to question any participant of the Review.

3. If the representative does have a question, it should be directed to the Review Officer who will decide if the answer to the question is needed for the decision or to apprise the foster parent of the reasons for the proposed action.

4. The representative can provide information pertaining to the removal of the subject child to the Review Officer that the foster parent or agency has not given to the Review Officer.

6. A representative has the right to consult with the foster parent whom he/she is representing.

7. If ACS and/or the foster care agency attend the Independent Review with a representative, these procedures will apply to all representatives.

**F.     Documentation/Materials Presented at Review**

All information to be considered by the Independent Reviewer must be submitted at the time of the conference (including but not limited to the agency case record, medical records, OCI/police/mental health or other reports, statements of the foster parent(s), agency representatives or other interested parties). It is critical that all parties to the conference arrive at the conference prepared with all statements or documents that they wish to be considered by the Reviewer. Because the Independent Review is not a legal proceeding, the rules of discovery do not apply. Accordingly, the Reviewer will determine what documents, if any, the participants at the Independent Review are entitled to receive. Whatever documents the Reviewer accepts for consideration as part of the decision-making process will be given to the participants except where confidentiality would prohibit disclosure.

# V.  The Independent Review Decision

Under Section 443.5(c) of the Social Services Regulations, ACS must render a decision within five days of the Independent Review.

## A.  Internal Review of the Independent Review Decision

If, after the Independent Review, the Office of Advocacy renders a decision that differs from OCI's recommendation (e.g., OCI recommends that the foster home be closed), the Office of Advocacy will review its decision with OCI. If OCI has obtained new information that was not discussed at the Independent Review, the foster care agency, DFCS, or DCA will issue another Form CS-701D, which will advise the foster parent of the right to request another Independent Review.

If OCI has not obtained any new information and its recommendation differs from the decision of the Independent Review, the Office of Advocacy and OCI will discuss their respective conclusions. If the conclusions of the Office of Advocacy and OCI still differ, the Deputy Commissioners who oversee the Office of Advocacy and OCI will review the Independent Review decision and the OCI recommendation. If necessary, they will consult with the Commissioner. They will then render a final decision, which will be sent to the parties.

## B.  Implementing the Independent Review Decision

Foster care agencies must comply with the Independent Review decision, even if they do not agree with it. NOTE: Section 443.5 states that the child shall not be removed from the foster family home until at least three days after the notice of decision is sent, or prior to the proposed effective date of removal, whichever occurs later. If the child has already been removed, the agency must comply with the Independent Review decision within 72 hours. If a foster care agency has a question about the decision, the agency should contact the Office of Advocacy.

If the Office of Advocacy has rendered its decision not to remove or return the child to the foster home and OCI and/or the foster care agency, DFCS, or DCA subsequently learn new information about the case that warrants removing the child, the foster care agency, DFCS, or DCA must issue another Form CS-701D, which will advise the foster parent of the right to request another Foster Care Agency Conference and/or Independent Review and/or New York State Fair Hearing.

## C.  Appealing the Decision of the Independent Review

The foster parent has the right to appeal the decision of the Independent Review by requesting a Fair Hearing with the New York State Office of Children and Family Services. It is important to note that if a Fair Hearing was requested at the same time an Independent Review was requested, the decision of the Independent Review must be implemented. Agencies cannot wait until the Fair Hearing is held and/or a decision is rendered. Information instructing a foster parent on the procedure to request a Fair Hearing will be provided at the time of the Independent Review. Note that the foster parent is informed of the right to request a Fair Hearing on Form CS-701D (Notice of Removal Form), at the Independent Review, and in the Independent Review Decision.

US 701D (ACE)
Rev. 9/03


nyc ACS
NYC Administration for
Children's Services

# NOTICE FOR REMOVAL OF CHILD(REN) FROM A FOSTER HOME

| To: | DATE: ____ / ____ / |
|---|---|

| FOSTER CHILD(REN) *(FIRST NAME, LAST NAME)*   DOB | FOSTER CHILD(REN) *(FIRST NAME, LAST NAME)*   DOB |
|---|---|
| _____ ___/___/___ | _____ ___/___/___ |
| _____ ___/___/___ | _____ ___/___/___ |
| _____ ___/___/___ | _____ ___/___/___ |

| CASE NAME: | ACS CASE NO: |
|---|---|

| FOSTER CARE AGENCY: |
|---|

| FOSTER CARE AGENCY CASEWORKER: | TEL. NO: ( ) _____ |
|---|---|

THE FOLLOWING ACTION HAS BEEN/WILL BE TAKEN (CIRCLE ONE) ON OR ABOUT ____ / ____ / ____ REGARDING THE ABOVE CHILD(REN):

☐ CHANGE IN SERVICE PLAN -- WE PLAN TO:

☐ PLACE THE CHILD(REN) IN ANOTHER FOSTER HOME OR OTHER APPROPRIATE FACILITY BECAUSE:

_____

_____

☐ PLACE THE CHILD(REN) IN AN ADOPTIVE HOME

☐ RETURN THE CHILD(REN) TO THE NATURAL PARENTS/LEGAL GUARDIANS/CUSTODIAN/SELF

☐ EMERGENCY REMOVAL: IT WAS NECESSARY TO REMOVE THE ABOVE CHILD(REN) BECAUSE:

_____

_____

IF YOU DO NOT OBJECT TO THE REMOVAL OF THE CHILD(REN) FROM YOUR HOME, PLEASE INDICATE THIS BY CHECKING THE BOX BELOW NEXT TO **WAIVER** AND RETURN THE FORM TO YOUR FOSTER CARE CASEWORKER. IF YOU DISAGREE WITH THE REMOVAL OF THE CHILD(REN) FROM YOUR HOME, YOU MAY REQUEST ANY OR ALL OF THE FOLLOWING:

* AN INDEPENDENT REVIEW BY CALLING THE OFFICE OF ADVOCACY AT THE ADMINISTRATION FOR CHILDREN'S SERVICES WITHIN TEN (10) DAYS OF RECEIVING THIS NOTICE

* A NEW YORK STATE FAIR HEARING BY WRITING TO THE BUREAU OF SPECIAL HEARINGS

IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT YOUR FOSTER CARE CASEWORKER

SIGNATURE: _____ TITLE: _____ AGENCY: _____

| ☐ **WAIVER:** I HAVE NO OBJECTIONS TO THE REMOVAL OF THE FOSTER CHILD(REN) FROM MY HOME. I WAIVE MY RIGHTS TO A FOSTER CARE AGENCY CONFERENCE AND AN INDEPENDENT REVIEW. |
|---|

FOSTER MOTHER'S SIGNATURE: _____ DATE: ____ / ____ /

FOSTER FATHER'S SIGNATURE: _____ DATE: ____ / ____ /

CS-701D (REVERSE)
REV. 9/03



nyc ACS
NYC Administration for
Children's Services

# INDEPENDENT REVIEW

IF YOU REQUEST AN INDEPENDENT REVIEW, YOU MUST TELEPHONE THE OFFICE OF ADVOCACY. YOU MAY BRING A REPRESENTATIVE TO THE INDEPENDENT REVIEW, BUT YOU ARE NOT REQUIRED TO DO SO. YOUR FOSTER CARE CASEWORKER AND AN ACS REPRESENTATIVE WILL ALSO ATTEND THE CONFERENCE. IF YOUR REPRESENTATIVE IS AN ATTORNEY, THE OTHER PARTIES MAY ALSO HAVE LEGAL REPRESENTATION. AT THE CONFERENCE, YOU MAY: 1) DISCUSS THE REASON FOR THE REMOVAL; 2) STATE WHY THE CHILD(REN) SHOULD NOT BE REMOVED OR SHOULD NOT HAVE BEEN REMOVED; AND 3) HAVE THE ACTION REVIEWED. UNLESS REMOVED ON AN EMERGENCY BASIS, THE CHILD(REN) WILL NOT BE REMOVED UNTIL AT LEAST THREE (3) DAYS AFTER DECISION IS SENT TO YOU, OR UNTIL THE DATE OF THE PROPOSED REMOVAL IF IT OCCURS LATER. THE CONFERENCE WILL BE HELD AT THE FOLLOWING LOCATION:

ADMINISTRATION FOR CHILDREN'S SERVICES
OFFICE OF ADVOCACY
150 WILLIAM STREET, 1ST FLOOR
NEW YORK, N.Y. 10038
(212) 676-9002

NOTE: IF YOU RECEIVED A NOTICE OF "INDICATION" ON A CHILD PROTECTIVE CASE AND WISH TO CONTEST THAT DECISION, YOU SHOULD REQUEST A REVIEW THROUGH THE STATE CENTRAL REGISTER AS INDICATED ON THE NOTICE YOU RECEIVED.

> **YOU MUST REQUEST AN INDEPENDENT REVIEW WITHIN 10 DAYS OF THE DATE OF THIS NOTICE OR YOUR REQUEST MAY BE DENIED**

# FAIR HEARING INFORMATION

IF YOU OBJECT TO THE REMOVAL OF THE CHILD(REN) FROM YOUR HOME, YOU MAY REQUEST A NEW YORK STATE FAIR HEARING, WHETHER OR NOT YOU REQUEST A FOSTER CARE AGENCY CONFERENCE OR AN INDEPENDENT REVIEW. THE INDEPENDENT REVIEW IS NOT A FAIR HEARING AND REQUESTING ONE DOES NOT PREVENT YOU FROM ALSO REQUESTING A FAIR HEARING. HOWEVER, THE CHILD(REN) MAY BE REMOVED FROM YOUR HOME FOLLOWING THE DECISION OF THE INDEPENDENT REVIEWER. IF YOU DO NOT REQUEST AN INDEPENDENT REVIEW OR THE DECISION OF THE INDEPENDENT REVIEW UPHOLDS THE REMOVAL, THE CHILD(REN) MAY BE REMOVED FROM YOUR HOME ON OR AFTER THE PROPOSED REMOVAL DATE AND BEFORE THE FAIR HEARING IS HELD. TO REQUEST A FAIR HEARING, YOU MAY WRITE TO THE NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, THE BUREAU OF SPECIAL HEARINGS, P.O. BOX 1930, ALBANY, NEW YORK, 12201. PLEASE INCLUDE THE FOLLOWING INFORMATION WHEN YOU REQUEST A FAIR HEARING:

- APPLICANT'S *(FOSTER PARENT)* NAME, ADDRESS AND TELEPHONE NUMBER.
- NAME AND DATE OF BIRTH OF CHILD REMOVED.
- NAME AND ADDRESS OF AGENCY THAT REMOVED THE CHILD.
- NAME AND TELEPHONE NUMBER OF SUPERVISOR/ADMINISTRATOR OF AGENCY THAT REMOVED THE CHILD.

> **YOU MUST REQUEST A FAIR HEARING WITHIN SIXTY DAYS OF THE DATE OF THIS NOTICE OR YOUR REQUEST MAY BE DENIED**

IF YOU REQUEST A FAIR HEARING, YOU HAVE A RIGHT TO EXAMINE YOUR CASE RECORD TO THE EXTENT THAT THE CASE RECORD IS NOT CONFIDENTIAL. YOU MAY REQUEST COPIES OF ANY PART OF THE CASE RECORD THAT YOU WISH TO PRESENT AT THE HEARING, AT NO COST TO YOU. AT THE FAIR HEARING, YOU WILL HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY, BY A FRIEND OR RELATIVE, OR YOU MAY REPRESENT YOURSELF. YOU WILL HAVE THE RIGHT TO BRING WITNESSES, TO QUESTIONS, AND TO PRESENT WRITTEN AND ORAL EVIDENCE. THE FOSTER CARE AGENCY AND THE ADMINISTRATION FOR CHILDREN'S SERVICES MUST COMPLY WITH THE DECISION ISSUED AFTER THE FAIR HEARING. IF YOU NEED LEGAL ASSISTANCE FOR YOUR AGENCY CONFERENCE OR FAIR HEARING AND YOU CANNOT AFFORD A LAWYER, CONTACT THE LOCAL LEGAL AID OR LEGAL SERVICES OFFICE. THIS ACTION IS BASED ON SECTION 400 OF SOCIAL SERVICES AND SECTION 443.5 OF TITLE 18 OF NEW YORK CODES RULES AND REGULATIONS.

DISTRIBUTION: ORIGINAL AND 1 COPY TO FOSTER PARENTS; 1 COPY FOR AGENCY RECORD; 1 COPY TO ACS CASE MANAGER

3

## AVISO DE REMOCIÓN DE NIÑO(S) DE UN HOGAR SUSTITUTO

| A: | | FECHA: / / |
|---|---|---|

| HIJO(S) ADOPTIVO(S) *(NOMBRE, APELLIDO)*   FCHA. NAC. | HIJO(S) ADOPTIVO(S) *(NOMBRE, APELLIDO)*   FCHA. NAC. |
|---|---|
| _____   __/__/__ | _____   __/__/__ |
| _____   __/__/__ | _____   __/__/__ |
| _____   __/__/__ | _____   __/__/__ |

| NOMBRE DE CASO: | NO. DE CASO DE ACS: |
|---|---|

AGENCIA DE CUIDADO ADOPTIVO:

| TRABAJADOR DE CASO DE LA AGENCIA DE CUIDADO ADOPTIVO: | NO. DE TELÉFONO: |
|---|---|

LA SIGUIENTE MEDIDA SE TOMÓ (CIRCULE UNO) EL O CERCA DEL ____/____/____ REFERENTE AL (LOS) NIÑO(S) MENCIONADO(S) ANTERIORMENTE:

[ ] CAMBIO EN EL PLAN DE SERVICIOS – PLANEAMOS:

[ ] UBICAR AL (LOS) NIÑO(S) EN OTRO HOGAR SUSTITUTO U OTRA INSTALACIÓN PORQUE:

_____

_____

[ ] UBICAR AL (LOS) NIÑO(S) EN UN HOGAR ADOPTIVO

[ ] REGRESAR AL (LOS) NIÑO(S) A LOS PADRES NATURALES / TUTORES LEGALES / CUSTODIO/ A SÍ MISMO

[ ] REMOCIÓN DE EMERGENCIA: FUE NECESARIO REMOVER AL (LOS) NIÑO(S) ANTERIORMENTE MENCIONADO(S) PORQUE

_____

_____

SI USTED NO SE OPONE A LA REMOCIÓN DEL (LOS) NIÑO(S) DE SU HOGAR, INDÍQUELO MARCANDO LA CASILLA QUE SIGUE JUNTO A EXENCIÓN Y REGRESE EL FORMULARIO A SU TRABAJADOR DE CASO DE CUIDADO ADOPTIVO. SI USTED NO ESTÁ DE ACUERDO CON LA REMOCIÓN DEL (LOS) NIÑO(S) DE SU HOGAR, PUEDE SOLICITAR CUALQUIERA O TODO LO SIGUIENTE:

- UNA REVISIÓN INDEPENDIENTE LLAMANDO A LA OFICINA DE ABOGACÍA EN LA ADMINISTRACIÓN PARA SERVICIOS INFANTILES DENTRO DE LOS 10 DÍAS DESPUÉS DE RECIBIR ESTE AVISO.
- UNA AUDIENCIA IMPARCIAL DEL ESTADO DE NEW YORK, ESCRIBIENDO AL BURÓ DE AUDIENCIAS ESPECIALES.

SI TIENE ALGUNA PREGUNTA, CONTACTE A SU TRABAJADOR DE CASO DE CUIDADO ADOPTIVO

FIRMA _____ TÍTULO: _____ AGENCIA: _____

| [ ] EXENCIÓN: NO ME OPONGO A LA REMOCIÓN DEL (LOS) NIÑO(S) ADOPTIVO(S) DE MI HOGAR. CEDO MIS DERECHOS A UNA CONFERENCIA DE AGENCIA DE CUIDADO ADOPTIVO Y A UNA REVISIÓN INDEPENDIENTE. |
|---|
| FIRMA DE LA MADRE SUSTITUTA: _____ FECHA: ____/____/____ |
| FIRMA DEL PADRE SUSTITUTO: _____ FECHA: ____/____/____ |

## REVISIÓN INDEPENDIENTE

SI USTED SOLICITA UNA REVISIÓN INDEPENDIENTE, DEBE TELEFONEAR A LA OFICINA DE ABOGACÍA. USTED DEBE TRAER A UN REPRESENTANTE A LA REVISIÓN INDEPENDIENTE, PERO NO ESTÁ OBLIGADO A HACERLO. TAMBIÉN ASISTIRÁN A LA CONFERENCIA SU TRABAJADOR DE CASO DE CUIDADO ADOPTIVO Y UN REPRESENTANTE DE ACS. SI SU REPRESENTANTE ES UN ABOGADO, LAS OTRAS PARTES TAMBIÉN PUEDEN TENER REPRESENTACIÓN LEGAL. EN LA CONFERENCIA, USTED PUEDE: 1) DISCUTIR LA RAZÓN PARA LA REMOCIÓN; 2) DECLARAR LA RAZÓN POR LA CUAL NO SE DEBERÍA REMOVER AL (LOS) NIÑO(S) O NO SE DEBERÍAN HABER REMOVIDO; Y 3) HACER QUE REVISEN LA MEDIDA. A MENOS QUE HAYAN SIDO REMOVIDOS COMO EMERGENCIA, NO SE REMOVERÁ AL (LOS) NIÑO(S) HASTA AL MENOS TRES (3) DÍAS DESPUÉS QUE LA DECISIÓN SE LE HAYA ENVIADO A USTED, O HASTA LA FECHA DE REMOCIÓN PROPUESTA SI TIENE LUGAR MÁS TARDE. LA CONFERENCIA SE CELEBRARÁ EN EL SIGUIENTE LUGAR:

ADMINISTRATION FOR CHILDREN'S SERVICES
OFFICE OF ADVOCACY
150 WILLIAM STREET, PRIMER PISO
NEW YORK, NY 10038
(212) 676-9002

*NOTA: SI USTED RECIBIÓ UN AVISO DE "INDICACIÓN" SOBRE UN CASO DE PROTECCIÓN INFANTIL Y DESEA DISPUTAR DICHA DECISIÓN, DEBE SOLICITAR UNA REVISIÓN A TRAVÉS DEL REGISTRO CENTRAL ESTATAL TAL COMO SE INDICA EN EL AVISO QUE RECIBIÓ.*

---

**USTED DEBE SOLICITAR UNA REVISIÓN INDEPENDIENTE DENTRO DE LOS 10 DÍAS DESPUÉS DE LA FECHA DE ESTE AVISO O SE LE PUDIERA DENEGAR DICHA PETICIÓN**

---

## INFORMACIÓN SOBRE LA AUDIENCIA IMPARCIAL

SI USTED SE OPONE A LA REMOCIÓN DE LOS NIÑOS DE SU HOGAR, PUEDE SOLICITAR UNA AUDIENCIA IMPARCIAL DEL ESTADO DE NEW YORK, INDEPENDIENTEMENTE DE QUE USTED SOLICITE O NO UNA CONFERENCIA DE AGENCIA DE CUIDADO ADOPTIVO O UNA REVISIÓN INDEPENDIENTE. LA REVISIÓN INDEPENDIENTE NO ES UNA AUDIENCIA IMPARCIAL Y EL SOLICITARLA NO IMPIDE QUE USTED SOLICITE ADEMÁS UNA AUDIENCIA IMPARCIAL. SIN EMBARGO LOS NIÑOS PUDIERAN SER REMOVIDOS DE SU HOGAR LUEGO DE LA DECISIÓN DEL REVISOR INDEPENDIENTE, SI USTED NO SOLICITA UNA REVISIÓN INDEPENDIENTE O LA DECISIÓN DE LA REVISIÓN INDEPENDIENTE RESPALDA LA REMOCIÓN. LOS NIÑOS PUDIERAN SER REMOVIDOS DE SU HOGAR EN O DESPUÉS DE LA FECHA DE REMOCIÓN PROPUESTA Y ANTES DE QUE SE CELEBRE LA AUDIENCIA IMPARCIAL. PARA SOLICITAR UNA AUDIENCIA IMPARCIAL PUEDE ESCRIBIR A THE NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, THE BUREAU OF SPECIAL HEARINGS, PO BOX 1930, ALBANY, NY, 12201. HAGA EL FAVOR DE INCLUIR LA SIGUIENTE INFORMACIÓN CUANDO SOLICITE UNA AUDIENCIA IMPARCIAL:

- NOMBRE, DIRECCIÓN Y TELÉFONO DEL APLICANTE *(PADRE SUSTITUTO)*
- NOMBRE Y FECHA DE NACIMIENTO DEL NIÑO REMOVIDO
- NOMBRE Y DIRECCIÓN DE LA AGENCIA QUE REMOVIÓ AL NIÑO.
- NOMBRE Y TELÉFONO DEL SUPERVISOR/ADMINISTRADOR DE LA AGENCIA QUE REMOVIÓ AL NIÑO.

---

**USTED DEBE SOLICITAR UNA AUDIENCIA IMPARCIAL DENTRO DE LOS SESENTA DÍAS DESPUÉS DE LA FECHA DE ESTE AVISO O SE LE PUDIERA DENEGAR DICHA PETICIÓN**

---

SI USTED SOLICITA UNA AUDIENCIA IMPARCIAL, TIENE EL DERECHO A EXAMINAR EL EXPEDIENTE DE SU CASO EN LA MEDIDA QUE DICHO EXPEDIENTE NO SEA CONFIDENCIAL. USTED PUEDE SOLICITAR COPIAS DE CUALQUIER PARTE DEL EXPEDIENTE DEL CASO QUE USTED DESEE PRESENTAR EN LA AUDIENCIA, SIN COSTO PARA USTED. EN LA AUDIENCIA IMPARCIAL, USTED TENDRÁ EL DERECHO A SER REPRESENTADO POR UN ABOGADO, POR UN AMIGO O FAMILIAR, O PUEDE REPRESENTARSE A SÍ MISMO. TENDRÁ EL DERECHO A PRESENTAR TESTIGOS, A INTERROGAR Y A PRESENTAR EVIDENCIA ESCRITA Y ORAL. LA AGENCIA DE CUIDADO ADOPTIVO Y LA ADMINISTRACIÓN PARA SERVICIOS INFANTILES DEBEN OBEDECER LA DECISIÓN EMITIDA DESPUÉS DE LA AUDIENCIA IMPARCIAL. SI USTED NECESITA ASISTENCIA LEGAL PARA SU CONFERENCIA DE AGENCIA O PARA LA AUDIENCIA IMPARCIAL Y NO TIENE LOS MEDIOS DE PAGAR UN ABOGADO, CONTACTE A SU LEGAL AID LOCAL O A UNA OFICINA DE SERVICIOS LEGALES. ESTA MEDIDA SE BASA EN LA SECCIÓN 400 DE SERVICIOS SOCIALES Y SECCIÓN 443.5 DEL TÍTULO 18 DE LOS CÓDIGOS, REGLAS Y REGULACIONES DE NEW YORK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

A. C., and H. C., by their Next Friend BARBARA WEINER,  :
individually and on behalf of all others similarly situated,  :
  :
         Plaintiffs,  :  05 Civ. 2986 ( TPG)
  :
  :
    - against -  :
  :
JOHN MATTINGLY, in his official capacity as Commissioner  :
of the New York City Administration for Children's Services,  :
and JOHN JOHNSON, in his official capacity as Commissioner  :
of the New York State Office of Children and Family Services,  :
  :
  :
         Defendants.  :
  :
------------------------------------------------------------------------------x

## DECLARATION OF SERVICE BY MAIL

JENNIFER BAUM  declares as true under penalty of perjury, pursuant to 28 U.S.C. §

1746, that:

1.    I am a staff attorney at the Legal Aid Society, Civil Division, attorneys of record

for the plaintiff children in this action.

2.    On June 20, 2005, I served a true and correct copy of the AMENDED

COMPLAINT ON BEHALF OF THE CHILDREN A.C. and H.C. by mail by depositing a true

copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care

and custody of the U.S. Postal Service within New York State, addressed to each of the following

persons at the last known address set forth after each name, with correct and accurate postage

affixed thereto:

1

Carolyn A. Kubitschek, Esq.
LANSNER & KUBITSCHEK
325 Broadway, Suite 201
New York, NY 10007

Madonna M. Kasbohm, Esq.
Office of Corporation Counsel
100 Church Street, 2nd Floor
New York, New York 10007

Frederick J. Magovern, Esq.
Magovern and Sclafani
111 John Street, Suite 1509
New York, New York 10038

Robert L. Kraft, Esq.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271

3.    I hereby declare that the foregoing is true and correct.  Executed on June 20, 2005.

JENNIFER BAUM (JB4030)

2