UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

A.C. and H.C., etc., et al,

                        Plaintiffs,                    **05 Civ. 2986 (TPG)**

                        -against-

JOHN MATTINGLY, etc.,  et al,

                        Defendants.

------------------------------------------------------------------------X


**STATE DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS THE A.C. AND H.C. COMPLAINT AGAINST HIM**



                                ELIOT SPITZER
                                Attorney General of the State of New York
                                <u>Attorney for State defendant</u>
                                120 Broadway,  24th Floor
                                New York, New York 10271
                                (212) 416-8632




ROBERT L. KRAFT
Assistant Attorney General
<u>of</u> <u>Counsel</u>


1

## Table of Contents

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.            PROCEDURAL POSTURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 2

      B.            STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.            ALLEGATIONS IN THE A.C. AND H.C. COMPLAINT . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I       A.C. AND H.C. LACK CAPACITY AND STANDING TO ALIGN THEIR
                  INTEREST WITH THEIR FORMER FOSTER PARENT IN OBJECTING
                  TO THE REMOVAL PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT II      THE A.C. AND H.C. COMPLAINT DOES NOT STATE A CLAIM UPON
                  WHICH RELIEF CAN BE GRANTED AND MUST BE DISMISSED
                  IN ITS ENTIRETY AGAINST THE STATE DEFENDANT . . . . . . . . . . . . . . 10

      A.         THE A.C. and H.C. COMPLAINT FAILS TO STATE A SUBSTANTIVE
                  DUE PROCESS CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.         THE A.C. and H.C. COMPLAINT DOES NOT STATE A FOURTH AND
                  FOURTEENTH AMENDMENT SEIZURE CLAIM . . . . . . . . . . . . . . . . . . . . 16

      C.         THE A.C. AND H.C. COMPLAINT DOES NOT STATE A
                  FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM . . 17

POINT III     THE ELEVENTH AMENDMENT TO THE UNITED STATES
                  CONSTITUTION LIMITS THE COURT'S SUBJECT MATTER
                  JURISDICTION TO HEAR THE CLAIM FOR DAMAGES . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

A.C. and H.C., by their next friend Barbara Weiner,
individually and on behalf of all others similarly situated,

                          Plaintiffs,                        **05 Civ. 2986 (TPG)**

                          -against-

JOHN MATTINGLY, in his official capacity as
Commissioner of the New York City Administration
for Children's Services, and JOHN JOHNSON, in his
official capacity as Commissioner of the New York
State Office of Children and Family Services,

                          Defendants.

------------------------------------------------------------------------X


## STATE DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE A.C. AND H.C. COMPLAINT AGAINST HIM


### PRELIMINARY STATEMENT

      This memorandum of law is respectfully submitted on behalf of defendant JOHN

JOHNSON, as Commissioner of the New York State Office of Children and Family Services

("OCFS" or "State defendant") in support of his motion to dismiss the complaint, purportedly

made on behalf of A.C. and H.C.[1] dated June 17, 2005, ("A.C. and H.C. Complaint").  The A.C.

and H.C. Complaint must be dismissed: (1) pursuant to Article III of the Constitution of the

United States and Federal Rule of Civil Procedure ("F. R. Civ. P.") Rule 12(b)(1), as discussed

---

  Initials are used to ensure the anonymity of the infant plaintiffs.

                         1

in Point I below, because A.C. and H.C. lack standing to assert the claims made in the A.C. and

H.C. Complaint; (2) as provided in F. R. Civ. P. Rule 12(b)(6), as discussed in Point II below,

because A.C. and H.C. have not demonstrated a violation of their alleged Constitutional rights in

the removal process; and (3) pursuant to the Eleventh Amendment to the Constitution of the

United States and F. R. Civ. P. 12(b)(1), as discussed in Point III below,  to the extent damages

are sought against the State defendant, for lack of subject matter jurisdiction.

Plaintiffs A.C. and H.C., who resided as foster children in the home of their aunt, plaintiff

Norma Balbuena ("Balbuena"), allege they were wrongfully removed from Balbuena's home,

and would have this Court find that New York's procedures for removal of foster children from

the homes of foster parents violated their Constitutionally protected rights.

## STATEMENT OF THE CASE

### A.     PROCEDURAL POSTURE OF THE CASE

Balbuena, individually and purportedly on behalf of A.C. and H.C. and of all similarly

situated foster parents and foster children, filed a Complaint dated March 18, 2005

("Complaint") and simultaneously made a motion for preliminary injunctive relief.  Defendants

John Mattingly, H. Aurelia Jemmott, Rofael Ortiz, Jr., Veronica Chevrestt, and Carmen Del

Valle ("City defendants") opposed the motion for preliminary injunctive relief and made a

motion to dismiss the Complaint.  The Court heard argument on both motions on April 7, 2005.

At the hearing, the Court denied preliminary injunctive relief and granted the City defendants'
motion to dismiss in part and denied it in part.[2]

State defendant has filed a motion, which is <u>sub judice</u>, to dismiss all claims against the
State defendant made by Balbuena in the Complaint and has filed a document dated June 13,
2005, entitled State Defendant's Memorandum of Law in Support Of His Motion to Dismiss the
Complaint Against Him ("State defendant's June 13 Mem. of Law").

Because of potential for conflicting interests between Balbuena and A.C. and H.C., The
Legal Aid Society was substituted as counsel for A.C. and H.C. and Barbara Weiner was named
their "next friend."  <u>See</u> Stipulation So Ordered April 7, 2005.  The A.C. and H.C. Complaint
was filed on behalf of A.C. and H.C. individually and purportedly on behalf of a class of
similarly situated foster children.[3]

---

[2]But in any event, we have learned much this afternoon and I think, even though it may be
-- I don't think it is anomalous -- I will grant the motion to dismiss in part and deny it in part.

I will grant the motion to dismiss insofar as this action or any causes of action now pending before
me attempt to resolve the future care of the infants in question; and as I have said, the reason I am
doing that is that I find no basis for saying or holding that there is not due process in place to resolve
the issues about the future care of these children.

So I am at least for now denying the motion insofar as there may be issues about the past conduct
of the relevant parties.  Apparently there is a great desire on the part of some of the litigants to have
some kind of a ruling or declaration which will give guidance in future cases, and I am not ready to
dismiss that claim.

Transcript of April 7, 2005, hearing at pp.  46-47.  Filed Document #15.

[3]The A.C. and H.C. Complaint neither refers to Balbuena in its caption nor acknowledges
the separate claims brought by Balbuena.  In an attempt to fully respond thereto, State defendant
treats the A.C. and H.C. Complaint as if it is a F.  R.  Civ.  P.  Rule 15(d) supplemental pleading
that does not supersede the Complaint.  State defendant's response herein is meant to supplement
the arguments made in the State Defendant's June 13 Mem.  of Law, and does not supersede them.

**B.     STATUTORY BACKGROUND**

In the State Defendant's June 13 Mem. of Law, the State defendant set forth applicable state law and regulations regarding a number of issues equally pertinent when considering the claims raised in the A.C. and H.C. Complaint including: protection of the right of a birth parent to custody of his or her children and the State's concomitant obligation to protect children from harm (pp. 3-4); the opportunity for relatives of a child who has been removed from a birth parent to act either as a paid foster parent or to have complete temporary custody of the child pending resolution of issues with the birth parent (pp. 4-5); the rights and obligations of foster parents (pp. 6-7); and the procedures to be used when removing foster children, including biologically-related foster children, from the care of foster parents (p. 8); and the review procedures available to all foster parents including a conference and a State administrative hearing (pp 8-11). The State defendant incorporates that discussion as if set forth here in support of its motion to dismiss the A.C. and H.C. Complaint.

In addition, the Legislature has found that:

> minors who are the subject of family court proceedings or appeals in proceedings originating in the family court should be represented by counsel of their own choosing or by law guardians. This declaration is based on a finding that counsel is often indispensable to a practical realization of due process of law and may be helpful in making reasoned determinations of fact and proper orders of disposition. This part establishes a system of law guardians for minors who often require the assistance of counsel to help protect their interests and to help them express their wishes to the court....

New York Family Court Act (NY FCA") § 241 (emphasis added). A "law guardian" refers to an attorney admitted to practice law in the state of New York ... ." NY FCA § 242. Law guardians are appointed to represent children in proceedings brought pursuant to Article 10 of the Family Court Act even though the children are neither petitioner nor respondent in such proceedings.

4

NY FCA § 1016.  The law guardian is to be appointed as soon as the Family Court learns that a child has been removed from the custody of birth parents or that a petition for removal is pending, and the appointment continues so long as the Family Court has jurisdiction over the child.  NY FCA § 1016.  The law guardian is authorize to commence a proceeding to review the placement of a child.  NY FCA § 1055(b)(ii).  The law guardian is also authorized to participate in a number of different proceedings to review the foster care status of the child.  See, New York Social Services Law ("NY SSL") §§ 358-a; 383-c; 392(4)(g)).


C.    ALLEGATIONS IN THE A.C. AND H.C. COMPLAINT

A.C. was born in October 2003, with a positive toxicology for cocaine.  She was removed from the custody of her birth parents, and as part of a proceeding pursuant to Article 10 of the New York Family Court Act, A.C. was remanded to the custody of Episcopal Social Services ("Episcopal"), an authorized agency empowered to take custody of children on Court remand.  Episcopal placed A.C. in the foster care of Balbuena, the child's paternal aunt.  A.C. and H.C. Complaint ¶ 46.  H.C., the sister of A.C., was born a year later and placed in foster care with Balbuena.  Id. ¶ 47.  On December 1, 2004, case workers employed by Episcopal: (1)  received a report from the Statewide  Central Register of Child Abuse and Maltreatment that Balbuena was not adequately  caring for A.C. and H.C.; (2) went to Balbuena's home, immediately removed A.C. and H.C. without court order and without providing a 10-day notice to either Balbuena or to the children's law guardian,  and placed them in a foster home with non-relatives.  Id. ¶ 48.

Although the A.C. and H.C. Complaint avers that "there was no emergency condition which required the children's immediate removal," this statement is made "upon information and belief," the basis for which is not explained. Id. ¶ 49.

In compliance with NY SSL § 400 and Title 18, New York Codes, Rules and Regulations ("18 N.Y.C.R.R.") § 443.5, when the children were removed from Balbuena's foster home, Balbuena was informed of her right to review and requested a conference, and the conference occurred on December 13, 2004. Id. ¶ 50.[4] The decision after the conference, which ACS refers to as an "independent review," issued on December 29, 2004, affirmed Episcopal's decision to remove the children from Balbuena's foster care. Id. ¶ 51-52. Balbuena appealed the Decision After Independent Review by requesting an administrative hearing known as a "fair hearing" from the OCFS. id. ¶ 52. The fair hearing, at which Balbuena was represented by counsel, has been held and a decision is pending. id. ¶ 53.

As relief against the State defendant, the A.C. and H.C. Complaint, inter alia, requests the Court to Declare that:

> (F) defendant JOHNSON, in his oversight capacity, violates the United States Constitution's Fourteenth Amendment guarantee of substantive and procedural due process and Fourth Amendment protection against unlawful seizures by condoning, acquiescing in, permitting and approving of ACS' actions;

> (G) defendant JOHNSON violated the procedural due process clause of the Fourteenth Amendment to the United States Constitution by promulgating 18 N.Y.C.R.R. section 443.5, which fails to require local child protective

---

[4] The allegation in ¶ 50 of the A.C. and H.C. Complaint that the conference was held two days late is incorrect. If Balbuena asked for the conference on December 1, as alleged in ¶ 50, the conference should have been held by December 11, 2004. Since December 11, 2004, was a Saturday, the time to hold the conference was extended to Monday, December 13, 2005, as a matter of law. New York General Construction Law § 25-a(1).

6

agencies to provide constitutionally adequate  notice or procedures to kinship foster parents.

(3) Issue preliminary and permanent injunctions against defendant JOHNSON:

(A) directing that 18 N.Y.C.R.R. section 443.5 be revised to comport with the Due  Process requirements of the Fourteenth Amendment to the United States Constitution;

(B) directing that supervision and oversight over Defendant MATTINGLY's implementation of policies and guidelines authorizing removal of children from kinship foster  parents be instituted, ensuring compliance with State and Federal Constitutional requirements by,  inter alia, conducting case reviews and trainings, and performing other supervisory functions, in  order to ensure practice meets constitutional requirements;

(4) Award to plaintiffs reasonable compensatory damages; ...

A.C. and H.C. Complaint, WHEREFORE clause.


## ARGUMENT

## POINT I

## A.C. AND H.C. LACK CAPACITY AND STANDING TO ALIGN THEIR INTEREST WITH THEIR FORMER FOSTER PARENT IN OBJECTING TO THE REMOVAL PROCESS

Plaintiffs A.C. and H.C. are less than two years old.  The Complaint that commenced this action was filed by Balbuena on behalf of herself and the infant plaintiffs.  A Stipulation was entered that provided for separate counsel for A.C. and H.C. and for the appointment of a "next friend."  Doing so was appropriate because it was entirely possible that A.C. and H.C. might have interests in conflict with those of Balbuena that should be expressed.  However, no interests conflicting with those asserted by Balbuena have been raised in the A.C. and H.C. Complaint.

In Smith v. Organization of Foster Families For Equality and Reform, 431 U.S. 816 (1977) ("Smith"), the Supreme Court reviewed a Constitutional challenge brought by foster parents to New York State's procedures for removal of foster children from their care. The Supreme Court found that New York's statutory and regulatory scheme concerning removal of foster children from the homes of foster parents adequately protected whatever liberty interest the foster parents might have. The Supreme Court also rejected the lower court's finding of the existence of a separate liberty interest of a foster child as discussed in Point II below. In doing so, the Supreme Court discussed the question of the standing of counsel for foster children to raise interests separate and apart from those of foster parents as follows:

> N44. Appellants argue, with the dissenting judge below, that in any event appellee foster parents have no standing to rely upon a supposed right of the foster children to avoid "grievous loss," because the foster children are independently represented by court-appointed counsel who has consistently opposed the relief requested by appellees, and denied that the children have any such right.

> > This argument misunderstands the peculiar circumstances of this lawsuit. Ordinarily, it is true, a party would not have standing to assert the rights of another, himself a party in the litigation; the third party himself can decide how best to protect his interests. But children usually lack the capacity to make that sort of decision, and thus their interest is ordinarily represented in litigation by parents or guardians. In this case, however, the State, the natural parents, and the foster parents, all of whom share some portion of the responsibility for guardianship of the child, see supra, at 826-828, and nn.16-18, are parties, and all contend that the position they advocate is most in accord with the rights and interests of the children. In this situation, the District Court properly appointed independent counsel to represent the children, so that the court could have the benefit of an independent advocate for the welfare of the children, unprejudiced by the possibly conflicting interests and desires of the other parties. It does not follow, however, that that independent counsel, who is not a guardian ad litem of the

8

children, is solely authorized to determine the children's best interest.

No party denies, or could deny, that there is an Art. III "case or controversy" between the foster parents and the defendant state officials concerning the validity of the removal procedures. Accordingly, their standing to raise the rights of the children in their attack on those procedures is a prudential question. We believe it would be most imprudent to leave entirely to court-appointed counsel the choices that neither the named foster children nor the class they represent are capable of making for themselves, especially in litigation in which all parties have sufficient attributes of guardianship that their views on the rights of the children should at least be heard.

431 U.S. 841 (citation omitted, emphasis added). Applying the above-quoted passage of Smith to the case at bar, the Court may appropriately find that counsel for A.C. and H.C. are welcome to respond to the Complaint filed by Balbuena, but may not file a separate complaint on behalf of client foster children where there are already adult parties ostensibly representing the best interests of the children. Further, it is implicit from the quoted passage that it is dubious, as A.C. and H.C.'s representatives purport to do here, whenever a purported representative of an infant foster child appears to align the infant's interest solely with the kinship foster parent objecting to removal, and against the agencies responsible for care of the foster child.

For the foregoing reasons, the Court should dismiss the A.C. and H.C. Complaint in its entirety as provided in Article III of the Constitution of the United States and F. R. Civ. P. 12(b)(1).

9

## POINT II

## THE A.C. AND H.C. COMPLAINT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MUST BE DISMISSED IN ITS ENTIRETY AGAINST THE STATE DEFENDANT

In deciding a motion to dismiss pursuant to F. R. Civ. P. 12(b)(6), the Court may dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Notwithstanding this liberal rule of pleading, in lawsuits alleging a violation of constitutional rights, a "complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fails to state a claim under Rule 12(b)(6)." Martin v. N.Y.S. Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978). The more stringent rule on pleading civil rights cases has been explained as follows:

> As a general rule notice pleading is sufficient, but an exception has been created for cases under the Civil Rights Acts. The reason for this exception is clear. In recent years there has been an increasingly large volume of cases brought under the Civil Rights Acts. A substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants - public officials, policemen, and citizens alike - considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation and still keep the doors open to legitimate claims.

Johnson v. New York City Transit Authority, 639 F. Supp. 887, 892 (E.D.N.Y. 1986) (quoting Patton v. Dumpson, 425 F. Supp. 621 (S.D.N.Y. 1977)).

The A.C. and H.C. Complaint should be dismissed against the State defendant because it is a "complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act."

10

The "next friend" has not demonstrated that she was acquainted with these infant plaintiffs before commencement of this lawsuit, and does not have personal knowledge that qualifies her to state facts about the care they received from Balbuena or whether they approve of their removal from Balbuena's foster home.

Counsel for A.C. and H.C. in this civil action is also the "law guardian" for A.C. and H.C. in the Family Court proceedings where A.C. and H.C. were removed from their birth parents, to whom A.C. and H.C. may ultimately be returned.  But under New York law the status of "law guardian" in Family Court proceedings concerning the birth parent's custody of their child is not tantamount to a "guardian ad litem" as recognized by New York Civil Practice Law and Rules Article 12 or a "guardian of an incapacitated person" as recognized by New York Mental Hygiene Law Article 81.  The primary qualification to be a "law guardian" of children in Family Court proceedings is to be a licenced attorney, not a social worker or psychologist.  NY FCA §§ 241, 242.  Therefore, counsel for A.C. and H.C. does not have the legal capacity to define interests on behalf of A.C. and H.C. that either their clients or the "next friend" could not articulate to counsel.

Furthermore, these infant plaintiffs, and their next friend, have not set forth the underlying facts of Balbuena's treatment of A.C. and H.C. to demonstrate that they have an independent interest separate and apart from Balbuena's.

The A.C. and H.C. Complaint, purportedly made to express the independent interests of A. C. and H.C., who were fourteen and two months old respectively when they were removed from Balbuena's foster home, alleges no specific facts about Balbuena's treatment of the children.  Instead, in paragraph 49 of the A.C. and H.C. Complaint, counsel for A.C. and H.C.

11

accept "upon information and belief," the factual assertion/legal conclusion made by Balbuena

that A.C. and H.C. were removed from Balbuena's foster home using the emergency removal

procedure -- removing foster children from the care of foster parents without a ten day notice–

where no emergency existed.  As A.C. and H.C. are too young to recount the course of

Balbuena's treatment of them, the significant representation being made in the A.C. and H.C.

Complaint that "upon information and belief, there was no emergency condition" is stunningly

silent as to what or who is the source of the alleged information and belief, as it cannot be A.C.

and H.C., and what this unidentified source actually stated about Balbuena's treatment of A.C.

and H.C.

　　　　To the extent this Court is inclined to address the claims raised by the A.C. and H.C.

Complaint despite the lack of sufficient factual allegations, those claims must be denied.


**A.**　　**THE A.C. AND H.C. COMPLAINT FAILS TO STATE A SUBSTANTIVE DUE PROCESS CLAIM**

　　　　The A.C. and H.C. Complaint states the substantive due process claim as follows:

> ACS and OCFS have failed to adopt substantive guidelines governing when a
> non-emergency removal of children from kinship foster care may be made.  As a
> result, children  in kinship foster care are denied substantive due process when
> they are removed from the care of  relatives on a non-emergency basis without a
> sufficiently high showing that the relatives' care is  inadequate.

A.C. and H.C. Complaint ¶ 3.  The Second Circuit recently expressed the following opinion

interpreting Supreme Court case law to limit the application of the concept of substantive due

process:

> The Due Process Clause of the Fourteenth Amendment provides that no person
> shall be deprived of "life, liberty, or property, without due process of law."  The
> Due Process Clause was intended to prevent government officials "from abusing

12

[their] power, or employing it as an instrument of oppression."  "The touchstone of due process is protection of the individual against arbitrary action of government."

The concept of "substantive due process," however, has " 'scarce and open-ended' 'guideposts,' " and the Supreme Court has repeatedly held, that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"

Bryant v. City of New York, 404 F.3d 128, 135-36  (2d Cir.  2005) (citations omitted).  Pertinent State law provides that "[w]hen any child shall have been placed ... in a family home by a social services official, the social services official may remove such child from such ... family home and make such disposition of such child as is provided by law."  NY SSL § 400.  The OCFS has promulgated regulations implementing this statutory language that instruct social services districts to give foster parents ten days notice before removal of a child "except where the health or safety of the child requires that the child be removed immediately from the foster family home."  18 N.Y.C.R.R. § 443.5(a)(1).  The language is sufficiently specific, given the generality of the situations being addressed by agency decision makers in the field.  The regulatory language tracks the statutory intent, that an agency has broad discretion in removing a foster child from a foster home, and attempts to protect the rights of foster parents by providing for ten day advanced notice except where the health and safety of the child requires immediate removal.

When asked to review the claim that A.C. and H.C. would make here-- that foster children have a Constitutionally protected liberty interest separate and apart from the liberty interests of foster parents and birth parents that is not adequately protected by New York's statutory and regulatory scheme-- the United States Supreme Court rejected the contention as follows:

13

The District Court did not reach [the foster parents'] contention "that the foster home is entitled to the same constitutional deference as that long granted to the more traditional biological family."  Rather than "reach(ing) out to decide such novel questions," the court based its holding that "the pre-removal procedures presently employed by the state are constitutionally defective," not on the recognized liberty interest in family privacy, but on an independent right of the foster child "to be heard before being 'condemned to suffer grievous loss.'"

The court apparently reached this conclusion by weighing the "harmful consequences of a precipitous and perhaps improvident decision to remove a child from his foster family," and concluding that this disruption of the stable relationships needed by the child might constitute "grievous loss." But if this was the reasoning applied by the District Court, it must be rejected.  [S]uch a finding does not, in and of itself, implicate the due process guarantee.  What was said in Board of Regents v. Roth, supra, 408 U.S., at 570-571, applies equally well here:

"The District Court decided that procedural due process guarantees apply in this case by assessing and balancing the weights of the particular interests involved. ...  (A) weighing process has long been a part of any determination of the form of hearing required in particular situations by procedural due process.  But, to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake.  ...  We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property."

Smith, 431 U.S. at 840-841  (citations and footnotes omitted, emphasis added).  After Smith was decided, New York Courts have sorted out the liberty interests of foster parents and foster children under New York law in a manner that is within the limits of the United States Constitution.

With respect to the interests of foster parents, New York's courts have clarified that, although foster parents have access to Family Court proceedings prior to the removal of foster children from their care, once a removal has occurred, the hearing procedure described in NY SSL § 400, followed by judicial review pursuant to article 78 of the Civil Practice Law and Rules, is the exclusive remedy for review of the removal.  Matter of Kim W., 58 N.Y.2d 811 (1983), on dis. op.  of Markewich, 87 A.D.2d 435, 444-46 (Family Court foster care status

14

hearing not appropriate vehicle for review after foster children have been removed); <u>People ex rel. Ninesling v. Nassau County Dep't of Social Services</u>, 46 N.Y.2d 382 (1978) (habeas corpus to stay removal of foster child was not proper procedure); <u>Matter of New York City Dep't of Social Serv's on Behalf of Tahira L.</u>, 203 A.D.2d 575 (2nd Dep't 1994), App. Den. 84 N.Y.2d 804 (grandmother who was foster parent must use NY SSL § 400 hearing to challenge removal of foster children, not Family Court).

 With respect to the interests of foster children who have been removed from a foster home, New York's Appellate Division has clarified that the law guardian, who is not a party to foster care removal hearings, may assert the best interest of the children in a Family Court proceeding.  In a case where the fair hearing process initiated by a foster parent had determined that the removal of foster children from her care was inappropriate, and ordered return of the children to the foster parent, the proper procedure for an objecting law guardian is to move in Family Court.  <u>Matter of Shinice H.</u>, 194 A.D.2d 444 (1st Dep't 1993) (reversing Family Court's decision that it did not have power to contravene fair hearing decision).  The Appellate Division opined that "[it is the Family Court and not the [OCFS] which acts as parens patriae to do what is in the best interests of the children," and that the SSL § 400 fair hearings "involved aggrieved foster parents ... and did not involve a proceeding on behalf of the child." <u>id.</u>  at 444-45.

 For the foregoing reasons, this Court should dismiss A.C.'s and H.C.'s substantive due process claim.

**B.     THE A.C. AND H.C. COMPLAINT DOES NOT STATE A FOURTH AND FOURTEENTH AMENDMENT SEIZURE CLAIM**

The A.C. and H.C. Complaint alleges that Defendant MATTINGLY's policy of removing children from  kinship foster homes on an emergency basis when a true emergency does not exist violates the  right to be free from unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments  to the United States Constitution, and further alleges that defendant Johnson in his oversight capacity also violates the Fourth and  Fourteenth Amendments of the United States Constitution in condoning, acquiescing in,  permitting and approving of ACS' actions.  A.C. and H.C. Complaint ¶ 62.

This argument is without merit because the foster child is not "seized" in a Constitutional sense when he or she is removed from a foster home.  The child was "seized" when he or she was removed from the custody of legally responsible relatives, usually birth parents.  Article 10 of New York's Family Court Act addresses the Constitutional concerns attendant with the State's removal of a child from his or her family.

But once the seizure of the child has been ratified by a Court, and placement with an authorized agency has been directed by the Court, every subsequent change in foster family placement is not a new seizure.  Every transfer of a prisoner or patient in state or local custody is not a seizure.  New York law grants authorized foster care agencies the power to remove foster children from individual foster homes.  NY SSL § 400.  There are many reasons why the agency will choose to keep the child in one foster home, and many reasons why the agency might choose to remove a foster child from a particular foster home.  Each placement determination made by a foster care agency does not result in a Constitutional claim that the child has been seized by a government entity.

16

As discussed more fully in State Defendant's June 13 Mem. of Law, New York Family Court is instructed by law to offer available relatives of a child who has been removed from birth parents the opportunity to take custody of the child or to place the child in foster care and work as the child's foster parent, relinquishing custody to the foster care agency. NY FCA § 1017. Relatives of a child who wish to avoid ceding custody of a family member to authorized agencies have the option of seeking to have temporary custody of the child from the Family Court–temporary since the rights of the birth parents have not been terminated.

**C.     THE A.C. AND H.C. COMPLAINT DOES NOT STATE A FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM**

The A.C. and H.C. Complaint alleges that State regulations codified at 18 N.Y.C.R.R. § 443.5, violate the procedural due process rights of A.C. and H.C. because they:

(a) fail to ensure that a timely pre-removal hearing is held in all non-emergency cases;

(b) fail to ensure a prompt post-removal hearing is held when an emergency would make a pre-removal hearing impracticable;

(c) fail to ensure that a child or his or her law guardian receives timely or adequate notice of the removal of the child from a kinship foster parent, or of an Independent Review requested by a kinship foster parent;

(d) fail to ensure that Independent Reviews comport with the basic elements of procedural due process, including the right of the kinship foster parent or the child to offer and challenge evidence, to compel the production of documents and testimony, and to confront adverse witnesses; and

(e) exclude the child from the Independent Review process except at the discretion of the Review Officer.

A.C. and H.C. Complaint, ¶ 4. For A.C. and H.C. to state a due process claim against the State defendant, they must have a constitutionally protected liberty interest that has been violated by

17

the State defendant.  As discussed in Points I and II supra, A.C. and H.C. have not demonstrated that they have such a constitutionally protected interest.

One aspect of A.C.'s and H.C.'s purported procedural due process claim is distinct from that of Balbuena's– namely, A.C. and H.C. seek separate notice to their law guardian in the administrative foster home removal process.  However, as a threshold matter, there is no Federal or State law right to have a law guardian appointed in the administrative foster home removal process.  The position of law guardian, created by the New York Legislature, is specifically linked to the child's need to be represented by counsel in Family Court proceedings.  NY FCA § 241.  As there is no constitutional right to have a State-appointed law guardian in the administrative foster home removal process, there can be no constitutional right to provide pre-removal or post-removal notice to a law guardian.

For the foregoing reasons, the A.C. and H.C. Complaint should be dismissed in its entirety since A.C. and H.C. do not have a liberty interest in the foster care removal proceedings and such proceedings comport with whatever process might be due.  Smith, supra.

**POINT III**

**THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION LIMITS THE COURT'S SUBJECT MATTER JURISDICTION TO HEAR THE CLAIM FOR DAMAGES**

The A.C. and H.C. Complaint's general demand for damages, WHEREFORE clause ¶ 4, must be dismissed against State defendant.  The Supreme Court has long held that the Eleventh Amendment to the Constitution of the United States embodies the principle that an unconsenting state is immune from suit in federal court by her own citizens.  See Hans v. Louisiana, 134 U.S. 1, 14-15,  18-19, (1890).  It is a firm and settled rule that the Eleventh Amendment bars federal courts from entertaining a suit against a State agency as well as the state itself.  See, Pennhurst State School and Hospital et al. v. Halderman et al, 465 U.S. 89, 100 (1984) (in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment).  More specifically, the Eleventh Amendment bars federal courts from entertaining a suit for damages against a defendant sued as the head of a State agency.  See Edelman  v. Jordan, 415 U.S. 651, 668 (1974).

The Complaint alleges that A.C. and H.C. "sustained physical, mental, and emotional injuries, as well as the loss of  or damage to personal possessions, as a result of the defendants' violation of their constitutional  rights ... have suffered damages in an amount to be determined at trial" and requests the Court to "Award to plaintiffs reasonable compensatory damages" A.C. and H.C. Complaint ¶ 69, and WHEREFORE clause ¶ 4.  To the extent this request for damages is made against John Johnson as Commissioner of the OCFS, this is precisely the type of claim that under the Eleventh Amendment a Federal Court may not hear.

19

For the foregoing reasons, the claims for damages against John Johnson as Commissioner of the OCFS may not be heard by this Court for lack of jurisdiction and must be dismissed as provided in F. R. Civ. P. Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, the State defendant respectfully requests that the Court grant his motion to dismiss the A.C. and H.C. Complaint against him.

Dated: New York, New York
      July 18, 2005

Respectfully submitted,

ELIOT SPITZER
Attorney General of the State of New York
Attorney for State defendant

By:_____S/_____
ROBERT L. KRAFT (RK5418)
Assistant Attorney General
120 Broadway,  24th Floor
New York, New York 10271
(212) 416-8632

20