UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------x
A. C., and H. C., by their Next Friend BARBARA WEINER, :
individually and on behalf of all others similarly situated, :
:
Plaintiffs,  :   05 Civ. 2986 ( TPG)
:
:
- against -  :
:
JOHN MATTINGLY, in his official capacity as Commissioner :
of the New York City Administration for Children's Services, :
and JOHN JOHNSON, in his official : PLAINTIFF CHILDREN'S
capacity as Commissioner of the New York State : REPLY MEMORANDUM
Office of Children and Family Services, : OF LAW IN FURTHER
: SUPPORT OF THEIR
Defendants. : MOTION FOR LEAVE
: TO FILE A SECOND
: AMENDED COMPLAINT
:
---------------------------------------------------------------------------------x

## PRELIMINARY STATEMENT

Plaintiffs A.C. and H.C. submit this reply memorandum of law in further support of their motion for leave to file a Second Amended Complaint. Defendant raises three purported bars to granting plaintiffs' motion. Defendant argues that (1) plaintiffs lack standing to file *any* complaints, let alone a second amended complaint; (2) amending further would be futile, as neither complaint would survive a motion to dismiss; and (3) the Eleventh Amendment bars damages actions against the State.

As discussed more fully below, defendant's first two arguments lack merit. As for defendant's third argument, plaintiffs clarify herein that they are not seeking damages against the State. For the reasons set forth below, the Court should grant plaintiffs' motion to file the Second

1

Amended Complaint, and the State defendant's motion to dismiss the First Amended Complaint should thereafter be denied as moot.

## BACKGROUND

This case concerns the constitutionally protected liberty interests of children and their kinship foster parents in maintaining close family relationships, and in preventing those relationships from being torn asunder when the defendants arbitrarily remove the children from the care of family members and place them in the care of strangers.

The original complaint, purportedly filed by Norma Balbuena on her on behalf and on behalf of A.C. and H.C., was filed on March 18, 2005. On April 7, 2005, because of possible conflicts of interest between Ms. Balbuena and the minor children, The Legal Aid Society was substituted as counsel for A.C. and H.C. On June 20, 2005, A.C. and H.C., by their next friend Barbara Weiner, filed an Amended Complaint against defendants.

On July 15, 2005, A.C. and H.C. moved to amend their complaint to make certain technical corrections. Although denominated a "Second Amended Complaint," it is actually the first amended complaint filed by A.C. and H.C. After the filing of that motion, the State defendant moved to dismiss the First Amended Complaint. It is that motion to which this reply brief responds.

## ARGUMENT

### POINT I

**THE COURT SHOULD GRANT LEAVE FOR THE PLAINTIFF FOSTER CHILDREN TO FILE A SECOND AMENDED COMPLAINT.**

As noted, although denominated a "Second" Amended Complaint, this complaint is actually the first amended complaint filed by A.C. and H.C. alone. Its sole purpose is to make certain technical corrections in the original complaint of the minor children. The motion to file this amended complaint was made *before* the State moved to dismiss. As a matter of logic, any motion to dismiss by the State should be directed at the correct and updated complaint, not an outdated one. The State's reasons for opposing making these technical corrections are wholly without merit.

    A.    **The Plaintiff Children Have Standing to Prosecute this Action.**

The minor children clearly have standing to commence this action. The fact that they have suffered an "injury in fact" within the meaning of Article III of the United States Constitution is not open to question. The removal by government officials of children from the home of loving family members, and the transfer of those children to the care of strangers, is obviously an "injury in fact" for purposes of Article III.

Indeed, the State does not seem to question that A.C. and H.C. have suffered an "injury in fact," the minimal requirement for standing under Article III. Instead, its argument seems to be that only the foster parent of the minor children may file a complaint to redress that injury. Thus, in its opposition papers, the State defendant acknowledges that appointment of separate counsel

for the children "was appropriate because it was entirely possible that A.C. and H.C. might have interests in conflict with those of [their foster parent]," id. at 7, but maintains that A.C. and H.C. "may not file a separate complaint on behalf of [themselves]." Id. at 8.  This is not really an objection based on "standing" at all, but rather a question of who may assert legal rights on behalf of the children in court.

Aside from the contradiction inherent in the State's opposing positions – it argues that the children may be represented by separate counsel because of a possible conflict of interest, but that counsel may not act on their behalf – the State defendant's tortured argument mocks at once the children's right to counsel, their lawyers' ethical canons, their Next Friend's fiduciary obligations, and the so-Ordered substitution of counsel stipulation, *signed by the State defendant*, dated April 7, 2005.

First, the State defendant simply ignores Fed. R. Civ. P. 17(c), which provides that:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.

[Emphasis added.] The words "may sue by" do not limit infant plaintiffs to responding to the Complaints of others, as defendant would have this Court find, but encompass filing complaints and bringing lawsuits on their own behalf, as the plain meaning of the words indicate.  Since A.C. and H.C. have sued by their Next Friend Barbara Weiner, they have the right to file their own Complaint.  See also, Ad Hoc Committee of Concerned Teachers v. Greenburgh #11 Union Free School District, 873 F.2d 25 (2d Cir. 1989) (Next Friend had standing to bring suit to

4

enforce students' constitutional rights to racially balanced educational setting).

As for the State defendant's announcement that "it is dubious" whenever the representative of a foster child "appears to align the infant's interest . . . against the agencies responsible for care of the foster child," Def. Memo at 9, as the Second Circuit noted in Greenburg #11, *supra*, "it is unrealistic to expect that New York City's Human Resources Administration would express any great enthusiasm for suing the District."  The same holds true here, since it is unrealistic to assume that the agencies responsible for care of the plaintiff children would have sued either the City which subcontracts their services, or the State defendant, to enforce their constitutional rights.  In any event, that those agencies did not seek to enforce the children's rights speaks for itself.

Next, the State defendant also ignores the multitude of ethical canons and disciplinary rules which not only permit but *require* the zealous and independent representation of clients, without regard to their status as minors.  See, e.g., New York State Bar Association's Lawyer's Code of Professional Responsibility, DR 7-101 (Representing a Client Zealously), DR 5-105 (Conflict of Interest; Simultaneous Representation), and DR 5-107 (Avoiding Influence by Others than the Client).  Failure to file a Complaint would certainly not be countenanced by the New York State Lawyer's Code, but to do so solely because a guardian whose interests may diverge from the children's interests has already filed a Complaint, is unimaginable.

The State defendant also misconstrues the meaning of quoted Footnote 44 from Smith v. OFFER, on which it relies heavily, purportedly for the proposition that adults in this case, i.e., the foster parents, already "represent the best interests of the children." See, Def. Mem. In Support of Mot. To Dismiss, at 8-9; Smith v. OFFER, 431 U.S. 816 (1977).  First, unlike this

5

case, OFFER did not concern the rights of kinship foster parents at all. It has no bearing on this action. Second, this case is not about "the best interests of the children," which are to be decided in Family Court, not Federal Court. This case is about the constitutional right of minor children to maintain close family relationships with their relatives.

Next, although the OFFER Court did note, in dicta, that "it would be most imprudent to leave entirely to court-appointed counsel the choices that neither the named foster children nor the class they represent are capable of making for themselves" Id. at 841(emphasis added), it did not hold, as defendant invites this Court to do, that the children may not file a separate Complaint or prosecute the action separately. In OFFER, the question was whether the foster parents could assert the rights of the foster children in *addition* to the children's assertion of their own rights, not *instead* of the children's assertion of their own rights. Seeking specifically to "forestall any possibility of conflict between [foster children's] interests and the interests asserted by foster parents," the District Court in OFFER had appointed separate counsel for the foster children. Id. at 821. It did not preclude the foster children from bringing their own Complaint or from prosecuting the action independently (nor could it have). The Court should reject the State defendant's invitation to do so now.

    **B.    Defendant's Futility Argument is Premature, and Rests Upon a Faulty Premise.**

The State defendant argues at page 4 of its Opposition papers that plaintiffs' motion should be denied because the proposed amendment to the First Amended Complaint would be futile. However, whether the First Amended Complaint should be dismissed has not yet been decided by the Court. The responses of A.C. and H.C. to the motion to dismiss the First

Amended Complaint are not even due until August 19, 2005.[1]  Obviously, it is both premature and very presumptuous for the State to argue that the Second Amended Complaint "will also be dismissed."

A Complaint will not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1957).  The Court must assume the truth of the factual allegations and construe the complaint generously, drawing all reasonable inferences in favor of the plaintiff.  Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088 (2d Cir.1995); Neshewat v. Salem, 365 F. Supp.2d 508 (S.D.N.Y, 2005); Savitsky v. Mazzella, No. 98 Civ. 9051, 2004 WL 2454120, at *3 (S.D.N.Y. Nov.1, 2004) (*citing* Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)).  If, when viewed "in the light most favorable to the plaintiffs, the Court cannot find that [the proposed amended Complaint] is futile, the amendment should be allowed." R & M Jewelry, LLC v. Michael Anthony Jewelers, Inc., 221 F.R.D. 398 (S.D.N.Y., 2004).  The issue is not "whether a plaintiff will ultimately prevail"; rather, it is "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232 (1974).

The plaintiffs will fully set forth their opposition to the motion to dismiss on August 19.  At this time, it suffices to say that, given the factual allegations laid out by plaintiffs detailing the alleged denial of plaintiff children's substantive and procedural due process rights, and the liberty interest alleged to have been violated as a result (see Rivera v. Marcus, 696 F.2d 1016, 1030 (2d

---

[1] By stipulation dated July 29, 2005, counsel agreed to extend plaintiffs' time to respond to the motion to dismiss until August 19, 2005.  The stipulation was emailed to the Clerk of the Court in conformance with Electronic Case Filing procedures for the Southern District of New York on that date.

Cir. 1982), <u>Johnson v. City of New York</u>, 2003 WL 1826122 (S.D.N.Y., 2003)), it would be wholly improper to assume out of hand that the Court will dismiss plaintiff children's claims.

Additionally, unlike the cases cited by defendant, in which motions to file amended complaints were made by plaintiffs in response to motions to dismiss made by defendants, here plaintiffs' motion for Leave to File a Second Amended Complaint was made *before* defendant filed a responsive pleading (his motion to dismiss). Plaintiffs need leave of Court to file their Second Amended Complaint not because a responsive pleading had previously been filed, but solely because a first amendment, made as a matter of course, had already been filed, and further amendment must be made by motion. However, although plaintiff children have moved to file a "Second Amended Complaint," it is actually only the first time that they are amending their Complaint in this action. As noted, the initial Complaint was filed by the law firm of Lansner & Kubitschek, which thereafter agreed to turn representation of the children over to the Legal Aid Society. This change in representation was required to avoid the inherent conflict of interest in Lansner & Kubitschek's simultaneous representation of both foster parents and foster children.

A.C. and H.C. filed their first Complaint in this matter on behalf of the children on June 20, 2005. As this Complaint superceded the original Lansner & Kubitschek Complaint (at least as to the children), it was denominated an "Amended Complaint." Thus, the instant first amendment to the children's complaint, denominated here as a "Second Amended Complaint," actually represents the first time the children are seeking to amend their Complaint. (Indeed, the children had no independent Complaint before the Legal Aid Complaint was filed on June 20, 2005.) Had no conflict of interest required appointment of separate counsel for the children, the children would have been able to file the complaint at issue here "as a matter of course," as a first

amended complaint. See, Fed. R. Civ. P. 15(a). Given the somewhat unique procedural history of this case, the Court could conclude that the proposed Second Amended Complaint is actually a First Amended Complaint which does not require leave of court, but may be filed "as a matter of course." Plaintiff children ask that the Court so find.

### C. Plaintiffs Do Not Seek Damages Against the State.

Plaintiffs A.C. and H.C. do not seek damages against the State defendant; their claims against the State are solely for injunctive relief. To the extent the drafting of the Fourth Request for Relief of the First Amended Complaint (which appears is the Sixth Request for Relief in the proposed Second Amended Complaint) failed explicitly to exclude defendant Johnson from plaintiffs' damages claim, plaintiffs herein affirmatively state that they are not seeking damages against the State defendant.

### POINT II

### DEFENDANT'S MOTION TO DISMISS SHOULD BE HELD IN ABEYANCE UNTIL THE INSTANT MOTION IS DECIDED.

The instant motion for leave to file Second Amended Complaint was filed on July 15, 2005.[2] Three days later, while the motion was pending (as it still is), the State defendant filed its motion to dismiss the First Amended Complaint.

The Court should hold the State defendant's Motion to Dismiss in abeyance until the instant motion is decided. Logic and practicality dictate that any motion to dismiss by the State

---

[2] The City defendant consented, in writing, to the filing of a Second Amended Complaint (See Exhibit B to the July 14, 2005, Baum Decl.). After learning that the motion would be contested by the State, however, plaintiffs agreed that the City defendants would "be granted 10 additional days after decision on infant plaintiff's motion [for leave to file a Second Amended Complaint] in which to respond to whichever Complaint ultimately becomes the operative pleading in this matter." Kasbohm Letter to Court dated July 18, 2005, and "Memo Endorsed" on July 21, 2005.

should be directed at the correct and updated complaint. Since the motion to interpose the Second Amended Complaint was made before the State moved to dismiss, the motion to amend should be granted first. Then the State should, if it wishes, move to dismiss the Second Amended Complaint. Proceeding in this manner will conserve judicial resources and further the interests of justice.

By filing its motion to dismiss *after* plaintiffs filed their motion to further amend the Complaint, the State defendant has deliberately but needlessly confused the issues for the Court and counsel, has generated potentially moot litigation on a Complaint which may be superceded, and has created delay as the Court may be asked to decide two motions to dismiss against the children, and not one.

## CONCLUSION

For all of the forgoing reasons, plaintiffs request that this Court grant plaintiffs' motion for leave to file a Second Amended Complaint.

Dated: New York, New York
July 29, 2005

Respectfully submitted,

THE LEGAL AID SOCIETY
STEVEN BANKS, Esq., Attorney-in-Chief
TAMARA STECKLER, Esq., Attorney-in-Charge, Juvenile
    Rights Division
NANCY ROSENBLOOM, Esq., (NR1275), Interim Director,
    Special Litigation and Law Reform Unit
LOUIS SARTORI, Esq. (LSS0011), of Counsel

ADRIENE HOLDER, Esq., Attorney in Charge, Civil Division
SCOTT ROSENBERG, Esq., (SAR5579), Director of Litigation,
    Civil Division
JENNIFER BAUM, Esq. (JB4030), of Counsel
199 Water Street, 3d Floor
New York, New York 10038
212-577-3300