UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

NORMA BALBUENA, etc., et al,

                    Plaintiffs,                    **05 Civ. 2986 (TPG)**

                    -against-

JOHN MATTINGLY, etc.,  et al,

                    Defendants.

-------------------------------------------------------------------------X

# STATE DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE A.C. AND H.C. COMPLAINT AGAINST HIM

                                     ELIOT SPITZER
                                       Attorney General of the State of New York
                                       <u>Attorney for State defendant</u>
                                       120 Broadway,  24th Floor
                                       New York, New York 10271
                                       (212) 416-8632

ROBERT L. KRAFT
Assistant Attorney General
<u>of</u> <u>Counsel</u>

**Table of Contents**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT  THE A.C. AND H.C. COMPLAINT AND THE OPPOSITION TO THE STATE
                DEFENDANT'S MOTION TO DISMISS
                DO NOT DEMONSTRATE THAT A CONSTITUTIONALLY PROTECTED
                LIBERTY INTEREST OF A.C. AND H.C. WAS VIOLATED BY NEW
                YORK STATE LAW AND REGULATIONS REGARDING REMOVAL OF
                FOSTER CHILDREN FROM THE HOMES OF FOSTER PARENTS AND
                THE COMPLAINT SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . 2

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
NORMA BALBUENA, on behalf of herself and all others
similarly situated,

                    Plaintiffs,                        **05 Civ. 2986 (TPG)**

                    -against-

JOHN MATTINGLY, individually and as Commissioner;
H. AURELIA JEMMOTT, individually and as Reviewer;
RAFAEL ORTIZ, JR., individually and as Borough Director;
VERONICA CHEVRESTT, individually and as caseworker;
CARMEN DEL VALLE, individually and as supervisor;
EPISCOPAL SOCIAL SERVICES; ROBERT GUTHEIL,
individually and as director; CARMEN SANTANA, individually
and as supervisor; LOURDES FALCON, individually and as
caseworker; ZORAIDA NEGRON, individually and as social
worker; and CITY OF NEW YORK; and JOHN JOHNSON,
as Commissioner;

                    Defendants.
-------------------------------------------------------------------------X
A.C. and H.C., by their next friend Barbara Weiner,
individually and on behalf of all others similarly situated,

                    Plaintiffs,

                    -against-

JOHN MATTINGLY, in his official capacity as  Commissioner
of the New York City Administration for Children's Services; and
JOHN JOHNSON, in his official capacity as Commissioner of the
New York State Office of Children and Family Services;

                    Defendants.
-------------------------------------------------------------------------X

**STATE DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF HIS MOTION TO DISMISS THE A.C. AND H.C. COMPLAINT AGAINST HIM**

**PRELIMINARY STATEMENT**

This reply memorandum of law is respectfully submitted on behalf of defendant JOHN

JOHNSON, as Commissioner of the New York State Office of Children and Family Services

("OCFS" or "State defendant") in further support of his motion to dismiss the complaint, dated

June 17, 2005, made on behalf of A.C. and H.C.[1] ("A.C. and H.C. Complaint"), and in reply to

the Memorandum of Law in Opposition to the State Defendant's Motion to Dismiss dated

August 19, 2005 ("Mem. in Op.").

**ARGUMENT**

**THE A.C. AND H.C. COMPLAINT AND THE OPPOSITION TO THE
STATE DEFENDANT'S MOTION TO DISMISS DO NOT
DEMONSTRATE THAT A CONSTITUTIONALLY PROTECTED
LIBERTY INTEREST OF A.C. AND H.C. WAS VIOLATED BY NEW
YORK STATE LAW AND REGULATIONS REGARDING REMOVAL OF
FOSTER CHILDREN FROM THE HOMES OF FOSTER PARENTS AND
THE COMPLAINT SHOULD BE DISMISSED**

In the A.C. and H.C. Complaint, plaintiffs A.C. and H.C., who resided as foster children

in the home of their aunt, plaintiff Norma Balbuena ("Balbuena"), allege they were wrongfully

removed from Balbuena's home, and would have this Court find that New York's procedures for

removal of foster children from the homes of foster parents violated their Constitutionally

protected rights because Balbuena is their aunt.

The Mem. in Op. contends, at pages 15-16, that the State defendant is acting

inappropriately by not treating all of the facts alleged in the A.C. and H.C. Complaint as if they

were true, as State defendant must when making a motion to dismiss. This contention ignores

---

[1] Initials are used to ensure the anonymity of the infant plaintiffs.

the reality that most of the "facts" alleged in the A.C. and H.C. Complaint are undisputed matters

of public record.  These include the facts that A.C. and H.C. were removed from the custody of

their birth parents at birth and were placed as foster children in the care of Balbuena, their

paternal aunt, and that on December 1, 2004, when A.C. was about fourteen months old and H.C.

was about two months old, they were removed from Balbuena's foster home by defendant

Episcopal Social Services ("Episcopal") because Episcopal's workers had concerns relating to

the health and safety of the foster children.  A.C. and H.C. Complaint ¶¶ 46-48.  Balbuena

sought and had a conference before defendant New York City Administration for Children's

Services ("ACS") (Id. ¶ 50), which affirmed the decision of Episcopal (Id. ¶ 52).  Balbuena

sought and had an administrative hearing before an administrative law judge employed by State

defendant (Id.  ¶¶ 52, 53), and a decision after hearing was made by the Commissioner's

designee affirming Episcopal's determination.

State defendant does challenge certain statements made in the A.C. and H.C.

Complaint that are, by admission of counsel, beyond the knowledge of the pleader to make, that

are, in other words, mere speculation.  State defendant's challenge to the capacity of A.C. and

H.C. to bring the A.C. and H.C. Complaint rests on the actuality that these infants are not able to

make factual assertions that are not matters of public record.  Addressing the significant question

of whether there was reason for concern for the infants' health and safety leading to Episcopal's

use of the expedited removal procedure, counsel for A.C. and H.C. have no direct knowledge

about conditions as they existed on December 1, 2004 (Id. ¶ 49), and their uninformed averment

in the A.C. and H.C. Complaint that there was no reason for use of the expedited removal

procedure is, therefore, not a fact which State defendant and this Court must accept as true.

3

Statements made "on information and belief" are not the same as factual allegations.  This

complaint describes one removal only, and relies on the phrase "on information and belief" when

doing so.  Id. ¶ 49.  State defendant's refusal to accept rank speculation as fact that must be

accepted as true for purposes of a motion to dismiss is consistent with "the accepted rule that a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46, (1957) (footnote omitted) quoted in Scheuer v. Rhodes,

416 U.S. 232, 236 (1974).

  The Mem. in Op. attributes an argument to State defendant that he did not and would

not make.  State defendant does not contend "that Ms. Balbuena waived her right to object to the

removal of the children in her care when she signed a foster care contract."  Mem. in Op. at 22.

Instead, State defendant maintains, in support of the instant motion and in support of his motion

to dismiss the Balbuena Complaint, that New York's law and regulations provide adequate due

process to foster parents when foster children are removed from their care, specifically providing

such foster parents with an avenue to object to the removal, and that Balbuena received the

process she was due.

  If the Court finds that the A.C. and H.C. Complaint need not be dismissed for failure to

make the requisite factual showing, the Court should dismiss the A.C. and H.C. Complaint

because, given the facts pleaded, it does not demonstrate a violation of the Constitution.  When

contending that the government has violated Constitutionally protected rights, the claimant must

articulate the interest that is purportedly being violated.  Apparently A.C. and H.C. contend that

their liberty interest is to remain in the care of their aunt as a kinship foster parent.  However, the

discussion of New York Family Court Act ("NY FCA") § 1017 at pages 7 and 8 of the Mem. in

Op. demonstrates that a child who has been removed from custodial parents does not have a

<u>constitutionally protected right</u> to reside with a kinship foster parent. As the mem. in Op

concedes, NY FCA § 1017 requires the Family Court to direct the local Commissioner to

determine whether relatives will care for the child, and, if so, the Family Court may direct

placement of the child with such relative, either as a custodial placement or as a kinship foster

parent placement. That decision is made by the Family Court, not by the local Commissioner, or

by the child, or by the child's relative, and cannot provide the basis for a liberty interest.

It is a fortunate coincidence that the Supreme Court cases relied on by State defendant in

support of its motion to dismiss, <u>Smith v. Organization of Foster Families For Equality and</u>

<u>Reform</u>, 431 U.S. 816 (1977), and by A.C. and H.C. in opposition to the motion, <u>Moore v. City</u>

<u>of East Cleveland, Ohio</u>, 431 U.S. 494 (1977) were decided just two weeks apart. The same

Justices decided both cases. The opinions in the two cases may be read in harmony and in

support of the State defendant's motion.

In <u>Moore</u>, the Court was asked to determine whether an ordinance violated Ms. Moore's

right to live in her own dwelling with a family of her own choosing. Prior to a criminal charge

being brought against Ms. Moore for violation of the ordinance, she had formed a family

consisting of herself, her son, and two grandsons who were cousins, not siblings, all residing in

her dwelling unit. The grandson who, according to the ordinance, was not a proper family

member and could not continue to reside in the dwelling unit, had lived there for approximately

five years[2] prior to the time the government directed Ms. Moore to exclude him from the home.

     The Supreme Court struck down this ordinance, describing it as follows:

> East Cleveland ... has chosen to regulate the occupancy of its
> housing by slicing deeply into the family itself. This is no mere
> incidental result of the ordinance. On its face it selects certain
> categories of relatives who may live together and declares that
> others may not. In particular, it makes a crime of a grandmother's
> choice to live with her grandson in circumstances like those
> presented here.

431 U.S. at 498-99. In contrast, the regulations challenged by A.C. and H.C. do not select

certain categories of relatives who may live together and others who may not. They apply to all

persons, whether relatives or not, who choose to be foster parents, and they have no application

at all to relatives where the caretaker does not receive pay to care for children.

     In <u>Smith</u>, the Court addressed a challenge by foster parents to New York's scheme for

removing foster children from foster homes. After clearly holding that foster children do not

have a constitutionally protected liberty interest in remaining in a given foster home (431 U.S. at

840), the Court held that New York's system protected whatever liberty interest foster parents

might have. The Court discusses how its holding should be read along with cases recognizing

constitutionally protected liberty interests to family privacy:

> But there are also important distinctions between the foster family
> and the natural family. First, unlike the earlier cases recognizing a

---

[2] The Supreme Court opinion, published in May, 1977, describes John Moore as the "now 10-year-old grandson who has lived with her and been brought up by her since his mother's death when he was less than a year old." 431 U.S. 506. This statement puts John's date of birth as between June 1966 and May of 1967, and pinpoints the beginning of his residence in the Moore home as May, 1968 at the latest. Mrs. Moore received The notice of violation compelling her to have John Moore leave her home in early 1973. 431 U.S. at 497.

right to family privacy, the State here seeks to interfere, not with a
relationship having its origins entirely apart from the power of the
State, but rather with a foster family which has its source in state
law and contractual arrangements. ... Here, however, whatever
emotional ties may develop between foster parent and foster child
have their origins in an arrangement in which the State has been a
partner from the outset.  While the Court has recognized that
liberty interests may in some cases arise from positive-law sources,
in such a case, and particularly where, as here, the claimed interest
derives from a knowingly assumed contractual relation with the
State, it is appropriate to ascertain from state law the expectations
and entitlements of the parties.  In this case, the limited recognition
accorded to the foster family by the New York statutes and the
contracts executed by the foster parents argue against any but the
most limited constitutional "liberty" in the foster family.

431 U.S. at 845-46 (citations and footnote omitted).  A passage in the concurring opinion of

Justice Stewart explains the Court's decision in <u>Smith</u> and its cognizance of family <u>rights:</u>

One of the liberties protected by the Due Process Clause, the Court
has held, is the freedom to "establish a home and bring up
children."  ... But this constitutional concept is simply not in point
when we deal with foster families as New York law has defined
them.  The family life upon which the State "intrudes" is simply a
temporary status which the State itself has created.  It is a "family
life" defined and controlled by the law of New York, for which
New York pays, and the goals of which New York is entitled to
and does set for itself.

431 U.S. 862-63 (citations omitted).  <u>Smith</u> recognized that the status of foster child is meant to

be temporary, with the goal of return of the child to birth parents or termination of parental rights

so the child is free for adoption.  Consistent with <u>Moore</u>, the application of the challenged

regulations leaves Balbuena's relationship as an aunt to the children in tact.  It is the paid foster

care arrangement which has ceased, and Balbuena is free, if she so chooses, to apply to the

Family Court to obtain custody of the children (pending the ongoing proceedings involving the

birth parents) in a non-paid status.  If the law guardian determines that placement with an

individual, like Balbuena, is in the best interest of the children, the law guardian may assist with

the application of that relative to be granted custody.[3]

The argument put forth by A.C. and H.C. that State defendant's reliance on <u>Smith</u> is

inappropriate because of the more recent opinion in <u>Rivera v. Marcus</u>, 696 F.2d 1016 (2d Cir.

1982) is unavailing. <u>Rivera</u> applies the principles of both <u>Moore</u> and <u>Smith</u> to the set of facts

before that Court: a long term pre-foster parent relationship between a foster mother/half sister

and foster children and an absence of conflict with the birth parents. The Second Circuit found

that Rivera had a protected liberty interest, relying on those portions of <u>Moore</u> that reaffirm that

Constitutional protections of the family include the extended family. A.C. and H.C. would have

this Court read <u>Rivera</u> to say that their liberty interest in remaining in the kinship foster care of

Balbuena is formed by their blood relationship alone. But <u>Rivera</u> included the pre-existing

relationship and a lack of potential conflict with birth parents in the definition of the kind of

foster mother who has a liberty interest. The liberty interest is not based on her status as foster

mother but, instead, emanates from her status as a member of a pre-existing family of choice

with which the State cannot interfere without first providing due process. In the instant case,

Balbuena did not have a relationship with either child prior to entering into a foster care

arrangement, apart from temporary care while she was being investigated for approval as a foster

parent. <u>Moore</u> and <u>Rivera</u> stand for the proposition that a Constitutionally protected family is

more than shared DNA; its definition  includes a relationship that existed before the challenged

action of the government actor. Balbuena did not have a pre-existing relationship with the

---

[3] The fact that the law guardian has not stated, in the A.C. and H.C. Complaint or elsewhere, that it favors the return of A.C. and H.C. to Balbuena is one more reason this Court should find that there is no Article III case and controversy raised by the A.C. and H.C. Complaint.

children when she was not being paid by the government to care for the children and has not

stated that she would have taken custody of the children without being paid to do so.  See also,

Johnson v. City of New York, 2003 WL 1826122, *1 (S.D.N.Y. 2003) (Court cited the Rivera

liberty interest where kinship foster children resided with grandmother for one and a half years

prior to her certification as their foster parent).

The claim of A.C. and H.C. that their nonparticipation in administrative proceedings

regarding Balbuena's rights violates A.C. and H.C.'s constitutional rights is without merit.  As

discussed more fully in State defendant's July 18 Mem.  of Law, New York law provides review

procedures for affected foster parents like Balbuena-- conference, administrative hearing and

judicial review– and provides review procedures for affected children like A.C. and H.C.–

hearing in Family Court initiated by their law guardian if law guardian is dissatisfied with

placement of the children.  Provision of notice to the law guardian about removal of foster

children is an issue separate and apart from the removal procedures promulgated by State

defendant in 18 N.Y.C.R.R. § 443.5.  The law guardian and an authorized agency like Episcopal

may agree that the law guardian will be notified about the status of foster children, including

changes of foster care placement.  If the law guardian and authorized agency cannot agree about

the amount of notice to be provided to the law guardian, the law guardian may take up this issue

with the Family Court when the child is placed with the authorized agency.

The Mem.  in Op.  contains an extended discussion of the independent review process,

described as a conference in 18 N.Y.C.R.R. § 443.5. Mem.  in Op.  at 24.  These objections are

misplaced for two reasons.  First, as discussed above, A.C. and H.C. are complaining about a

proceeding to which they are not proper parties under New York law.  Moreover, A.C. and H.C.

are complaining about one step in a three-step process which includes a conference, an

administrative hearing, and judicial review.  Not every step in the process must provide total due

process.  As the United States Supreme Court noted in Goldberg v.  Kelly, 397 U.S. 254, 267,

N.14, "due process does not, of course, require two hearings."


## CONCLUSION

For the foregoing reasons, and those expressed in the State defendant's July 18,

Memorandum of Law in support of this motion, the State defendant respectfully requests that the

Court grant his motion to dismiss the A.C. and H.C. Complaint against him.

Dated: New York, New York
        August 26, 2005

                                        Respectfully submitted,

                                        ELIOT SPITZER
                                        Attorney General of the State of New York
                                        Attorney for State defendant

                                        By:_____S/_____
                                        ROBERT L. KRAFT (RK5418)
                                        Assistant Attorney General
                                        120 Broadway,  24th Floor
                                        New York, New York 10271
                                        (212) 416-8632