UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
A. C., and H. C., by their Next Friend BARBARA WEINER, :
individually and on behalf of all others similarly situated, :
               :
     Plaintiffs,       :   05 Civ. 2986 (TPG)
               :
               :
   - against -      :   **SECOND**
               **AMENDED**
               :   **CLASS ACTION**
               :   **COMPLAINT**
JOHN MATTINGLY, in his official capacity as   :
Commissioner of the New York City Administration for  :
Children's Services; and JOHN JOHNSON, in his official  :
capacity as Commissioner of the New York State   :   **JURY TRIAL**
Office of Children and Family Services;    :   **DEMANDED**
               :
               :
     Defendants.     :
---------------------------------------------------------------------------x

   Infant plaintiffs A.C. and H.C., on behalf of themselves and all others similarly situated,

by their undersigned attorneys, allege as follows:

**PRELIMINARY STATEMENT**

   1.   This case challenges the constitutionality of procedures governing the removal of

children from foster parents who are relatives ("kinship foster parents").

   2.   The New York City Administration for Children's Services ("ACS") has a pattern

and practice of removing children from kinship foster parents on an emergency basis when no

true emergency exists.  This pattern and practice results from the failure of ACS and the New

York State Office of Children and Family Services ("OCFS") to define what constitutes an

"emergency" for purposes of making or approving an emergency removal of children from

1

kinship foster parents.

3.      ACS and OCFS have failed to adopt substantive guidelines governing when a non-emergency removal of children from kinship foster care may be made. As a result, children in kinship foster care are denied substantive due process when they are removed from the care of relatives on a non-emergency basis without a sufficiently high showing that the relatives' care is inadequate.

4.      The procedure adopted by ACS and permitted by OCFS for challenging the removal of children from kinship foster parents, whether the removal is planned or completed, is set forth in a memorandum from ACS Special Counsel and Associate Commissioner Anne Williams-Isom to the executive directors of contract foster care agencies and ACS staff, dated July 2, 2004, and titled "ACS Administration for Children's Services Protocol for Independent Review" (hereinafter "I.R. Memo" or "Independent Review Protocol") (attached as Exhibit A). The Independent Review Protocol, and the State regulation pursuant to which it was adopted, violate procedural due process because they:

(a)      fail to ensure that a timely pre-removal hearing is held in all non-emergency cases;

(b)      fail to ensure a prompt post-removal hearing is held when an emergency would make a pre-removal hearing impracticable;

(c)      fail to ensure that a child or his or her law guardian receives timely or adequate notice of the removal of the child from a kinship foster parent, or of an Independent Review requested by a kinship foster parent;

(d)      fail to ensure that Independent Reviews comport with the basic elements of procedural due process, including the right of the kinship foster parent or the child to

2

offer and challenge evidence, to compel the production of documents and

testimony, and to confront adverse witnesses; and

(e)    exclude the child from the Independent Review process except at the discretion of

the Review Officer.

## PARTIES

5.    Plaintiff A.C. is child under eighteen years of age alleged to be neglected by her

parents. She was born on October 4, 2003. Days after her birth, A.C. was remanded to the

Commissioner of ACS to reside with her paternal aunt, Norma Balbuena, in foster care. A.C.

lived with Ms. Balbuena from her first day in foster care until December 1, 2004. On that date,

Episcopal Social Services (ESS), a social services agency acting as the agent of ACS, removed

A.C. from her paternal aunt and placed her instead with a non-kinship foster parent.

6.    Plaintiff H.C., A.C.'s sister, is child under eighteen years of age alleged to be

neglected by her parents. She was born on November 14, 2004. As a newborn, she was

immediately remanded to the Commissioner of the New York City Administration for Children's

Services, to reside with her paternal aunt Norma Balbuena in foster care. H.C. lived with her

aunt and sister from her first day in foster care until December 1, 2004. On that date, ESS, acting

as the agent of ACS, removed H.C. from her paternal aunt and placed her instead with a non-

kinship foster parent.

7.    Defendant JOHN MATTINGLY is the Commissioner of ACS. ACS conducts

investigations of suspected child abuse and maltreatment, takes custody of children who are at

risk if left to reside with their parents, and in most instances decides whether children taken into

protective custody may reside with relatives, an arrangement known as kinship foster care. ACS,

3

and authorized agencies like ESS acting as agents of ACS, decide when children in foster care should be removed from kinship foster care and placed with other relatives or non-relatives.

8.     Defendant JOHN JOHNSON is the Commissioner of OCFS.  OCFS oversees New York State's local child protective agencies, including ACS, and promulgates regulations for removing children from kinship foster care.

## JURISDICTION AND VENUE

9.     This action is authorized by 42 U.S.C. § 1983, as an action seeking redress for the deprivation of constitutional rights by State action and under color of law.

10.     Jurisdiction is conferred upon the court by 28 U.S.C. § 1331, which provides for jurisdiction in the district courts of civil actions arising under the Constitution, laws, or treaties of the United States; and 28 U.S.C. § 1343(a)(3), which provides for jurisdiction in the district courts of civil actions to redress deprivation of rights secured by the Constitution of the United States.

11.     Venue properly lies with this district pursuant to 28 U.S.C. § 1391(b).  Defendants Mattingly and Johnson both maintain offices in this district, and the actions complained of took place in this district.

## CLASS ACTION ALLEGATIONS

12.     Plaintiffs bring this proceeding as a class action pursuant to Rules 23(a) and (b)(1) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and a class of all others similarly situated.

13.     The class is defined as all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the

4

second or third degree of consanguinity of their parents or stepparents.

14.    The class is so numerous that joinder of all members is impracticable.  The New York City Mayor's Management Report for Fiscal 2004 reports that there were over 22,000 children in foster care in New York city alone last year, almost 20 percent of them placed with relatives.

15.    Questions of fact common to the class include whether ACS has a pattern and practice of removing children from kinship foster parents on an emergency basis when no true emergency exists; whether ACS has failed to define substantively what constitutes an "emergency" for purposes of making an emergency removal of children from kinship foster parents; and whether ACS has adopted substantive guidelines for removing children from kinship foster homes in non-emergency circumstances.

16.    Questions of law common to the class include whether ACS' pattern and practice of making emergency removals of children from their kinship foster parents under non-emergency circumstances violates plaintiffs' substantive and procedural due process rights and their rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizure; whether ACS' failure to promulgate any guidance on non-emergency removals of children from kinship foster care violates plaintiffs' substantive and procedural due process rights and their rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizures; and whether the ACS Independent Review procedures and 18 N.Y.C.R.R. § 443.5 comply with procedural due process.

17.    The claims of the named plaintiffs are typical of the claims of the class.

18.    The named plaintiffs will fairly and adequately protect the interests of the class.

5

Plaintiffs are represented by The Legal Aid Society, whose attorneys have litigated numerous class actions in federal and state courts, including class actions on behalf of foster children. There are no conflicts of interest among members of the proposed class.

19.     The proposed class comprises infant plaintiffs who are unable to bring individual actions because they are minor wards of the State. The action seeks declaratory and injunctive relief. For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

20.     Plaintiffs bring this action under Rules 23(b)(1) and 23(b)(2) because (1) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the defendants; and (2) defendants have acted on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to the class as a whole.

## STATUTORY AND REGULATORY FRAMEWORK

### Article 10 of the Family Court Act

21.     Protection of children is a State concern. In New York State, responsibility for the protection of children rests with the State and the local child protective agencies. OCFS oversees the local child protective agencies, including ACS in New York City.

22.     ACS and other local agencies may, in turn, assign case management functions to various private social services agencies with whom they contract. In the case of A.C. and H.C., ACS assigned case management functions to ESS.

23.     The New York State Family Court Act (the "Act") establishes procedures for

protecting children from injury or mistreatment and "safeguard[ing] their physical, mental, and emotional well-being." F.C.A. § 1011.

24.    Pursuant to the Act, if a child protective agency has "reasonable cause" to believe that a child is in "imminent danger to . . . life or health," it may seek a court order to take the child into protective custody. F.C.A. § 1022(a). If there is not enough time to obtain a court order, the agency may take or keep the child in protective custody without court order. F.C.A. § 1024(a).

25.    Under the Act, when a local child protective agency removes a child from the home, the Family Court shall direct the agency to conduct an investigation to locate suitable relatives of the child with whom she might stay. F.C.A. § 1017.1. Once a suitable relative is located, the Family Court either places the child directly with the relative ("direct placement"), or it remands the child to the commissioner of the child protective agency for placement with that relative. F.C.A. § 1017.2(a)(i,ii). If the child is remanded to the commissioner for placement with a relative, the court also orders the commissioner to conduct a twenty-four hour home study of the relative, and then approve the relative as a foster parent or, if not appropriate to do so, report that fact to the court "forthwith." F.C.A. § 1017.2(a)(ii)

26.    Nothing in the Act precludes the Family Court from directing that a child shall reside with a relative who is not a certified foster parent. Likewise, nothing in the Act requires the removal of a child from a relative who is not a certified foster parent. Indeed, the Act specifically authorizes the Family Court to direct that a child shall reside with a relative, whether or not the relative is an approved foster parent. F.C.A. § 1017.1(b).

27.    Relatives and children have independent liberty interests in their family relation-

ship that are not dependent upon whether ACS approves or disapproves a relative's request to be approved as a foster parent.

**Department of Social Services Regulations**

28.    New York State Department of Social Services regulations are promulgated pursuant to New York State Social Services Law §§ 20(3)(d), 34(3)(f), and 378. They govern the removal of children from foster parents provide for notice and an opportunity for the foster parent to be heard. 18 N.Y.C.R.R. § 443.5.

29.    The regulations provide that, except in circumstances where immediate removal is necessary in order to protect the health and safety of the child, the local social services official or private agency must provide the foster parent with written notice at least ten days prior to the planned removal of the child. 18 N.Y.C.R.R. § 443.5(a)(1). The notice must advise the foster parent that she can request a "conference" with the child protective agency to learn the reasons for the proposed removal, and she may challenge the proposed removal at the conference. Additionally, the notice must state that the foster parent may bring a representative with her to the conference. 18 N.Y.C.R.R. § 443.5(a)(2).

30.    Once requested, the conference must take place within ten days. The local social services official must send written notice of the date, time, and place of the conference to the foster parent and to the private agency at least five days prior to the date the conference will be held. 18 N.Y.C.R.R. § 443.5(b).

31.    Once a request for a conference has been made, the child may not be removed from the foster family home prior to the date of the planned removal or until at least three days after the notice of decision is sent, whichever is later. 18 N.Y.C.R.R. § 443.5(d).

**The Independent Review Protocol**

Removing Children from the Foster Home

32.      Pursuant to 18 N.Y.C.R.R. § 443.5(a)(3), ACS promulgated the Independent Review Protocol attached as Exhibit A.  In the case of a planned removal from foster parents within the five boroughs of New York City, the Independent Review Protocol requires that foster parents must receive notice of the proposed removal at least ten days in advance of the action.  A Form CS-701D, entitled "Notice for Removal of Child(ren) From a Foster Home," is to be used for this purpose.  There is no requirement that a child or his or her representative receive notice. The Protocol further provides for an "Independent Review" at which a foster parent may meet with the agency and challenge the proposed removal.  Procedures for issuing the Form CS-701D and holding an Independent Review are set forth in the Protocol.

33.      Removals of foster children must be done on notice to the foster parent, "except where the health or safety of the child[ren] requires that the child[ren] be removed immediately from the foster family home." I.R. Memo at ¶ II.A.  There are no guidelines, standards, requirements, policies or other guidance, however, on removing children from the foster home in non-emergency circumstances.  Agencies are left to decide for themselves when they may remove children from kinship foster homes if there is no emergency present.

34.      On the back of Form CS-701D, the section titled "Independent Review" summarizes rules for requesting and participating in the Independent Review.  The form notice states that the foster parent may bring a representative, and if the representative is an attorney, then the agency might also bring an attorney.

35.      The I.R. Memo states that foster parents have three options when faced with the

9

planned removal of a foster child: (1) request a Foster Care Agency Conference, (2) request an

Independent Review, and (3) request a New York State fair hearing. I.R. Memo at ¶ II.B. A

foster parent may request any or all of the options in sequence or simultaneously. I.R. Memo at

¶¶ III.A, V.C.

36.     In the case of an emergency removal of foster children, a form CS-701D must be

provided to the foster parent at the time of the removal or as soon as is practicable thereafter.

I.R. Memo at ¶ II.A.2. A foster parent whose foster child was removed on an emergency basis

may challenge the action after the removal at an Independent Review, a fair hearing, or both. I.R.

Memo at ¶¶ II.A.2, V.C.

37.     The I.R. Memo provides that notice to the law guardian of an Independent Review

is optional. There is no requirement that a child or his or her representative receive timely or

adequate prior notice of an Independent Review requested by a foster parent. I.R. Memo at ¶

IV.C.

Conducting the Independent Review

38.     The procedures to be used at an Independent Review are set forth in the ACS

Independent Review Memo at ¶ IV.

39.     The Memo notes that the Independent Review must be held within ten days of

being requested. Id. at A. Upon information and belief, however, Independent Review hearings

are frequently scheduled for or adjourned by the agency to a date later than ten days from the date

of request.

40.     Attendance at the Independent Review is mandatory for the foster parent and an

agency representative who has knowledge of the case, though if an agency representative is not

able to attend within the ten-day time frame, "the Reviewer will use his/her discretion about how to proceed in consultation with ACS Division of Legal Services." Id.

41.    ACS' Office of Confidential Investigations (OCI) has 60 days to complete an investigation into suspected child abuse or maltreatment, including suspected child abuse and maltreatment by a foster parent in the foster home. If OCI is conducting an investigation of a foster parent who requests an Independent Review of a removal based on the same allegations being investigated by OCI, the Review will go forward within ten days even if the OCI report is not completed. Id.

42.    If the Independent Review Officer's decision differs from the recommendation of an OCI report, the ACS Office of Advocacy will review its decision with OCI and the Commissioners of the respective offices, and a final decision will be reached. I.R. Memo at ¶ V.A.

43.    The Independent Review is a social work conference. I.R. Memo at ¶ IV.D. It is not a legal proceeding. Id. at ¶ IV.D.1. The rules of evidence do not apply. Id. The role of a representative at the Review is limited:

- While the foster parent may bring an attorney, the attorney may not question attendees. I.R. Memo at ¶ IV.E.2.

- The attorney may not object to questions posed to the foster parent. Id. at ¶ IV.D.2.

- The attorney may only ask questions by posing them first to the Review Officer, who will decide whether the question will be asked. Id. at ¶ IV.E.3.

- The attorney does not have a right to "discovery." Id. at ¶ IV.F. The Reviewer alone decides what documents, if any, participants at the Review are entitled to

11

receive. Id.

- The Reviewer may accept documents at the review and not disclose them to other participants where "confidentiality would prohibit disclosure." Id.

44.    The Review Officer must issue a decision within five days of the review. I.R. Memo at ¶ IV.D.

45.    The decision whether to permit a child to attend the Independent Review, and to present evidence, is left to the sole discretion of the Review Officer.

## FACTS PERTAINING TO THE NAMED PLAINTIFFS

46.    On October 3, 2003, A.C. was born with a positive toxicology for cocaine. ACS took custody of the child and commenced a child protective proceeding against her parents under Article 10 of the Family Court Act. At the initial appearance, Family Court ordered A.C. remanded to the Commissioner of ACS, for placement with her paternal aunt, Norma Balbuena. ACS assigned case management duties to ESS, which acted on behalf of and reported to ACS in this matter. Since plaintiff Norma Balbuena was not a foster parent at the time her niece was placed with her, her home was investigated and "approved" for the child. ESS thereafter provided initial and ongoing foster parent training to Ms. Balbuena.

47.    A year after A.C. was placed with Ms. Balbuena, her sister H.C. was born and also placed into foster care with Ms. Balbuena.

48.    The siblings remained in foster care together with Ms. Balbuena until December 1, 2004. On that day, ESS case workers received a report from the State Central Register ("SCR"), the hotline for child abuse and maltreatment, that Ms. Balbuena was not adequately caring for A.C. and H.C., or for her own children. ESS went to Ms. Balbuena's home,

12

immediately removed A.C. and H.C. without court order and without providing a 10-day notice, and placed them in a foster home with non-relatives. ESS did not remove Ms. Balbuena's own children. ESS did not provide a ten-day notice to the children's law guardian.

49.    Upon information and belief, there was no emergency condition which required the children's immediate removal. There was no reason that ESS could not have provided a 10-day notice in this case to both the foster parent and the children's representative.

50.    Ms. Balbuena objected to the removal of the children and requested an Independent Review that same day. The Review, which is supposed to be scheduled within ten days, was scheduled for twelve days later, on December 13, 2004.

51.    Although the Decision After Independent Review must be issued no later than five days after the Review, the Decision in this case was issued on December 29, 2004, sixteen days after the Independent Review, and 28 days after the children were removed and placed with strangers.

52.    The Decision in Ms. Balbuena's case sustained ESS's actions in removing the children. Ms. Balbuena disagreed with the decision and consulted an attorney. On February 28, 2004, she requested a State administrative fair hearing to challenge the Decision After Independent Review.

53.    The Fair Hearing was commenced 29 days later, on March 29, 2005, or 118 days after the children were removed. The hearing was continued to May 16 and May 20, 2005, for additional testimony. The hearing was ultimately concluded, and a decision is currently pending.

54.    As of the filing of this Complaint, 194 days have elapsed since the children were removed and Ms. Balbuena first asked for them to be returned.

## FACTS COMMON TO THE PLAINTIFF CLASS

55.    Upon information and belief, ACS, and authorized agencies acting as its agent, have a pattern and practice of removing children from kinship foster parents on an "emergency" basis when no true emergency exists.  As the oversight agency for ACS, OCFS condones and acquiesces in this pattern and practice of unlawful removals.

56.    This pattern and practice is caused in part by the failure of ACS and OCFS to define what constitutes an "emergency" for purposes of making an emergency removal of children from kinship foster parents.

57.    ACS and OCFS have failed to adopt substantive guidelines governing when a non-emergency removal of children from kinship foster care may be made.  This failure has permitted children to be removed from kinship foster parents without a showing of either neglect or unfitness by the kinship foster parent.

58.    Upon information and belief, Independent Reviews are regularly scheduled more than ten days after they are requested.  Upon information and belief, Decisions After Independent Reviews are regularly issued more than five days after the Review is concluded.

59.    Upon information and belief, the law guardians for children who are removed from kinship foster parents routinely do not receive timely or adequate notice of the removal.  Form CS-701D is routinely not served upon the law guardians of children who are removed from kinship foster parents.

60.    Upon information and belief, the law guardians for children who are removed from kinship foster parents routinely do not receive timely or adequate notice of an Independent Review requested by the foster parent.

14

61.    Placement with a relative is usually seen as the best alternative when out-of-home care is necessary.  The removal of children from kinship foster parents without a showing of either neglect or unfitness by the kinship foster parent is harmful to children, since it results in a deprivation of the benefits and resources of care by family members.

### FIRST CLAIM FOR RELIEF

62.    Defendant MATTINGLY's policy, pattern and practice of removing children from kinship foster homes on an emergency basis when a true emergency does not exist violates the right to be free from unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, and the Fourteenth Amendment's guarantee of substantive due process.  Defendant JOHNSON  in his oversight capacity also violates the Fourth and Fourteenth Amendments of the United States Constitution in condoning, acquiescing in, permitting and approving of ACS' actions.

### SECOND CLAIM FOR RELIEF

63.    Defendant MATTINGLY's failure to promulgate substantive standards governing removals of children from kinship foster parents on a non-emergency basis violates plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution, and the right to be free from unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.  Defendant JOHNSON  in his oversight capacity also violates the Fourth and Fourteenth Amendments to the United States Constitution by condoning, acquiescing in, permitting and approving ACS' lack of guidance.

## THIRD CLAIM FOR RELIEF

64.    Defendant MATTINGLY's Independent Review Protocol violates the Fourteenth
Amendment's guarantee of procedural Due Process, in that it:

(a)    fails to ensure that a timely pre-removal hearing is held in all non-emergency
cases;

(b)    fails to ensure a prompt post-removal hearing is held when an emergency would
make a pre-removal hearing impracticable;

(c)    fails to ensure that a child or his or her law guardian receives timely or adequate
notice of the removal of the child from a kinship foster parent, or of an
Independent Review requested by a kinship foster parent;;

(d)    fails to ensure that Independent Reviews comport with the basic elements of
procedural due process, including the right to offer and challenge evidence, to
compel the production of documents and testimony, and to confront adverse
witnesses; and

(e)    excludes the child from the Independent Review process except at the discretion
of the Review Officer.

Defendant JOHNSON in his oversight capacity also violates the Fourteenth Amendment of the
United States Constitution by condoning, acquiescing in, permitting and approving of ACS'
actions.

## FOURTH CLAIM FOR RELIEF

65.    18 N.Y.C.R.R. § 443.5 violates the Due Process clause of the Fourteenth
Amendment to the United States Constitution because it fails to ensure that a child or his or her

law guardian will receive timely or adequate notice of the removal of the child from a kinship

foster parent, or of an Independent Review requested by a kinship foster parent, and fails to

ensure that Independent Reviews comport with the basic elements of procedural due process.

### FIFTH CLAIM FOR RELIEF

66.    Defendant MATTINGLY's policy, pattern and practice of failing to schedule

timely Independent Review hearings, and failing to issue timely Independent Review decisions,

violates the Fourteenth Amendment's guarantee of procedural due process.  Defendant

JOHNSON  in his oversight capacity also violates the Fourteenth Amendment of the United

States Constitution by condoning, acquiescing in, permitting and approving of ACS' actions.

### SIXTH CLAIM FOR RELIEF

### (Against Defendant MATTINGLY Only)

67.    Defendant MATTINGLY's policy, pattern and practice of delaying Independent

Review hearings beyond ten days, and of delaying Independent Review decisions beyond five

days, violates 18 N.Y.C.R.R. §§ 443.5(b) and (c).

### SEVENTH CLAIM FOR RELIEF

68.    Defendants MATTINGLY and JOHNSON's actions as alleged herein deprived

the named plaintiffs and class members of rights or benefits created or established under federal

law and regulation and the due process clause of the United States Constitution, for which a

cause of action for damages is created by 42 U.S.C. § 1983.

69.    Plaintiffs sustained physical, mental, and emotional injuries, as well as the loss of

or damage to personal possessions, as a result of the defendants' violation of their constitutional

rights.  They have suffered damages in an amount to be determined at trial.

17

## **REQUESTS FOR RELIEF**

WHEREFORE, plaintiffs request that this Court:

(1)     Certify that this action may be maintained as a class action pursuant to Rules 23(a) and 23(b)(1) and 23(b)(2) of the Federal Rules of Civil Procedure, with the plaintiff class consisting of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents."

(2)     Declare that:

(A)  defendant MATTINGLY's policy, pattern and practice of removing class members from kinship foster homes on an emergency basis when no true emergency exists violates the substantive due process clause guarantees of the Fourteenth Amendment to the United States Constitution and the Fourth Amendment's prohibition against unreasonable seizures;

(B)  defendant MATTINGLY's failure to promulgate guidelines, policies, or procedures governing removals of class members from kinship foster parents on a non-emergency basis violates their substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution, and the right to be free from unreasonable seizures guaranteed by the Fourth Amendment to the United States Constitution;

(C)  defendant MATTINGLY's policy, pattern and practice of delaying Independent Review hearings beyond the ten day regulatory limit set forth in 18 N.Y.C.R.R. § 443.5(b), and of delaying Independent Review decisions beyond the five day regulatory limit set forth in 18 N.Y.C.R.R. § 443.5(c), violate those regulatory requirements and the Fourteenth

18

Amendment's guarantee of procedural due process;

(D) defendant MATTINGLY's Independent Review procedures violate the Fourteenth Amendment's guarantee of procedural due process;

(E) defendant MATTINGLY's Independent Review procedures violate the Fourteenth Amendment's guarantee of substantive due process, in that they interfere with class members' substantive rights to the familial relationship;

(F) defendant JOHNSON, in his oversight capacity, violates the United States Constitution's Fourteenth Amendment guarantee of substantive and procedural due process and Fourth Amendment protection against unlawful seizures by condoning, acquiescing in, permitting and approving of ACS' actions;

(G) defendant JOHNSON violated the procedural due process clause of the Fourteenth Amendment to the United States Constitution by promulgating 18 N.Y.C.R.R. § 443.5, which fails to require local child protective agencies to provide constitutionally adequate notice or procedures to kinship foster parents.

(3) Issue preliminary and permanent injunctions against defendants MATTINGLY and JOHNSON:

(A) directing that class members who remain in foster care shall be removed from their kinship foster home on an emergency basis only when there is imminent risk to the child's health or safety and with constitutionally adequate notice at the time of the removal, and thereafter be provided with a constitutionally adequate and meaningful opportunity to be heard on the removal on an expedited basis;

(B) directing that class members who remain in foster care shall be removed from

19

their kinship foster home on a non-emergency basis only after constitutionally adequate notice

and a meaningful opportunity to be heard on the removal;

(C) directing that class members who remain in foster care shall be removed from

their kinship foster home on a non-emergency basis only where the kinship foster parent allows

the child's physical, mental or emotional condition to be impaired as a result of the failure of the

kinship foster parent to exercise a minimum degree of care in supplying the child with adequate

food, clothing, shelter, education, supervision, or guardianship;

(D) directing that foster children's representatives, in addition to foster parents,

receive notice of a proposed removal at least ten days in advance of the action, and timely and

adequate notice of any Independent Review requested by a foster parent;

(4) Issue preliminary and permanent injunctions against defendants MATTINGLY:

(A) directing that Independent Reviews be held within the ten day regulatory limit

set forth in 18 N.Y.C.R.R. § 443.5(b);

(B) directing that Independent Review decisions be issued within the five day

regulatory limit set forth in 18 N.Y.C.R.R. § 443.5(c);

(C) directing that procedures be promulgated for conducting the Independent

Review consistent with the procedural Due Process Requirements of the Fourteenth Amendment

by providing that foster parents and class members have an opportunity to present and compel

the production of evidence and confront adverse testimony, witnesses, and evidence;

(D) directing that training be provided to case workers, supervisors, legal, and

other ACS staff on the standards for making emergency and non-emergency removals of children

from kinship foster parents according to constitutionally adequate procedures;

(E) directing that notice of an opportunity for a constitutionally adequate Independent Review should be provided to class members who were removed from their kinship foster parents without such an opportunity since July 1, 2004;

(F) directing provision of monitoring documents to plaintiffs' counsel, including:

i.  Decisions After Independent Review involving kinship foster parents;

ii.  All SCR reports issued in connection with Decisions After Independent Review for kinship foster parents;

iii.  All Forms "CS-701" issued to foster parents and class members' representatives prior or subsequent to removals of children from kinship foster care;

iv. Any and all proposed revisions to Independent Review procedures;

(5)    Issue preliminary and permanent injunctions against defendant JOHNSON:

(A) directing that 18 N.Y.C.R.R.§ 443.5 be revised to comport with the Due Process requirements of the Fourteenth Amendment to the United States Constitution;

(B) directing that supervision and oversight over Defendant MATTINGLY's implementation of policies and guidelines authorizing removal of children from kinship foster parents be instituted, ensuring compliance with State and Federal Constitutional requirements by, inter alia, conducting case reviews and  trainings, and performing other supervisory functions, in order to ensure practice meets constitutional requirements;

(6)    Award to plaintiffs reasonable compensatory damages;

(7)    Award to plaintiffs reasonable attorneys' fees, costs, and disbursements associated with the prosecution of this action, pursuant to 42 U.S.C. § 1988; and

(8)    Grant such other and further relief as the Court may deem just and proper.

21

Dated: New York, New York
      July 14, 2005

Respectfully submitted,


THE LEGAL AID SOCIETY
STEVEN BANKS (SB0987), Attorney-in-Chief
TAMARA A. STECKLER, Attorney-in-Charge,
      Juvenile Rights Division
NANCY ROSENBLOOM (NR1275), Interim Director,
      Special Litigation and Law Reform Unit
THERESA B. MOSER (TM2125), of Counsel

ADRIENE HOLDER, Attorney in Charge, Civil Division
SCOTT ROSENBERG (SAR5579), Director of Litigation,
      Civil Division
JENNIFER BAUM (JB4030), of Counsel
199 Water Street, 3d Floor
New York, New York 10038
(212) 577-3300


By: _____
      THERESA B. MOSER (TM2125)



    I certify that all parties were served with the Plaintiff Children's Second Amended Class Action Complaint annexed as an exhibit to Plaintiff Children's Motion for Leave to File a Second Amended Complaint.

_____
      THERESA B. MOSER (TM2125)


Dated: New York, New York
      September 18, 2006