UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
A.C., and H.C., by their Next Friend :
BARBARA WEINER individually and on :
behalf of all other similarly situated, : 05 CV 2986 (TPG)
:
               Plaintiffs, : **OPINION**
:
     - against - :
:
:
JOHN MATTINGLY, in his official :
capacity as Commissioner of the New :
York City Administration for Children's :
Services; and JOHN JOHNSON, in his :
official capacity as Commissioner of the :
New York State Office of Children and :
Family Services, :
:
               Defendants. :
------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/07

This case is brought by infant plaintiffs, A.C and H.C., against John Mattingly, the Commissioner of the New York City Administration for Children's Services, and John Johnson ("State Defendant"), the Commissioner of the New York State Office of Children and Family Services. Infant plaintiffs claim that their removal from their kinship foster home, where they were living with their aunt, Norma Balbuena, violated their rights under the Fourth and Fourteenth amendments. Infant plaintiffs seek injunctive and declaratory relief, and damages under 42 U.S.C. § 1983.

Presently before the court is State Defendant's motion to dismiss infant plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The motion is granted in part and denied in part.

## Procedural History

Infant plaintiffs, by their next friend Barbara Weiner, filed their complaint on June 20, 2005. Infant plaintiffs also filed a motion to certify a class of minor children, which was later ordered held in abeyance pending disposition of the motion to dismiss which was to be filed. On July 15, infant plaintiffs filed a motion seeking leave to file an amended complaint. Three days later, on July 18, State Defendant filed the motion to dismiss infant plaintiffs' first complaint under Rules 12(b)(1) and 12(b)(6).

On March 17, 2006, this court granted the motion to amend the complaint and, recognizing the minor differences between infant plaintiffs' first amended complaint and the second amended complaint, notified the parties that the motion to dismiss the first complaint would be treated as a motion to dismiss the second complaint. That motion is the one that is decided by this opinion.

## The Complaint

**Factual Allegations**

On October 3, 2003, plaintiff A.C. was born with a positive toxicology for cocaine. New York City's Administration for Children's Services ("ACS"), took custody of her and commenced child protective proceedings against her parents under Article 10 of the Family Court Act. The home of A.C.'s paternal aunt, Norma Balbuena, was investigated and approved. The Family Court then ordered A.C. remanded to the Commissioner of ACS for placement with Balbuena. ACS assigned case management duties to Episcopal Social Services ("ESS"), an authorized agency under N.Y. Social Services Law § 371(10) ("S.S.L."), which acted on behalf of and reported to ACS. The following year, plaintiff H.C., A.C.'s sister, was born and placed into foster care with Balbuena. It is unclear from the complaint why H.C. was removed from her parents, though presumably it was for the same reason that A.C. was removed.

On December 1, 2004, ESS received a report from the State Central Register, the hotline for child abuse and maltreatment, that Balbuena was not adequately caring for infant plaintiffs and her own children. ESS went to Balbuena's home and immediately removed infant plaintiffs that same day. ESS did not remove Balbuena's own children. The complaint alleges, upon information and belief, that there was no emergency condition necessitating infant plaintiffs' immediate removal.

Balbuena objected to the removal of the children and requested an Independent Review that same day. An Independent Review is New York City's version of the social-work conference described in 18 N.Y.C.R.R. § 443.5, that allows foster parents to hear the reasons for the removal of their foster children and to challenge that removal. Once requested, a conference must take place within ten days, according to section 443.5(b), and the social services official must issue a written decision not later than five days after the conference. § 443.5(c).

The Independent Review was scheduled for and was held on December 13, 2004. A decision sustaining ESS's actions was issued on December 29, 2004.

On February 28, 2005, Babluena requested a Fair Hearing to challenge the Independent Review. A Fair Hearing is a quasi-judicial hearing before an administrative law judge at the New York State Office of Children and Family Services. S.S.L. §§ 22, 400; 18 N.Y.C.R.R. § 358. The hearing took place over the course of several days in March and May 2005. At the time of the filing of the complaint in the present lawsuit, the decision was still pending. However, infant plaintiffs' Memorandum in Opposition to State Defendant's motion indicates that a decision upholding the removal was issued on August 9, 2005. Oddly enough, the court has not received further details about the decision.

**Claims for Relief**

The complaint contains seven claims for relief. The sixth applies to the City defendant only and will not be discussed.

The first claim for relief alleges that State Defendant condones, acquiesces in, permits and approves the City's policy, pattern and practice of removing children from kinship foster homes on an emergency basis when a true emergency does not exist. Infant plaintiffs claim that this policy, pattern and practice violates their right to be free from unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments.

The second claim for relief alleges that State Defendant condones, acquiesces in, permits and approves the City's failure to promulgate substantive standards governing removals of children from kinship foster parents on a non-emergency basis. Infant plaintiffs claim that this violates their substantive and procedural due process rights under the Fourteenth Amendment.

The third claim for relief alleges that State Defendant condones, acquiesces in, permits and approves the City's issuance of an Independent Review Protocol, and that the Protocol violates infant plaintiffs' procedural due process rights under the Fourteenth Amendment. Infant plaintiffs allege that the Protocol violates their procedural due process rights under the Fourteenth Amendment in that it:

> (a) fails to ensure that a timely pre-removal hearing is held in all non-emergency cases;
> (b) fails to ensure that a prompt post-removal hearing is held when an emergency would make a pre-removal hearing impracticable;
> (c) fails to ensure that a child or his or her law guardian receives timely or adequate notice of the proposed or actual removal of the child from a kinship foster parent, or of an Independent Review requested by a kinship foster parent;
> (d) fails to ensure that Independent Reviews comport with the basic elements of procedural due process, including the right to offer and challenge evidence, to compel the production of documents and testimony, and to confront adverse witnesses; and
> (e) excludes the child from the Independent Review process except at the discretion of the Review Officer.

The fourth claim for relief alleges that 18 N.Y.C.R.R. § 443.5 violates the due process clause of the Fourteenth Amendment.

The fifth claim for relief alleges that State Defendant condones, acquiesces in, permits and approves the City's policy, pattern and practice of failing to schedule timely Independent Review hearings and failing to issue timely Independent Review decisions. Infant plaintiffs claim that this policy, pattern and practice violates their procedural due process rights under the Fourteenth Amendment.

The seventh claim for relief alleges that the violations of rights alleged in the other claims state a cause of action for damages under 42 U.S.C. § 1983.

## Discussion

### Rule 12(b)(1): Standing

State Defendant moves under Rule 12(b)(1) to dismiss the entire complaint for lack of subject matter jurisdiction, arguing that infant plaintiffs lack standing to bring this suit. The argument of lack of standing is properly raised under Rule 12(b)(1). <u>Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.</u>, 436 F.3d 82, 89 (2d Cir. 2006).

In <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992), the Supreme Court listed the three elements necessary for standing: (1) injury in fact—an invasion of a legally protected interest; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision. Infant plaintiffs allege injury in fact—removal from their kinship foster home. They allege that this removal was caused by violation of their constitutional rights. They assert that this injury and violation will be redressed by the relief sought in this action. All this would appear so obvious as to hardly need saying.

However, State Defendant asserts that infant plaintiffs lack standing because there is already an adult party, Balbuena, representing the infants' best interests in a companion lawsuit. State Defendant relies solely on footnote 44 in <u>Smith v. Org. of Foster Families for Equality & Reform</u>, 431 U.S. 816 (1977) ("<u>OFFER</u>"), to support his argument. In that case both the foster parents and the foster children were plaintiffs.

The only challenge was to the standing of the foster parents. It is sufficient to say that the footnote offers no support for State Defendant's argument. Moreover, the Court clearly expressed the view that foster children have standing to assert a constitutionally-protected liberty interest in the integrity of their foster family unit. Id. at 841 & n.45.

State Defendant's motion as to standing is denied.

### Rule 12(b)(6)

State Defendant also moves under Rule 12(b)(6) to dismiss a number of infant plaintiffs' claims for relief. In deciding a motion under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ofori-Tenkorang v. Am. Int'l Group, Inc., 460 F.3d 296, 298 (2d Cir. 2006). Dismissal is only proper when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### Due Process under the Fourteenth Amendment

The Fourteenth Amendment prohibits the states from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. Infant plaintiffs assert that they have a liberty interest in the integrity of their kinship foster family. State Defendant

moves for dismissal of infant plaintiffs' due process claims, arguing that infant plaintiffs possess no such liberty interest.

The Supreme Court's decision in OFFER provides some guidance for settling this dispute. The Court engaged in a lengthy analysis of whether the non-kinship foster parents in that case possessed a constitutionally-protected liberty interest in the integrity of the foster family unit. 431 U.S. at 842-47. The Court ultimately avoided deciding the issue, holding that even if the Court assumed that foster parents had such a liberty interest, the state procedures at issue in OFFER were not defective. Id. at 847. However, in its analysis, the Court noted three distinctions between natural families and foster families: first, natural families are defined by biological relationships whereas foster families usually do not consist of biological relationships; second, the natural family has its origins apart from state law, but the foster family has its source in state law and the relationship is contractual in nature; third, while the liberty interest of a natural family may be protected without interfering with the liberty of another, there is an unavoidable tension between protecting the liberty interests of natural parents and the liberty interests of foster parents. Id. at 842-47.

In Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982), the Second Circuit upheld the liberty interest of a kinship foster parent based on the factors discussed in OFFER. The foster parent was the children's half sister; thus, there existed a biological relationship between the foster

parent and foster children. Moreover, although the foster-parent relationship was legally contractual in nature, the children had lived with their half sister for several years before she entered into a foster care agreement with the state. Finally, there was no tension between the foster parent's rights and the natural parents' rights—the natural father had shown no interest in his children for over twelve years and the natural mother specifically asked that the foster parent care for her children in light of her mental illness and the unlikelihood that she would ever leave the institution to which she was committed.

In the present case, the foster parent, Balbuena, is biologically related to infant plaintiffs, since she is their aunt. Regarding the second OFFER factor, State Defendant distinguishes Rivera on the ground that Balbuena did not have a relationship with either child before she entered into the foster care contract. What State Defendant ignores is that the children came to live with their aunt essentially from birth. This created a relationship as strong as that in Rivera. Finally, with respect to the third OFFER factor, there is no indication from the complaint or from State Defendant's papers that the natural parents object to infant plaintiffs' placement with Balbuena.

Therefore, infant plaintiffs have shown that they possess a constitutionally-protected liberty interest in the integrity of their kinship foster family unit.

In addition to his liberty-interest argument, State Defendant makes a limited argument regarding infant plaintiff's third claim for relief. State Defendant argues that infant plaintiffs have failed to state a procedural due process claim to the extent that the complaint alleges a procedural due process violation for the failure to ensure that a child's law guardian receives notice in the administrative foster home removal process. (See Compl. ¶¶ 64(c), 65)). A law guardian is an attorney appointed by the family court to represent a child who is removed from his natural parents. N.Y. Family Court Act § 1016. The purpose of a law guardian is to protect the interests of the minors they represent, help them express their wishes to the family court, ensure the "practical realization of due process of law" and aid the court in "making reasoned determinations of fact and proper orders of disposition." Id. § 241.

State Defendant asserts that there is no constitutional right to have a law guardian appointed in the administrative foster home removal process, and reasons that, as a result, there can be no constitutional right to have pre- or post-removal notice given to a law guardian.

However, as mentioned above, the court finds that infant plaintiffs possess a liberty interest in preserving the integrity of their kinship foster family. The question of what notice, if any, is due to a law guardian requires an inquiry into what process is due to infant plaintiffs in order to sufficiently protect that liberty interest. As this case develops, the court will no doubt have the opportunity to decide whether the

procedures in place, both at the state and city levels, adequately protect that liberty interest.

State Defendant's motion to dismiss infant plaintiffs' due process claims is denied.

**Unreasonable Seizure under the Fourth Amendment**

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. Infant plaintiffs claim that the state's removal of a child from a kinship foster home on an emergency basis, where no emergency exists, violates their Fourth Amendment right to be free from unreasonable seizures. State Defendant argues that the Fourth Amendment is not implicated because the state assumed legal custody of infant plaintiffs when they were removed from their natural parents, and New York law grants authorized foster care agencies the power to remove foster children from their foster homes. See S.S.L. § 383(2) ("The custody of a child placed out or boarded out . . . shall be vested during his minority . . . in the authorized agency placing out or boarding out such child and any such authorized agency may in its discretion remove such child from the home where placed or boarded."); Id. § 400 ("When any child shall have been placed in an institution or in a family home by a social services official, the social services official may remove such child from such institution or family home.").

Two other district courts have considered the question of whether the Fourth Amendment is implicated when a state that has legal custody of a child makes a change in the child's physical custody. Both courts have answered in the negative. Hunt v. Green, 376 F. Supp. 2d 1043 (D.N.M. 2005); Gedrich v. Fairfax County Dept. of Family Servs., 282 F. Supp. 2d 439 (E.D. Va. 2003).

Infant plaintiffs suggest that the Second Circuit has held otherwise. They rely on Kia P. v. McIntyre, 235 F.3d 749 (2d. Cir. 2000). There, the court stated that the Fourth Amendment applies in the context of the seizure of a child by the government-agency official during a civil child-abuse or maltreatment investigation. Id. at 762. The Court cited Tenenbaum v. Williams, 193 F.3d 581 (2d. Cir. 1999). However, both Kia P. and Tenenbaum dealt with children who were in the legal custody of their parents. Thus, these decisios are not applicable to the present case.

Since infant plaintiffs were in the legal custody of the state when removed from their aunt, infant plaintiffs' Fourth Amendment claim is dismissed.

**Damages**

State Defendant additionally moves for dismissal of infant plaintiffs' damages claim against him. Infant plaintiffs state that they do not seek damages against State Defendant, and to the extent that the

complaint does not explicitly exclude State Defendant from the damages claim, it is in error. The court dismisses the damage claim against State Defendant on consent.

### Conclusion

For the foregoing reasons, the court grants State Defendant's motion as to infant plaintiffs' first claim for relief and their request for damages against State Defendant; and denies his motion as to all other claims.

Dated: New York, New York
       March 20, 2007

SO ORDERED

Thomas P. Griesa
U.S.D.J.