UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
A.C. and H.C., by their next friend Barbara Weiner,
individually and on behalf of all others similarly situated,

                        Plaintiffs,                      07 CV 3308 (TPG) (THK)

                        -against-

JOHN MATTINGLY, in his official capacity as          DECLARATION OF
Commissioner of the New York City Administration for    ROBERT L. KRAFT
Children's Services; and JOHN JOHNSON, in his official    IN OPPOSITION TO
capacity as Commissioner of the New York State Office    MOTION FOR
of Children and Family Services;                                 **CLASS CERTIFICATION**

                        Defendants.

_____X

      ROBERT L. KRAFT, an attorney admitted to practice law in the State of new York and before this Court, hereby declares, under the penalties of perjury, that:

      1.     I am an Assistant Attorney General in the Office of Andrew M. Cuomo, Attorney General of the State of New York and attorney for defendant JOHN JOHNSON ("State defendant") sued in his official capacity as Commissioner of the New York State Office of Children and Family Services ("OCFS").[1]

      2.     I make this declaration to describe the circumstances, as documented by exhibits, of the named class representatives and other foster children known to the Court who will be class members if the proposed class is certified.

---

[1] John Johnson's term in office as Commissioner of the new York State office of Children and Family Services ended on December 31, 2006. Gladys Carrión, Esq., is now Commissioner of the New York State Office of Children and Family Services.

3. Plaintiffs filed a motion for class certification (Docket #2) along with their complaint on or about June 17, 2005. The motion was held in abeyance (Docket #13) pending resolution of State defendant's motion to dismiss. By Opinion dated March 20, 2007 (Docket #24), this Court granted in part and denied in part State defendant's motion to dismiss the complaint.

4. Plaintiffs A.C. and H.C.[2] request that they be named class representatives of a class consisting of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents." Docket #2 at 1.

5. This Court has heard four related cases: <u>Haynes v. Mattingly</u>, 06 Cv. 1383 (TPG) (THK) ("<u>Haynes</u>"), involving foster child Ameena B.; <u>Graham v. Mattingly</u>, 05 Cv. 7413 (TPG) ("<u>Graham</u>"), involving foster children Tyquill J., Taquan J. and Tymeek j.; <u>Rivera v. Mattingly</u>, 06 Cv. 7077 (TPG) (THK) ("<u>Rivera</u>"), involving foster children J.C., E.S. and B.C.; and <u>Jones v. Mattingly</u>, 04 Cv. 8331 (TPG) involving foster children Shamira S. and Kasieam S.

6. As described below, despite their differing circumstances, all of these foster children will be class members if the motion for class certification is granted.

**CIRCUMSTANCES OF A.C. AND H.C.**

7. A.C. was born on October 4, 2003, and her sister H.C. was born on November 14, 2004. Shortly after her birth, each child was placed in foster care with Norma Balbuena

---

Initials are used to ensure the anonymity of the infant plaintiffs. Docket #27.

("Balbuena"), their paternal aunt.  Second Amended Complaint (Docket #21) ¶ 5, 6.  A.C. and H.C. were removed from the Balbuena foster home on December 1, 2004.  Id.

8.      The record does not indicate when and how the law guardian for A.C. and H.C. received notice that they were removed from the Balbuena foster home.  However, by February 8, 2005, the law guardian had notice that the removal had occurred and was acting on behalf of the children in Family Court.  A copy of a Family Court Order dated February 8, 2005, is annexed hereto as Exhibit 1.

9.      On March 18, 2005, at a hearing in this Court where Balbuena requested a temporary restraining order returning the children to her, the law guardian described his office's position as follows:

> We have been assigned legal guardinas [sic] for these children in state court.  It is true, as Mr. Foley says, we do support at this time the removal of those children and we did make an application to have visits suspended between plaintiff [Balbuena] and our clients based on the information that was reported to us.
>
> THE COURT:  Why couldn't the aunt at least visit?
>
> MR. SARTORI:  The concern that was raised at the time, your Honor, was that during two supervised visits, there were two incidents that caused us a great deal of concern.  During one, during the change of the child's diaper, one of the plaintiff's daughters used a clean dress from inside the child's diaper bag the current foster mother had placed there, wiped the child, and returned that dress to the diaper bag with the feces on it.
>
> On a second visit, I believe one week or two weeks later, after being told by the caseworker that the child had just eaten and not to give the child food, the child was given chicken, french fries and soda, and that child subsequently did throw up.  We were concerned because of those issues, this child at the time was 15 months.  The other child is, as you heard, is very young in years and so that was our concern.

Transcript of March 18, 2005, hearing in Balbuena, at 9-10.  Copies of the cover pages and the pages containing the quoted testimony are annexed hereto as Exhibit 2.

10. Balbuena requested an independent review by the ACS of the determination to remove the foster children and by decision after independent review dated December 29, 2004, the decision to remove was affirmed. A copy of the Balbuena Decision After Independent Review is annexed hereto as Exhibit 3.

11. Balbuena requested an administrative hearing before the OCFS. By Decision After Hearing FH # 4295304J dated August 9, 2005, the OCFS determined that "[t]he determination ... to remove [A.C.] and [H.C.] from the foster care home of Norma Balbuena was not arbitrary and capricious, and is affirmed." Decision After Hearing, at page 15. A copy of the Balbuena Decision After Hearing is annexed hereto as Exhibit 4.

12. The Decision After Hearing, a fifteen page single spaced document, inter alia, contains findings of fact numbered 7 through 14 describing the conditions of the children while in foster care. Exhibit 4 at 3-5. The Decision After Hearing summarizes the reasons underlying the decision to affirm the removal of A.C. and H.C. from Balbuena's foster home as follows:

> Based on the above it is concluded, that the Agency did not abuse its discretion when it removed A.C. and H.C. from the Appellant's home. Legal custody of Children in foster care remains with the Agency, which is charged with the responsibility for each child entrusted to its care. A removal decision is, by statute, within the discretion of the Agency, and review herein is limited to whether the Agency's determination amounts to an abuse of that discretion. As the hearing record substantiates the legitimacy of the Agency's concerns regarding conditions in the Appellant's home, including but not limited to, many uncleared people living in Appellant's home and many large burning candles; and the Appellant's failure to cooperate with the therapist regarding [A.C.]'s OT therapy – clearing floor space, having the child ready, learning the exercises, and following through – there is clearly a rational basis for the Agency's exercise of its discretion in this case. Consequently, there is sufficient evidence to establish that the Agency had grounds to remove [A.C.] and [H.C.] from the Appellant's foster care home. It was well within the Agency's discretion to do so. Id. at 14.

13.     A.C. and H.C. have not been returned to Balbuena. After being placed in an approved foster home with non-relatives upon their removal, the children were placed in foster care with another relative shortly before May 16, 2005. See Transcript of Administrative Hearing FH # 4295304J at pp. 204-05. Copies of the cover and appearance pages and pages 204-05 of the transcript of the May 16, 2005, Balbuena administrative hearing are annexed hereto as Exhibit 5.

**CIRCUMSTANCES OF AMEENA B.**

14.     Ameena B. was born on March 13, 2002, and resided with her mother, also a minor in foster care, with a kinship foster parent, Brenda B., for a time thereafter. Ameena B. was separately placed in foster care with a non-relative in April, 2003 when her mother could no longer care for her, and was placed in foster care with Alice Haynes ("Haynes"), her grand aunt on September 24, 2004. Haynes Second Amended Complaint ¶¶ 4, 15, 17 (Haynes Docket #31).

15.     On or about June 7, 2005, the case worker supervising Ameena B.'s foster care told Haynes that she would be mailing Haynes a ten day notice, informing her of a planned non-emergency removal of Ameena B. from Haynes's foster home, and Haynes told the worker to take Ameena B. immediately. Haynes was given the notice when the worker came for Ameena B. on June 10, 2005. See testimony of Alice Haynes at her administrative hearing, at pp. 224-226. A copy of the cover pages and pages 224-26 of the transcript of the Haynes administrative hearing is annexed hereto as Exhibit 6.

16.     Haynes testified that she requested the immediate removal "[m]ainly because Ameena and I are very-very bonded. Ameena may not understand the bonding between us, but I

5

do - and - ... - only get more attached - and-have these people come and take her, for no reason, when I did not do anything wrong." Id. at 225, lns 8-14. See also Affidavit of Alice Haynes executed February 17, 2006 ¶ 14 (Haynes Docket #2).

17.     Haynes requested an independent review by the ACS of the determination to remove Ameena B. from her foster home, and by Decision After Independent Review dated July 11, 2005, the decision to remove foster child Ameena B. from the Haynes foster home was affirmed. A copy of the Haynes Decision After Independent Review (Haynes Docket 15 Attachment 7) is annexed hereto as Exhibit 7.

18.     Haynes requested an administrative hearing before the OCFS. By Decision After Hearing FH # 4420465M, dated February 2, 2006, the OCFS determined that:

> [t]he determination ... to remove Ameena B. from the foster care home of Alice Haynes was not correct. The matter is remanded for the Agency to forthwith commence a complete and comprehensive independent evaluation of Ameena B., in her current placement, and determine the appropriateness of her replacement in the Appellant's home.

Haynes Decision After hearing at 11. A copy of the Haynes Decision After Hearing (Haynes Docket #15 attachment 8) is annexed hereto as Exhibit 8. The Haynes Decision After Hearing explains the order for a re-evaluation as follows:

> It is important to clearly state that had the Agency used care in the assessment of the situation, Ameena B.'s best interests could have been more accurately evaluated prior to her removal from the Appellant's foster home. However, she was removed from the Appellant [sic] foster care more than six months ago. She has spent time in another foster care placement, and her future is uncertain. What is in the child's best interests is obviously what the foster care program must focus on. At this juncture, therefore, the Agency must forthwith commence a complete and comprehensive independent evaluation of Ameena B., in her current placement, and the appropriateness of her replacement in the Appellant's home. Visitation between the Appellant and Ameena B. should also be encouraged, pending this evaluation.

<u>Id</u>. at 10-11.

19.    On or about April 4, 2006, the ACS issued a report which determined that Ameena B. should remain with her then current foster parent. A copy of the report is annexed hereto as Exhibit 9.

20.    In The <u>Haynes</u> federal lawsuit, Haynes requested a preliminary injunction returning Ameena B. to her as a foster child. The City and the law guardian opposed the return. By Order on the record at a hearing on April 11, 2006, this Court denied the request for a preliminary injunction.

21.    Haynes requested reconsideration of the Court's decision.

22.    By Order dated May 25, 2006, this Court granted Haynes's motion for reconsideration only to the extent of referring the matter to magistrate Judge Katz:

> to hold an evidentiary hearing and to issue a report and recommendation to this Court, to determine whether that portion of the application for a preliminary injunction that seeks the return of the infant Ameena B. to plaintiff Alice Haynes' care should be granted, and it is further
>
> ORDERED that in making such recommendation, the Magistrate Judge shall consider the relative benifit [sic] or detriment involved in returning the infant to Alice Haynes' care, versus keeping the child in the care of the current non related foster parent.

A copy of this Court's Order is annexed hereto as Exhibit 10.

23.    The evidentiary hearing, scheduled to commence on July 31, 2006, did not occur because the ACS returned Ameena B. to Haynes as a foster child.

24.    The OCFS took no part in either the evidentiary hearing or the decision to return Ameena B. to Haynes.

25.     Magistrate Judge Katz dismissed the request for a preliminary injunction as moot (Haynes Docket #51).

**CIRCUMSTANCES OF Tyquill J., Taquan J. and Tymeek J.**

26.     Tyquill J., born on December 20, 1996, Taquan J., born on December 30, 1997, and Tymeek J., born on October 23, 1999 resided in foster care with Deborah Graham ("Graham"), their paternal grandmother as recently as March 14, 2007.  Graham Second Amended Complaint dated March 14, 2007, ¶ 6, 10, 11) (Graham Docket #36).

27.     Tyquill J. resided with Graham since he was two weeks old, and Taquan J. resided with Graham since he was eight months old until September, 2002, when they were returned to their mother.  (id. ¶ 7.

28.     Tyquill J. and Taquan J. were removed from their mother and returned to Graham by agents of the ACS on or about February 26, 2003.  Id. ¶ 8.  At the same time, their younger brother, Tymeek J., was also placed with Graham by agents of the ACS.  Id. ¶ 9.

29.     In May, 2004, in addition to being the foster parent to Tyquill J., Taquan J., and Tymeek J., Graham was the aunt and legal guardian of a 13-year-old cousin of these foster children.  Said cousin resided with Graham and the foster children until May 25, 2004.  Id. ¶ 38.

30.     On May 25, 2004, two separate reports were made to the SCR alleging that the 13-year-old cousin was an abused or maltreated child. Id. ¶¶ 39, 40.

31.     On May 25 ACS child protective workers, not the foster care agency, removed both the foster children and Graham's own children from Graham's home.  Id. ¶¶ 41.

32. On July 8, 2004, the ACS conducted an independent review concerning the removal of the foster children from Graham's home. Id. ¶ 49. By Decision After Independent Review dated July 20, 2004, the ACS determined that the foster children should be returned to Graham's foster home. Id. ¶ 50. The foster children were returned to Graham's home on July 30, 2004. Id. ¶ 51.

33. The law guardian for the foster children submitted a written statement which was made part of the independent review. Decision After Independent Review p. 6. A copy of the Graham Decision After Independent review is annexed hereto as Exhibit 11.

34. On information and belief, Tyquill J., Taquan J., and Tymeek J., are no longer foster children but, instead, have been placed in the custody of Graham. However, if the proposed class definition is adopted by this Court, they would be class members because they are "children in New York City who ... were on or after July 1, 2004, ... residing in foster care with relatives who are within the second or third degree of consanguinity."

**CIRCUMSTANCES OF J.C., E.S. and B.C.**

35. J.C., born September 19, 1997, was placed in foster care with her grand aunt and uncle, Mable and Anthony Rivera ("Riveras") in December, 1998. Rivera Complaint ¶ 6 (Rivera Docket #1).

36. E.S., born January 10, 1998, and B.C., born February 27, 1999, are sisters and cousins of J.C. who were placed in foster care with the Riveras in December, 1999. Id. ¶ 5.

37. On March 31, 2006, the Riveras were the foster parents of J.C., E.S., B.C. and two older half sisters of E.S. and B.C. Id. ¶ 27, 29.

38. On March 31, 2006, employees of FSSU, the agency supervising the foster care of the five children on behalf of the ACS, removed all of the foster children from the Riveras' foster home, Id. ¶ 42, because one of the older half sisters stated that the boyfriend of the Riveras' adult daughter had sexually assaulted the other older half sister, while the two half sisters were in the upstairs apartment. Id. ¶ 38.

39. The Riveras requested an independent review from the ACS which was held on April 18, 2006. id. ¶¶ 50, 51.

40. The Rivera Decision After Independent Review confirmed the propriety of FSSU's removal of the foster children from the Riveras' foster home. A copy of the Rivera Decision After Independent review, dated May 8, 2006, is annexed hereto as Exhibit 12.

41. The Riveras requested an administrative hearing by the OCFS, and by Decision After Hearing numbered 40829, dated December 13, 2006, the OCFS determined that:

> The determination of the New York City Administration for Children's Services and Family Support Systems to remove children [JC., E.S. and B.C.] from the foster home of the Appellant, Mable Rivera, was improper as it was arbitrary and capricious and is hereby remanded. The New York City Administration for Children's Services and Family Support Systems are directed to consider the appropriate placement of the children ... in light of all of the facts and circumstances that presently exist in their current placement and prior placement with the Appellant. The New York City Administration for Children's Services and the Family Support Systems are further directed, to factor in all the applicable statutory and regulatory standards governing kinship foster home placements in considering the children's placement when re-evaluating its removal determination upon the remand of this matter. The New York City Administration for Children's Services and Family Support Systems is to complete its reevaluation of its removal determination upon the remand of this matter, and reach its determination as to the appropriateness of the children's placement within 60 days of its receipt of this decision.

Rivera Decision After Hearing at 13. A copy of the Rivera Decision After hearing is annexed hereto as Exhibit 13.

42. This Court ordered the return of E.S., B.C. and J.C. to the foster care of the Riveras in December, 2006.

**CIRCUMSTANCES OF SHAMIRA S. AND KASIEAM S.**

43. Shamira S. and Kasieam S. were in foster care with their grandmother, Jeanette Jones ("Jones"), since they were one month old and five years old respectively. Memorandum of Law (Balbuena Docket #20) at pp. 2-3.

44. On September 23, 2004, defendants removed Shamira S. and Kasieam S. from Jones's foster home. Id.[3]

45. On information and belief, Jones did not request either an independent review or a fair hearing, but, instead, commenced the above-named federal Court action. Id.

46. Jones commenced an action in this Court on October 20, 2004, and on October 22, 2004, this Court ordered that Shamira and Kasieam be returned to Ms. Jones immediately. Id.

47. Shamira S. and Kasieam S., who are represented by proposed class counsel in the instant action, have settled all claims against all defendants for a payment of $115.000.00 for themselves and $5,000 for their attorney, without challenging the constitutionality of the system of review of children from kinship foster care. A copy of the Stipulation and Order of Settlement is annexed hereto as Exhibit 14.

---

[3] The Complaint in Jones v. Mattingly, 04 Cv. 8831 (TPG) is sealed and more details about the reasons for the removal are not available.

48.     Copies of all exhibits annexed hereto have been redacted to ensure privacy of persons named therein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 29th day of June, 2007

By:_____S/_____
ROBERT L. KRAFT (RK5418)