UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

A.C. and H.C., by their next friend Barbara Weiner, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

**07 CV 3308 (TPG) (THK)**

JOHN MATTINGLY, in his official capacity as Commissioner of the New York City Administration for Children's Services; and JOHN JOHNSON, in his official capacity as Commissioner of the New York State Office of Children and Family Services;

Defendants.

---------------------------------------------------------------------- x

**CITY DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 2

STATEMENT OF THE CASE .......... 3

PLAINTIFFS' CLAIMS AGAINST THE CITY DEFENDANT .......... 3

THE MOTION FOR CLASS CERTIFICATION .......... 4

STATUTORY AND REGULATORY FRAMEWORK .......... 5

A. PROTECTION OF CHILDREN FROM HARM BY THEIR PARENTS .......... 5

B. THE FOSTER CARE RELATIONSHIP .......... 6

C. STATE LAW, REGULATIONS AND POLICY REGARDING THE REMOVAL OF FOSTER CHILDREN FROM THE CARE OF FOSTER PARENTS .......... 7

ARGUMENT .......... 8

POINT I

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED .......... 8

STANDARD FOR CLASS CERTIFICATION .......... 8

PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER RULE 23 (a) .......... 9

PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER RULE 23 (b) .......... 12

THE REPRESENTATIVE PARTIES HAVE NOT DEMONSTRATED HOW THEY WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE ENTIRE CLASS .......... 15

**Page**

POINT II

THE PROPOSED CLASS IS OVERBROAD AND DOES NOT LIMIT CLASS MEMBERSHIP TO THE ACTUAL INJURY SOUGHT TO BE REMEDIED BY CLASSWIDE RELIEF ........ 15

CONCLUSION ........ 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

A.C. and H.C., by their next friend Barbara Weiner, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

**07 CV 3308 (TPG) (THK)**

JOHN MATTINGLY, in his official capacity as Commissioner of the New York City Administration for Children's Services; and JOHN JOHNSON, in his official capacity as Commissioner of the New York State Office of Children and Family Services;

Defendants.

---------------------------------------------------------------------- x

## CITY DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of defendant John Mattingly ("City defendant"), as former Commissioner[1] of the New York City Administration for Children's Services ("ACS"), in opposition to plaintiffs' motion for certification of a class.[2] As discussed further below, the Court should deny the motion for class certification because: (1) the proposed class improperly includes foster children with kinship foster parents where no

---

[1] John Mattingly's term in office as Commissioner of the New York City Administration for Childrens' Services ended on December 31, 2006.

[2] By Order dated April 25, 2007 (Docket #1), this Court severed plaintiffs' claims from those raised in Balbuena v. Mattingly, 05 CV. 2986 ("Balbuena"), directed transfer of some pleadings and documents from Balbuena to the instant action, and directed that the Court's Orders and Opinions made in Balbuena also be made part of the record of the instant action. References to docket numbers are to those of the instant action unless otherwise indicated.

protected liberty interest between the foster parent and child exists under the balancing test of Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982); and (2) the potential class members cannot be identified, as the Rivera v. Marcus balancing test for determining whether a protected liberty interest exists applies on a case-by case basis at the time of removal.

## STATEMENT OF THE CASE

The City defendant adopts the Statement of the Case contained in the State Defendant's Memorandum of Law in Opposition to the Motion for Class Certification, but repeats it herein for the convenience of the Court. References herein to the record will be to the Declaration of Robert L. Kraft, Esq., Assistant Attorney General, who has ably analyzed the factual scenarios presented by this motion.

Plaintiffs A.C. and H.C.[3] filed a motion for class certification (Docket #2) along with their complaint on or about June 17, 2005. The motion was held in abeyance (Docket #13) pending resolution of State defendant's motion to dismiss. By Order dated March 17, 2006 (Docket #28), this Court granted plaintiffs' motion to interpose an Amended Complaint (Docket #21) and By Opinion dated March 20, 2007 (Docket #24) ("Opinion"), this Court granted in part and denied in part State defendant's motion to dismiss the amended complaint.

## PLAINTIFFS' CLAIMS AGAINST THE CITY DEFENDANT

The City defendant did not move to dismiss the complaint. The Claims for Relief against the City are as follows:

The First Claim essentially alleges that the City defendant has a policy, pattern and practice of removing children from kinship foster homes on an emergency basis when a true

[3] Initials are used to ensure the anonymity of the infant plaintiffs. Docket #27.

emergency does not exist, and that such policy, pattern and practices violates the class members' Fourth Amendment right to be free from unreasonable seizures and the Fourteenth Amendment's right to substantive due process.

The Second Claim alleges that the City defendant violates the same Fourth and Fourteenth Amendment rights by reason of the failure to promulgate substantive standards governing removals of children from kinship foster parents on a non-emergency basis.

The Third Claim alleges that the Independent Review Protocol, the procedure by which removals are reviewed internally by ACS, violates the Fourteenth Amendment guarantee of procedural due process in a number of ways.

The Fourth Claim challenges the constitutionality of 18 N.Y.C.R.R. §443.5 with respect to appropriate notice to the foster children or their law guardians as to removals and Independent Reviews, and that the regulation does not ensure that the Independent Review provides procedural due process.

The Fifth Claim alleges that the failure to schedule timely Independent Review hearings and failing to issue timely post hearing decisions violates procedural due process.

The Sixth Claim alleges that the same practices complained of in the Fifth Claim violate 18 N.Y.C.R.R. §§ 443.5(b) and (c).

The Seventh Claim alleges that the foregoing establishes a cause of action for damages under 42 U.S.C. § 1983.

**THE MOTION FOR CLASS CERTIFICATION**

Plaintiffs' motion requests that they be named class representatives of a class consisting of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents." Docket #2 at 1. There were four related cases

filed before this Court: Haynes v. Mattingly, 06 Cv. 1383 (TPG) (THK) involving foster child Ameena B.; Rivera v. Mattingly, 06 Cv. 7077 (TPG) (THK) involving foster children J.C., E.S. and B.C.; Graham v. Mattingly, 05 Cv. 7413 (TPG) involving foster children Tyquill J., Taquan J. and Tymeek J.; and Jones v. Mattingly, 04 Cv. 8331 (TPG) involving foster children Shamira S. and Kasieam S. All of these foster children will be class members if the instant motion for class certification is granted, and this Court may take judicial notice of facts in evidence before it concerning these additional children when determining the suitability of class certification.[4] The facts of the putative class members pertinent to their inclusion in the above-defined class are set out in the Declaration of Robert L. Kraft, Assistant Attorney General with supporting exhibits, which was submitted with the State defendant's Memorandum of Law

## STATUTORY AND REGULATORY FRAMEWORK

### PROTECTION OF CHILDREN FROM HARM BY THEIR PARENTS

To implement New York State's obligation to protect children, local social services districts are required to establish child protective services to investigate allegations of child abuse and maltreatment. NY Social Services Law §§ 411, 423. In the City of New York, the Administration for Children's Services ("ACS") is the child protective services agency. Charter of the City of New York § 617.

If a child protective service determines that a child must be removed from his or her birth parent(s), the child protective service must follow procedures set out in New York Family Court Act ("NYFCA") article 10.

---

[4] "When considering a motion for class certification, courts should consider the allegations in the complaint as true. A court may not examine the merit of the case in a motion for class certification. However, a court may consider material outside the pleadings in determining the appropriateness of class certification." Reynolds v. Giuliani, 118 F.Supp.2d 352, 387-88 (S.D.N.Y. 2000)(citations omitted).

Law guardians are appointed to represent children in proceedings brought pursuant to article 10 of the Family Court Act. NY FCA § 1016. The law guardian is appointed as soon as the Family Court learns that a child has been removed from the custody of birth parents or that a petition for removal is pending, and the appointment continues so long as the Family Court has jurisdiction over the child. Id. The law guardian may commence a proceeding to review the placement of a child. NY FCA § 1055(b)(ii). The law guardian may also participate in a number of different Family Court proceedings where the foster care status of the child is reviewed. See, NY SSL §§ 358-a; 383-c; 392(4)(g)).

**THE FOSTER CARE RELATIONSHIP**

New York law provides that when a child is removed by a government actor from his or her birth parents, custody is placed in an authorized agency, which term includes Commissioners of local Departments of Social Services and other agencies approved by the OCFS to take custody of children. NY SSL § 371(10). Authorized agencies board out children to be cared for in individual homes by foster parents. NY SSL §§ 374(1), 371(19).

Authorized agencies, in accordance with State regulations, accept applications from individuals who would like to serve as foster parents, conduct investigations of the backgrounds of such persons, determine which applicants are qualified to be foster parents, inspect potential foster homes to determine whether they comply with regulatory requirements designed to provide a safe residence for the foster child, and supervise the conduct of foster parents who have received a child from the authorized agency. 18 N.Y.C.R.R. Part 443.

In 1989, without making other changes regarding the rights and responsibilities of foster parents, the Legislature explicitly recognized the possibility that family members could be foster parents to a removed child. NY FCA § 1017(a). See also, 18 N.Y.C.R.R. Part 443.7, OCFS

regulations that provide an expedited process for approval of relative foster parents (who will not have applied to be foster parents and been investigated before commencement of the article 10 proceeding concerning their relative child).

If a relative becomes a foster parent, the Court grants custody of the child to an authorized agency, not to the relative. NY SSL § 383(2). The foster parent is paid a stipend to provide services to the related child. 18 N.Y.C.R.R. § 427.6. The custody of the removed child remains with the authorized agency and any such authorized agency may in its discretion remove such child from the home where placed or boarded. NY SSL § 383(2).

**STATE LAW, REGULATIONS AND POLICY REGARDING THE REMOVAL OF FOSTER CHILDREN FROM THE CARE OF FOSTER PARENTS**

New York law provides that "[w]hen any child shall have been placed ... in a family[5] home by a social services official, the social services official may remove such child from such ... family home and make such disposition of such child as is provided by law." NY SSL § 400(1). Regulations of the OCFS provide that, when an authorized agency removes a child from a foster home, it must give the foster parent ten days notice except in emergency situations, and the notice must inform the foster parent of her right to a conference before the local agency, and an administrative hearing before the OCFS to challenge the decision to remove the child from foster care. 18 N.Y.C.R.R. § 443.5. If the Decision After Hearing before the OCFS is adverse to the foster parent, the foster parent may seek judicial review in New York Supreme Court pursuant to article 78 of New York Civil Practice Law and Rules. NY SSL § 22(9)(a).

---

5 The reference in NY SSL § 400 to "family home" was there long before biological relatives were permitted to be foster parents. The phrase "family home" refers to a home with a family instead of in a more institutional setting, and not to a home with the removed child's biological family.

New York law does not provide that a removed child who has been placed in foster care by the Family Court has a right to stay with a particular foster parent. To the extent the law guardian may express the child's interests in Family Court proceedings, those interests may be taken into account by the Court or the authorized agency in making foster home decisions.

## ARGUMENT

## POINT I

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED

The facts alleged in the complaint and the declarations both supporting and opposing the application for a preliminary injunction demonstrate that no class should be certified in this action.

### STANDARD FOR CLASS CERTIFICATION

Under Federal Rule of Civil Procedure 23, there are two prerequisites for class action certification. First, the moving party must establish that the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members of the class is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999); Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir. 1997).

Second, the proponent must show that the proposed class action falls within one of the types of class actions maintainable under Rule 23(b) i.e., where: (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be

dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication. Caridad, supra, at 292; Marisol A., at 376.

It is the role of the District Court to scrutinize each prospective class action and determine if there is sufficient evidence to establish the predicate for a class action. In re Initial Public Offering Securities Litigation, 471 F. 3d 24, 41 (2d Cir. 2006) Reh. Den. 483 F.3d 70 (2d Cir. 2007).

**PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER RULE 23 (a)**

First, Plaintiffs have not met the burden of establishing numerosity under Rule 23(a). District courts must make factual findings as to the approximate size of the class based on the parties' evidentiary proffers. Vengurlekar v. HSBC Bank, 03 Civ. 0243(LTS)(DFE), 2007 WL 1498326, at *4. A Rule 23 movant must make at the very least a factual showing of numerosity.

Plaintiffs submit counsel's declaration attaching Mayor's Management Reports that describe numbers of kinship foster children . However, these numbers cannot represent the size of an appropriate class as they include kinship foster children who either: (1) are never removed from kinship foster parents, (2) have no protected Rivera v. Marcus liberty interest; or (3) who participate in challenged state administrative proceedings or Family Court proceedings or Federal Court actions to address any concerns they may have about their removals from kinship foster parents.

Plaintiffs' counsel here represent many foster children in foster care situations, but are unable to quantify a class with the requisite numerosity based on their experience.

Second, the different scenarios presented by the putative class representatives are wildly disparate. As will be demonstrated below, there is no common question of fact or law that applies even to all of the named plaintiffs in the related cases, much less the entire putative class. Indeed, in colloquy in a discovery conference in Rivera v. Mattingly, held on June 14, 2007, this Court expressed the opinion that these cases were not appropriate for a class action.

Third, plaintiffs cannot establish typicality. A class definition that requires addressing the central issue of liability in a case to determine whether a person is a member of the class will be rejected, because the inquiry essentially requires a mini-hearing on the merits of each plaintiff's case. Selby, et al v. Principal Mut. Life Ins. Co., 197 F.R.D. 48, 55 (S.D.N.Y. 2000).

"[I]f a court must make highly fact-specific or individualized determinations in order to establish a defendant's liability to each class member, typicality will not be met..." Bishop, et al., v. New York City Dept. of HPD, 141 F.R.D 229, 238 (S.D.N.Y. 1992); Sheehan v. Purlator, Inc, et al, 103 F.R.D. 641, 652 (E.D.N.Y. 1984), aff'd 839 F.2d 99(2d Cir. 1988), cert denied, 488 U.S. 891 (1988).

In General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147 (1982) the Supreme Court held that it was error to allow an employee, with only a claim of wrongful denial of a promotion by his employer, to represent a class of individuals of the same nationality who claimed discrimination in hiring. The Court reasoned that:

> We have repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (quoting Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216). In East Texas Motor Freight .... [w]e held that the Court of Appeals had "plainly erred in declaring a class action." 431 U.S., at 403.... Because at the time the class was certified it was clear that the named plaintiffs were not qualified for line-driver positions, "they could have suffered no injury as a result of the allegedly

> discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." Id., at 403-404.

Falcon, 457 U.S. at 156.

The typicality requirement of Rule 23 must focus on the individual plaintiffs. The class definition cannot include claims not typical of those of the individual plaintiffs. In the instant case, the named plaintiffs, A.C. and H.C., are not typical class representatives since they were not harmed by lack of access to the independent review and administrative hearing sought and had by Balbuena. When their removal was brought to his attention in the normal course of his duty as law guardian, the law guardian supported the removal of A.C. and H.C. from Balbuena's foster care, and acted in conformance with that view in the appropriate forum, New York Family Court. Kraft Decl. ¶ 8 9. Similarly, the children involved in the related cases are not typical class representatives. Tyquill J., Taquan J., and Tymeek J. are not typical class representatives since, after their removal by child protective workers, not foster care agency workers, their law guardian participated in the independent review sought and had by the foster mother, Graham. Kraft Decl. ¶ 33. Ameena B. is not a typical class representative since her removal from Haynes's foster home was a non-emergency removal that would have been made after notice and independent review except that Haynes could not bear to have the child with her pending the independent review. Kraft Decl. ¶ 16. Shamira S. and Kasieam S. are not typical class members since they settled their case for damages without making a claim that the State administrative remedies are inadequate. Kraft Decl. Exhibit 14. J.C., E.S. and B.C. are not typical class members since the relief they received after an administrative hearing, an order directing the City to place them in a foster home based on a determination of their best interest, is the same relief available in Family Court.

**PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER RULE 23 (b)**

Plaintiffs also fail to satisfy any of the requirements of Rule 23(b).

Uder Rule 23(b)(1)(A) plaintiff must show a risk of inconsistent or varying adjudications with respect to individual class members. There is clearly no such risk here. Each child who is removed from a kinship foster home is involved in a different factual scenario, and common sense dictates that the "facts on the ground" determine whether an emergency removal was appropriate. There can be no risk of inconsistent adjudications because no two cases present the same factual scenario. There is no risk of adjudications with respect to individual members of the class as required by Rule 23(b)(1)B) which as a practical matter would be dispositive of others not party to the adjudications, nor can disposition of this case substantially impair or impede the ability of others to protect their interests.

Second, ACS has not acted or refused to act on any ground common to the class as required by Rule 23(b)(2). Again, each individual case is determined on its own, and the decision is reached according to the facts presented in accordance with the policies and directives established by State law and regulations. One is hard pressed to imagine a more individualistic and fact specific process.

Third, to the extent that common questions of law or fact are set forth by plaintiffs, they do not predominate over the individual factual issues that are inherent in the appropriateness of eligibility of an Immigrant for public benefits.

Named plaintiffs A.C. and H.C. and other foster children known to the Court through related cases do not present questions of law or fact common to the class. On the contrary, the nature of the liberty interest of each foster child, and the relief he or she might be entitled to, must be determined individually. In determining that A.C. and H.C. have a constitutionally-protected liberty interest, this Court applied the three factors set forth in Rivera v. Marcus, 696

F.2d 1016 (2d Cir. 1982). Opinion at 9-10. While these factors may be applied to the relationship between any individual foster child and kinship foster parent, they require individual analysis that makes this case unsuitable to be a class action.

The three part test enunciated by the Rivera Court and this Court's opinion, limits, on its face, the potential class members. "Mrs. Rivera is related biologically to the Ross children. They lived together as a family for several years *before* the foster care agreement was consummated. Finally, there is not the potential for conflict with the rights of the natural parents of the Ross children". Rivera v. Marcus at 1024. Thus, before a Court could determine whether the alleged constitutional violations affected the proposed class members in a manner susceptible to resolution in a class action, it will have to make factual determinations, on a case by case basis, as to whether the individual involved was even a member of the class. It should be remembered that Rivera v. Marcus is an exception to the general rule that foster parents do not have a liberty interest in a familial relationship. Smith v. OFFER, 431 U.S. 816 (1977).

Regarding the City's alleged failure to promulgate substantive standards governing removals of children from kinship foster parents on a non-emergency basis, only Ameena B. was removed on a non-emergency basis, and that removal was hastened because Haynes was not willing to live with the foster child pending the independent review that she would have been offered had she accepted the ten day notice. All of the other foster children, except possibly Shamira S. and Kasieam S. where the reasons for the removal are sealed, were removed on an emergency basis. A.C. and H.C. were removed because investigators observed lit candles in the house, no food, a lack of space for A.C.'s therapy and uncleared adults in the home. J.C., E.S. and B.C. were removed because of an allegation of sexual misconduct with one of the older sisters of E.S. by a frequent visitor to the foster home. Tyquill J., Taquan J. and Tymeek J. were

removed from the Graham foster home, along with Graham's own children, after one of the other children living in that home was observed with shoe prints on her face and alleged that they were inflicted by an adult in the Graham foster home. Even if there is disagreement about whether all of these reasons constitute grounds for emergency removal, New York law obligates foster care agencies to protect the foster children in their custody and gives them discretion to remove foster children when they deem it appropriate.

Regarding the City's alleged issuance of an Independent Review Protocol that violates plaintiffs' procedural due process rights, Shamira S. And Kasieam S. are allegedly class members since they were foster children after July 1, 2004, yet their cases were never reviewed by either the City or the State defendants pursuant to the State administrative procedures being challenged. Kraft Decl. ¶ 45. Tyquill J., Taquan J. and Tymeek J. were returned to their kinship foster parent after an independent review. Kraft Decl. ¶ 32. Their law guardian submitted a written statement at the independent review. Kraft Decl. ¶ 33. They are not similarly situated to other foster children who claim that their absence from the independent review without notice to the law guardian and separate representation violated their rights.

Regarding the administrative hearing component of the current state administrative procedure specified in challenged 18 N.Y.C.R.R. § 443.5, the Decisions after Hearing regarding Ameena B. and J.C., E.S. and B.C. required the City to determine the proper placement of each foster child using the best interest of the child standard applicable in Family Court proceedings and that this Court made applicable in the proceeding before Magistrate Judge Katz regarding Ameena B. The cases of foster children Tyquill J., Taquan J., Tymeek J., Shamira S. and Kasieam S. did not get to an administrative hearing, so these children do not have standing to

challenge the constitutionality of hearing procedures. Yet, they are all within the proposed class definition.

Moreover, in this case and the related cases, there are claims for compensatory damages, which would involve extensive discovery and evidentiary hearings. There is no shorthand method of ascertaining damages, if any, no formula to be applied. Each damages trial would in effect be a plenary trial, Accordingly, a class action would not be superior to separate trials in determining the liability, if any of the defendants to the class members.

**THE REPRESENTATIVE PARTIES HAVE NOT DEMONSTRATED HOW THEY WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE ENTIRE CLASS**

We adopt in its entirety the argument of the State defendant in this regard. Essentially that argument is that having supported the removal of the named plaintiffs from the Balbuena home in the Family Court, Plaintiffs' counsel may not now assert that they were wronged in any manner similar to the putative class members.

## POINT II

**THE PROPOSED CLASS IS OVERBROAD AND DOES NOT LIMIT CLASS MEMBERSHIP TO THE ACTUAL INJURY SOUGHT TO BE REMEDIED BY CLASSWIDE RELIEF**

The claims of A.C. and H.C., for which plaintiffs seek classwide relief, focus on the City's failure to promulgate substantive standards governing removals of children from kinship foster parents on a non-emergency basis, the City's issuance of an Independent Review Protocol that allegedly violates plaintiffs' procedural due process rights and the City's alleged policy, pattern and practice of failing to schedule timely Independent Review hearings and failing to issue timely Independent Review decisions. A separate claim for relief alleges that State

defendant's regulation codified at 18 N.Y.C.R.R. § 443.5 violates the due process clause of the Fourteenth Amendment.

Plaintiffs' motion requests that they be named class representatives of a class consisting of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents." Docket #2 at 1. In effect, plaintiffs' proposed class consists of all New York City children in kinship foster care from July, 2004, forward.

The proposed class is overbroad in improperly including kinship foster care arrangements that have no protected liberty interest under the balancing test of Rivera v. Marcus. The definition of a class must comport with the demonstrable claims of named plaintiffs.Nor will dividing the class into subclasses be effective, because the Court would still have to make factual determinations as to membership in the subclasses based on the existence of a liberty interest.

## CONCLUSION

**FOR THE REASONS SET FORTH ABOVE, PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED**

Dated: New York, New York
August 14, 2007

Yours, etc.,
MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street, Room 2-106
New York, N.Y. 10007
(212) 442-3329

By: Jesse I Levine (8829)
Assistant Corporation Counsel

**Statutes**

**Pages**

## TABLE OF AUTHORITIES

**Cases**

**Pages**


Balbuena v. Mattingly,
05 CV. 2986 ....................2, 11, 15

Bishop, et al., v. New York City Department of HPD,
141 F.R.D. 229 (S.D.N.Y. 1992) ....................10

Caridad v. Metropolitan-North Commuter R.R.,
191 F.3d 283 (2d Cir. 1999)....................8, 9

East Texas Motor Freight System, Inc. v. Rodriguez,
431 U.S. 395 ....................11

General Telephone Co. of the Southwest v. Falcon,
457 U.S. 147 (1982)....................10, 17

Graham v. Mattingly,
05 Cv. 7413 (TPG)....................5

Haynes v. Mattingly,
06 Cv. 1383 (TPG)....................5

In re Initial Public Offering Securities Litigation,
471 F.3d 24 (2d Cir. 2006)
Reh. Den. 483 F.3d 70 (2d Cir. 2007) ....................9

Jones v. Mattingly,
04 Cv 8331 (TPG)....................5

Lewis v. Casey,
518 U.S. 343 (1996)....................16

Marisol A. v. Giuliani,
126 F.3d 372 (2d Cir. 1997)....................8, 9

O'Shea v. Littlejohn,
414 U.S. 488 (1974)....................16

Reynolds v. Giuliani,
118 F. Supp. 2d 352 (S.D.N.Y. 2000)....................5,

Rivera v. Marcus,
696 F.2d 1016 (2d Cir. 1982)....................3, 9, 12, 13, 16

**Page**

Rivera v. Mattingly,
06 Cv. 7077 (TPG) ........ 5, 10

Selby, et al v. Principal Mutual Life Insurance Co.,
197 F.R.D. 48 (S.D.N.Y. 2000) ........ 10

Sheehan v. Purlator, Inc, et al,
103 F.R.D. 641 (E.D.N.Y. 1984),
aff'd 839 F.2d 99(2d Cir. 1988),
cert denied, 488 U.S. 891 (1988) ........ 10

Smith v. OFFER, 431 U.S. 16 (1977) ........ 10

Vengurlekar v. HSBC Bank,
03 Civ. 0243(LTS) ........ 9

**Statutes**

**Page**

42 U.S.C. § 1983 ........ 4

Charter of the City of New York § 617 ........ 5

New York Family Court Act Article ........ 5

New York Family Court Act § 1016 ........ 6

New York Family Court Act § 1017 ........ 6

New York Family Court Act § 1055(b)(ii) ........ 6

New York Social Services Law § 22(9)(a) ........ 7

New York Social Services Law §§ 358-a ........ 6

New York Social Services Law § 371(10) ........ 6

New York Social Services Law § 371 (19) ........ 6

New York Social Services Law § 374(1) ........ 6

New York Social Services Law § 383(2) ........ 6, 7

New York Social Services Law § 392(4)(g) ........ 6

New York Social Services Law § 383-c ........ 6

Page

New York Social Services Law § 400 .......... 7

New York Social Services Law § 400(1) .......... 7

New York Social Services Law §§ 411 .......... 5

New York Social Services Law § 423 .......... 5

New York Social Services Law § 427.6 .......... 7

**Rules andRegulations**

Page

18 N.Y.C.R.R. §427.6 .......... 7

18 N.Y.C.R.R. § 443.5 .......... 4,7, 16

18 N.Y.C.R.R. § 443.5(b) .......... 4

18 N.Y.C.R.R. § 443.5(c) .......... 4

18 N.Y.C.R.R. § 443.7 .......... 7

18 N.Y.C.R.R. Part 3 .......... 6

F.R.C.P. Rule 23(a) .......... 9, 10

F.R.C.P. Rule 23(a) .......... 8

F.R.C.P. Rule 23(b) .......... 8,12

F.R.C.P. Rule 23(b)(1)(A) .......... 12

F.R.C.P. Rule 23(b)(1)(B) .......... 12

F.R.C.P. Rule 23(b)(2) .......... 12