UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

A.C. and H.C., by their Next Friend BARBARA : 
WEINER, individually and on behalf of all others :
similarly situated, :
 :      07 Civ. 3308 (TPG)(THK)
                              Plaintiffs, :      (ECF Case)
 :
              - against - :      PLAINTIFF CHILDREN'S
 :      REPLY MEMORANDUM
JOHN MATTINGLY, in his official capacity as :      OF LAW IN FURTHER
Commissioner of the New York City Administration :      SUPPORT OF THEIR
for Children's Services; and JOHN JOHNSON, in his :      MOTION FOR CLASS
official capacity as Commissioner of the New York :      CERTIFICATION
State Office of Children and Family Services, :
 :
                              Defendants. :
 :
-------------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiffs A.C. and H.C. submit this reply memorandum of law in further support of their

motion for class certification.  Defendants raise several purported bars to granting plaintiffs'

motion, but none is legally sufficient. Although cloaked as distinct challenges to plaintiffs'

qualification for class certification based upon the prerequisites of Fed. R. Civ. P. 23(a) and (b),

defendants' arguments all boil down to one erroneous assertion - - that plaintiffs' claims require

fact-specific analysis that makes them unsuitable for treatment as a class.  Defendants raise a

smokescreen of facts about potential class members designed to distract the court from the fact

that plaintiffs have satisfied each of the requirements for class certification.  For the reasons set

forth below, the Court should grant plaintiffs' motion for class certification.

## BACKGROUND

This case concerns the constitutionally protected liberty interests of children and their

kinship foster parents in maintaining close family relationships, and in preventing those

relationships from being torn asunder when the defendants arbitrarily remove the children from the care of family members and place them in the care of strangers.

The original complaint, filed by Norma Balbuena on her own behalf and purportedly on behalf of A.C. and H.C., was filed on March 18, 2005.[1] On April 7, 2005, The Legal Aid Society was substituted as counsel for A.C. and H.C. On June 20, 2005, A.C. and H.C., by their next friend Barbara Weiner, filed an Amended Complaint against defendants. Along with their complaint, A.C. and H.C. filed a motion for class certification.

On July 15, 2005, A.C. and H.C. moved to amend their complaint to make certain technical corrections. State defendant moved to dismiss infant plaintiffs' complaint. The motion for class certification was held in abeyance as to State defendant pending the resolution of State defendant's motion to dismiss. By Opinion dated March 17, 2006, the court granted infant plaintiffs' motion to amend their complaint. By Opinion dated March 20, 2007, the court granted in part and denied in part State defendant's motion to dismiss.

## ARGUMENT

### POINT I

**PLAINTIFFS HAVE AFFIRMATIVELY ESTABLISHED
THAT THEY MEET THE FED. R. CIV. P. 23(a)
PREREQUISITES FOR CLASS CERTIFICATION**

Contrary to defendant Johnson's suggestion, plaintiffs do not assume that the numerosity requirement is "met as a matter of course." (State Defendant's Memorandum of Law, at 11, ECF # 30 (hereinafter "State Memo")). Plaintiff class represents all children in kinship foster homes from July 1, 2004, to the present and those children who will be in kinship foster homes in the

---

[1] By Order dated April 25, 2007, the court severed plaintiffs' claims from those raised in *Balbuena v. Mattingly*, 05 Civ. 02986, assigned a new index number, directed transfer of some pleadings and documents from *Balbuena* to the instant action, and directed that the court's Orders and Opinions made in *Balbuena* also be made part of the record of the instant action.

future. Although the exact size of the class is not determinative (*see Deary v. Guardian Loan Co.*, 534 F. Supp. 1178, 1190 (S.D.N.Y. 1982) (finding that plaintiff need not "demonstrate with precision the number of persons in the purported class")), the number reaches into the thousands.

The Preliminary New York City *Mayor's Management Report* for Fiscal Year 2007 reports that 16,827 children were in foster care for the first four months of this year. Of those 16,827, 30.8 percent -- or approximately 5,000 children -- were in kinship foster homes. In 2004, 19.4 percent of children in foster care were in kinship foster homes, and the percentage increased to 21.4 and 25.5 in FY 2005 and FY 2006, respectively. The percentage of children placed with relatives has continued to climb since 2004. *See* Declaration of Theresa B. Moser, September 14, 2007, ¶ 3 & Exh. 3 (hereinafter "Moser Decl."); Declaration of Jennifer Baum, June 17, 2005, ¶6 & Exh. 1 & 2, ECF # 5 (hereinafter "Baum Decl.").

Thus, the estimated size of the class is in excess of much smaller classes that this Court has certified. *See, Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y. 1991) (certifying class of 120 members); *Goetz v. Crosson*, 728 F. Supp. 995, 1003 (S.D.N.Y. 1990) (finding numerosity requirement satisfied with 100 to 200 individuals). *See also, Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable") (*quoting* Herbert B. Newberg, Newberg on Class Actions: A Manual for Group Litigation at the Federal and State Levels § 3.05 at 141-42 (2d ed. 1985)). The substantial number of putative class members here means it is impractical for all of them to join the case. *See also* Memorandum of Law of A.C. and H.C. in Support of Class Certification, June 17, 2005, at 8-9, ECF # 4 (hereinafter "A.C. Memo").

Any child placed in a foster home with relatives is at risk of being removed from that home without prior notice or due process. Thus, all children in kinship foster care are properly

members of the class.[2]  In addition, the proposed relief will benefit all children in kinship foster care because it will establish substantive guidelines for removal and ensure due process in Independent Reviews and Fair Hearings in the event of the removal of children from their kinship foster homes.  The number of children who may be removed cannot be determined with certainty as it is ever changing, but where such fluidity is the case, this Court has found joinder to be impracticable.  *Mathis* at 393; *Goetz* at 1003.

The commonality requirement of Rule 23(a)(2) is satisfied where plaintiffs identify a unifying thread among the class members' claims.  *See Bolanos v. Norwegian Cruise Lines Ltd.* 212 F.R.D. 144, 153 (S.D.N.Y. 2002); 5 Moore's Federal Practice §23.23(2).  Here, the unifying thread is evident in plaintiffs' allegations that city and state policies and procedures violate their substantive and procedural due process rights.  While each class member presents a factually different situation, it is well-established that "variations in fact patterns of individual plaintiffs do not vitiate the commonality . . . claims."  *Reynolds v. Guiliani*, 118 F. Supp 2d 352, 389 (*citing Robidoux*, 987 F.2d at 937). (*See* A.C. Memo at 9-10).

Questions of law common to every member of the proposed class – regardless of differences in individual facts -- are whether ACS's pattern and practice of making "emergency" removals of children from their kinship foster parents under non-emergency circumstances violates plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment, and whether the ACS Independent Review procedures and 18 N.Y.C.R.R. §443.5 violate procedural due process.

---

[2] Although every member of plaintiffs' proposed class is at risk of removal from the home of a family member, even the subset of children who are actually removed from kinship homes each year alone would meet the numerosity requirement.  New York State Office of Children and Family Services Special Hearings Bureau yearly reports indicate that 71, 59, and 53 hearings to review removals of children from kinship and non-kinship foster homes were requested in 2004, 2005 and 2006 respectively.  From 1993 to 2006, 1,041 such hearings were scheduled and 519 were held.  (Moser Decl. ¶ 4 & Exh. 4).

Common questions of fact include: (1) whether ACS has a pattern and practice of removing children from kinship foster parents on an "emergency" basis when no true emergency exists; (2) whether ACS has failed to define what constitutes an "emergency" for purposes of making an emergency removal of children from kinship foster parents; and (3) whether ACS has failed to adopt guidelines for removing children from kinship foster homes in non-emergency circumstances.

In the face of this latter issue, defendants' argument that the proposed class is overbroad fails. (State Memo at 8; City Defendant's Memorandum of Law at 15, ECF # 33 (hereinafter "City Memo")). All children in kinship foster care suffer a deprivation as a result of defendants' failure to establish guidelines for removing kinship foster children from their homes. State defendant's argument that class members would have to be identified on a case-by-case basis under *Rivera v. Marcus* before constitutionally adequate hearing procedures could be developed is specious. (State Memo at 9). The constitutional deprivation is the same for every class member, regardless of differences in the facts. Another judge of this court recently rejected a similar argument that a class could not be certified because the substantive law underlying the asserted claims required an individualized, fact-specific analysis. *Brown v. Kelly*, ___ F.R.D. ___, 2007 WL 2156400, *6 (S.D.N.Y. 2007). The court noted that "'class relief is consistent with the need for case-by-case adjudication,' especially where '[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue.'" *Id.* (*quoting Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

This court has already recognized that plaintiffs in this litigation have a "constitutionally-protected liberty interest in the integrity of their kinship foster care family," after application of

5

the analysis used in a similar Second Circuit case, *Rivera v. Marcus*, 696 F.2d 1016, 1024-25 (2d Cir. 1982). Opinion, March 20, 2007, at 10, ECF # 24.

Here, as kinship foster children, all proposed class members assert a liberty interest in maintaining the stability of their family relationships. They are all subject to the same constitutionally inadequate policies and procedures. Independent reviews and State administrative fair hearings are routinely untimely provided, and lack basic elements of due process, including the right to offer and challenge evidence, to compel the production of documents and testimony, and to confront adverse witnesses. In addition to the fact that a child may be removed from a kinship foster family without notice, families are left without a meaningful way to challenge the removal.

Defendants' argument that factual differences between individual plaintiffs preclude a finding of commonality (State Memo at 12, City Memo at 10) has been expressly rejected by this court on numerous occasions. *See Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 392 (S.D.N.Y. 2000) (certifying a class of plaintiffs alleging that certain policies and practices of defendants prevented eligible individuals from applying for and timely receiving food stamps, Medicaid and cash assistance benefits). This is because "actions or inactions of defendants are not isolated or discrete instances but, rather, form a pattern of behavior that commonly affects all of the proposed class members." *Marisol A. v. Giuliani*, 126 F.3d 372, 377. *See also Daniels v. City of New York*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (holding that the commonality requirement is satisfied where the alleged injuries came from the same unconstitutional policy or practice). As in *Marisol*, all proposed class members are affected by a single system which governs removals of kinship foster children from their homes and the mechanisms for challenging those removals. 126 F.2d at 377. Significantly, in *Marisol*, the class certified consisted of "all children who are

or will be in the custody of the New York City Administration for Children's Services ("ACS"), and those children who, while not in the custody of ACS, are or will be at risk of neglect or abuse and whose status is or should be known to ACS." *Id.* at 375. The court did not deem this comprehensive class to be overbroad.

While factual differences between plaintiff class members are especially evident in cases challenging system-wide policies and procedures, all class members are connected by their common challenge to those policies and procedures. That each class member has a unique family circumstance or received varying degrees of constitutionally inadequate process does not take away from the fact that all plaintiffs are subject to the same city and state procedures. Thus, commonality is satisfied by the failure of these policies to adequately protect plaintiffs' recognized liberty interest in preserving the integrity of their kinship foster family.

The claims of the named plaintiffs are typical of the claims of the class members. Typicality is determined by the nature of the claims brought by the class representatives, rather than the particular fact patterns from which they arose. *Brown v. Kelly, supra,* at *7. "The named plaintiffs' claims are typical of those of the absent class members because they arose from the same course of unconstitutional conduct," and "the fact that some absent class members may have suffered greater injuries than their proposed representatives or fellow class members…and are thus able to bring additional claims or seek greater damages, does not make the proposed representatives' claims atypical." *Id. See also* A.C. Memo at 10-11.

State defendant's argument that A.C. and H.C. do not assert claims that are typical of the class because they were not harmed by lack of access to the independent review and fair hearing is disingenuous. (State Memo at 15). A.C. and H.C. were harmed by being removed from their aunt's care on an "emergency" basis when no true emergency existed. That no true emergency

existed is evidenced among other reasons by the fact that other children in their home were not removed when A.C. and H.C. were. (Decision After Independent Review at 3, annexed to Declaration of Robert L. Kraft, Exh. 3, ECF # 31)

The named plaintiffs and members of the proposed class all claim that defendants' pattern and practice of removing them from kinship foster homes on an emergency basis and/or without due process deprives them of rights to which they are constitutionally entitled. Moreover, injunctive and declaratory relief is sought on behalf of plaintiffs and members of the proposed class.

Defendants miss the purpose of the adequacy requirement when they argue that A.C. and H.C. could not adequately represent the plaintiff class because, several months after their removal, their law guardian did not demand their immediate return. (State Memo at 16; City Memo at 15). "The critical purpose of the adequacy inquiry is to determine whether a class representative's interests are *antagonistic* to those of absent class members." *Id.* at *8 (citations omitted). There is no conflict between the interests of A.C. and H.C. and those of other class members. Moreover, that the law guardian did not insist that the plaintiffs be returned to their former home immediately after learning of their removal does not undermine plaintiffs' argument that, at the time of the removal, no emergency existed, or that they were entitled to notice of the removal and the independent review, nor does it alleviate the harm that plaintiffs suffered. *See also* A.C. Memo at 11-12. A.C. and H.C. share with all class members an interest in maintaining their rights to the family relationship and to substantive and procedural due process.

## POINT II

### PLAINTIFFS' PROPOSED CLASS IS MAINTAINABLE PURSUANT TO FED. R. CIV. P. 23(b)

Plaintiffs satisfy the requirements of Fed. R. Civ. P. 23(b)(1) and (b)(2).  Pursuing separate actions "would create a risk of …inconsistent or varying adjudications" that "would establish incompatible standards of conduct," Fed. R. Civ. P. 23(b)(1)(a).  Defendants' fact-based arguments notwithstanding, multiple individual cases raising the same constitutional issues concerning removal procedures, notice and post-deprivation hearings – even if they arise from varying facts -- could result in inconsistent or varying adjudications concerning the rights of children in kinship foster care and the responsibilities of defendants.

With regard to the constitutionality of the independent review procedures and 18 N.Y.C.R.R. § 443.5, defendants have "acted or refused to act on grounds generally applicable to the class" so that injunctive or declaratory relief is appropriate "with respect to the class as a whole," Fed. R. Civ. P. 23(b)(2).  (*See* A.C. Memo at 12).  Defendants' assertions that independent review determinations are made based upon the facts of the individual case (City Memo at 12) miss the point that plaintiffs in this action challenge the constitutionality of the procedures themselves.  No matter what set of facts they are applied to, the procedures are inadequate because, among other things, they fail to provide children removed from kinship foster homes with notice of the right to a post-deprivation hearing, they do not permit the parties to confront witnesses and evidence against them, and they fail to provide children the right to request a hearing or even to be present if a review is requested by their foster parent.

# CONCLUSION

For all of the foregoing reasons, plaintiffs request that this Court grant plaintiffs' motion for certification of a class of "all children in New York City who are now, were on or after July 1, 2004, or will in the future be, residing in foster care with relatives who are within the second or third degree of consanguinity of their parents or stepparents."

Dated: New York, New York
       September 14, 2007

                    Respectfully submitted,

                    STEVEN BANKS (SB0987), Attorney in Chief
                    The Legal Aid Society
                    NANCY ROSENBLOOM (NR1275), Director
                    Special Litigation and Law Reform Unit
                    Juvenile Rights Practice
                    199  Water Street, 3rd Floor
                    New York, NY 10038

                    By: _____
                          Theresa B. Moser (TM2125)

                    HUGHES HUBBARD & REED LLP
                    One Battery Park Plaza
                    New York, New York 10004
                    Carla A. Kerr (CK5194)
                    Afiya M. Jordan (AJ2108)